UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

| | | |
|---|---|---|
| KAREN MORALES POSADA, | ) | |
| individually and on behalf of | ) | |
| all others similarly situated, | ) | Civil Action No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CULTURAL CARE, INC., a Massachusetts | ) | |
| Corporation; | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

_____)

## CLASS ACTION COMPLAINT

1.      Plaintiff Karen Morales Posada ("Morales Posada"), on behalf of herself and all others similarly situated, complains against Defendant Cultural Care, Inc. ("Cultural Care") for all the causes of action stated herein and alleged as follows.

2.      Cultural Care employs in-home childcare workers ("au pairs") who work in the United States on J-1 au pair visas. The services that the au pairs perform for Cultural Care constitute a regular and continuing part of Cultural Care's usual business.

3.      Cultural Care's business model depends on its persuading host families to pay thousands of dollars in fees directly to Cultural Care in exchange for Cultural Care helping to meet those families' childcare needs by providing them with au pairs. Cultural Care does not inform the families that the stipend it tells families to pay au pairs results in violations of California and New York wage laws. Cultural Care profits on deceiving host families (to drive up its fees) and underpaying au pairs (to minimize its costs).

4.     In this action, Plaintiff seeks to recover damages on behalf of herself and other aggrieved au pairs employed by Cultural Care in California and New York. With respect to the California Class, Plaintiff seeks to recover unpaid wages (including minimum wages and overtime wages), and statutory penalties. With respect to the New York Class, Plaintiff seeks to recover unpaid wages (including minimum wages and overtime wages), and statutory penalties.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

**6.**     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Cultural Care, Inc. is a Massachusetts Corporation with its principal place of business in Massachusetts.

## PARTIES

7.     Plaintiff Morales Posada is a resident of San Francisco, California.  She has worked for Cultural Care as an au pair since January 2019. She worked for Cultural Care in New York from January 2019 until December 2019. Since January 7, 2020, Plaintiff has been working as an au pair in San Francisco, California.

8.     Defendant Cultural Care, Inc. is a Massachusetts Corporation with its principal place of business in Massachusetts.

## FACTUAL ALLEGATIONS

### A.  Cultural Care's Employment of Au Pairs

9.     Cultural Care employs in-home childcare workers who work in the United States on J-1 au pair visas. According to the United States Department of State, approximately 3,100 J1 visa au pairs work in California each year, and approximately 2,500 J1 visa au pairs work in New York each year. At least 10% of these au pairs are employed by Cultural Care.

10.     Cultural Care's au pairs typically work at least 40 hours per week and 50 weeks per year.

11.     Cultural Care's business model depends on the systemic underpayment of au pairs in violation of California and New York law.

12.     To implement this strategy, Cultural Care deceives au pairs and host families by claiming that it is legal to pay an au pair $195.75 per week for up to 45 hours of work in New York and California.

13.     Cultural Care instruct host families to pay a weekly "stipend," which it currently describes as a weekly payment of $195.75.  This "stipend" is part of the annual au pair cost breakdown of $19,553.25 advertised to host families by Cultural Care. That $19,553.25 number includes fees paid to Cultural Care of $9,570 and leaves a meager $9,983.25 per year for au pairs, who work up to 45 hours per week caring for children in homes across California and New York—meaning that of the advertised cost to families of the au pair program, only about half goes to paying au pairs. The problem is that the funds leftover, after Cultural Care gets paid, is not sufficient to meet New York and California minimum wage laws.

14.     On top of this systemic illegal underpayment, Cultural Care fails to provide wage statements with required information about pay, deductions, and withholdings.

15.     Cultural Care also instructs host families that there is different pricing in Massachusetts because "[o]n December 2, 2019, the U.S. Court of Appeals for the First Circuit issued its decision that host families must comply with Massachusetts labor laws applicable to domestic workers, including the Massachusetts Domestic Workers' Bill of Rights."

16.     On the Cultural Care website, Massachusetts host families are instructed to pay minimum wage and overtime consistent with Massachusetts' state laws. Cultural Care states:

3

**Paid weekly to your au pair:**

Au pairs who live with a host family in Massachusetts are entitled to a weekly payment directly from their host family, that is at least the greater of either:

- The minimum federal stipend of $195.75[1]
- The MA minimum wage ($12.75/hour in 2020) times the number of hours the au pair is on duty for the week up to 40. If the au pair works between 41-45 hours during a week, you must pay time-and-a-half for the hours worked over the 40 hour limit. You may be able to deduct from the weekly pay to your au pair under the MA minimum wage laws for a meal credit of up to $42 per week and/or a lodging credit of up to $35 per week if you determine all state requirements for these credits are met.

17.     However, Cultural Care's pricing for all other states, including California and New York, says nothing about the applicability of state law. Instead, for all states except for MA, Cultural Care's website states:

**Minimum au pair stipend payments**
This calculation is based on a weekly stipend of at least $195.75[1] paid to your au pair for 51 weeks, including 2 weeks of paid vacation.

18.     Cultural Care exercises control over the wages, hours, and working conditions of au pairs to ensure the implementation of this illegal wage scheme.

19.     Cultural Care retains control over the rate and method of paying au pairs by, among other things, dictating that payment will be in the form of a weekly stipend. Cultural Care describes that weekly stipend, to families and au pairs, as a minimum payment of $195.75 per week.

20.     Cultural Care communicates with au pairs regarding their maximum work hours, the performance of their job duties, and other terms and conditions of their employment; and maintains the right to terminate or reassign au pairs (including the unilateral right to determine

that a host family's home is unsuitable, to terminate a host family's participation in the program, and to mediate disputes between au pairs and host families). Specifically, Cultural Care:

    a.  Requires that, if an infant less than three months old is in the home, a parent or other responsible adult shall be present at all times, and a parent or responsible adult shall stay in the home for the first three days of an au pair's assignment;

    b.  Requires that the au pair's schedule be limited to 45 hours per week, with a maximum of 10 hours per day and no more than 5.5 days per week of work. Failure to comply will result in Cultural Care terminating the host family from the program;

    c.  Retains the exclusive right to determine that the host family's environment is not suitable and to terminate the host family from the program;

    d.  Requires that the host family notify Cultural Care immediately if there is a change in the composition of the family and of any incidents involving law enforcement;

    e.  Requires that any adults residing in the home must be screened by Cultural Care;

    f.  Dictates that the au pair will perform childcare services and light housework relating to childcare services and may not do general housekeeping or heavy chores;

    g.  Requires that the host family provide automobile insurance for au pairs who drive;

    h.  Requires that the au pair must contact Cultural Care if the family wishes to take the au pair out of the country on vacation;

    i.  Requires the host family notify Cultural Care if the au pair needs medical attention; and

    j.  Vests Cultural Care with the right to determine, in its sole judgment, if the au pair is unable to perform her duties for an extended period of time—in which case Cultural Care will send the au pair home and end her assignment.

21.    Cultural Care retains the right to reject any au pair application for any reason it deems advisable.

22.    Cultural Care retains the right to end any au pair's employment if the au pair engages in conduct that Cultural Care believes is not in the best interest of the program.

23.    Cultural Care does not maintain any records of hours worked, breaks taken, or the value of room and board provided for Morales Posada and other au pairs.

24.     Cultural Care does, however, maintain other records regarding the employment of Morales Posada and other au pairs, including records of meetings with Cultural Care's regional points of contact, documents regarding au pairs' immigration status and visa status, and other employment-related information.

**B.   Ms. Morales Posada's Employment with Cultural Care**

25.     Ms. Morales Posada is a citizen of Colombia.

26.     Ms. Morales Posada started as a Cultural Care au pair in New York in or about January 2019 and spent about six months at this first placement.

27.     Ms. Morales Posada attended three days of training required by, and put on by, Cultural Care in New York upon her arrival.

28.     At her first New York placement, in Chappaqua, New York, Ms. Morales Posada was paid $200 per week for every week worked.

29.     At her first New York placement, Ms. Morales Posada usually worked approximately 8.5 hours per day, 5 days a week (or 42.5 hours per week) during five of the six months.

30.     For one of the six months at her first New York Placement, in addition to the 42.5 hours, Ms. Morales Posada worked 2 hours a week on the weekend.

31.     Ms. Morales Posada never received any overtime premiums at her first New York placement.

32.     After her initial six-month placement in New York,  Ms. Morales Posada moved to a second placement in Briarcliff Manor, New York.

33.     Ms. Morales Posada was also paid $200 per week for every work week at her second placement, with an additional $50 for transportation costs.

34.     At her second New York placement, Ms. Morales Posada usually worked approximately 11 hours per day on Monday, Wednesday, and Friday and 8.5 hours a day on Tuesday and Thursday (or 50 hours per week).

35.     Ms. Morales Posada never received any overtime premiums at her second New York placement.

36.     Ms. Morales Posada's third placement with Cultural Care is in San Francisco, California and began in January 2020 and is ongoing.

37.     Ms. Morales Posada usually receives $200 per week in her third placement.

38.     Until the COVID 19 pandemic began in or about March 2020, Ms. Morales Posada worked roughly 40 hours per week.

39.     Starting in or about March 2020, with the onset of the pandemic, Ms. Morales Posada worked roughly 49 hours per week. Many days she worked 10 hours straight with no breaks. Ms. Morales Posada's host family paid her marginally more during this brief period, but still less than any applicable minimum wage.

40.     Ms. Morales Posada worked fewer hours while her host family's children attended camp during the June 2020.

41.     Ms. Morales Posada has never received overtime premiums at her third placement.

42.     Cultural Care has failed to maintain any time records for any of Ms. Morales Posada's work.

43.     Cultural Care has failed to provide pay statements for any of Ms. Morales Posada's work.

## CLASS ALLEGATIONS

44.     Plaintiff brings all claims alleged herein on behalf of the following two classes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

**The California Class**

45.     Plaintiff brings the California claims alleged herein under California law as class action claims on behalf of, and seeks to have certified pursuant to Rule 23 of the Federal Rules of Civil Procedure, a class comprised of all individuals who were sponsored by Cultural Care and worked as au pairs in the State of California during any portion of the period commencing four years prior to the filing of this action through the entry of final judgment in this action (the "California Class" and "California Class Members").

46.     The claims of the California Class have been brought and may properly be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because (1) the class is so numerous that joinder of all class members is impracticable; (2) there are questions of law and or fact common to the class; (3) the claims of the proposed class representative are typical of the claims of the class; and (4) the proposed class representative and her counsel will fairly and adequately protect the interests of the class.  In addition, the questions of law or fact that are common to the class predominate over any questions affecting only individual class members and a class action is superior to other available means for fairly and efficiently adjudicating the controversy.

47.     Numerosity: The California Class as defined herein is so numerous that joinder would be impracticable. Cultural Care has sponsored hundreds of au pairs during the California Class Period. The names and addresses of the California Class Members are available to the Cultural Care and the composition of the California Class can be readily ascertained. Notice can

be provided to the California Class Members via first class mail using techniques and a form of notice similar to those customarily used in class action lawsuits of this nature.

48.     Commonality and Predominance of Common Questions: There are questions of law and fact common to Plaintiff and the California Class Members that predominate over any questions affecting only individual members of the Class.  These common questions of law and fact include, but are not limited to:

   a. Whether Cultural Care maintained a policy or practice of requiring California Class Members to work for less than the minimum wage for all hours worked;

   b. Whether Cultural Care maintained a policy or practice of requiring California Class Members to work overtime hours without overtime compensation;

   c. Whether Cultural Care violated California Labor Code § 1194, IWC Wage Order 15, and the Minimum Wage Order by their failure to pay California Class Members minimum wages for all hours worked.

   d. Whether Cultural Care has violated California Labor Code § 510 and IWC Wage Order 15 by their failure to pay California Class Members overtime compensation;

   e. Whether Cultural Care's policy or practice gives rise to liquidated damages under Labor Code § 1194.2;

   f. Whether Cultural Care failed to maintain records showing hours worked, breaks taken, and value of room and board provided in violation of §§ 226, 226.7, 512, 1174, and Wage Order 15;

   g. Whether Cultural Care Failed to provide lawful wage statements to California Class Members in violation of Labor Code § 226(a) and Wage Order 15;

   h. Whether Cultural Care knowingly and intentionally violated California Labor Code § 226(a) by failing to furnish California Class Members with accurate written itemized statements at the time of the payment of their wages; and

   i. Whether Cultural Care's practices constituted unlawful, unfair, and/or fraudulent business practices under California Busines and Professions Code § 17200 et seq.

49.     Typicality: Plaintiff's claims are typical of the claims of the other California Class Members. Cultural Care's common course of unlawful conduct has caused Plaintiff and California Class Members to sustain the same or similar injuries and damages caused by the

same common policies, practices, and decisions of Cultural Care.  Plaintiff's claims are thereby representative of and co-extensive with the claims of the other California Class Members.

50.     Adequacy of Representation: Plaintiff is a member of the Rule 23 Class defined herein, does not have any conflicts of interest with other California Class Members, and will prosecute the case vigorously on behalf of the class.  Plaintiff will fairly and adequately represent and protect the interests of the California Class Members.  Plaintiff has retained attorneys who are competent and experienced in litigating large employment class actions, including large wage and hour class actions.

51.     Superiority: The expense and burden of individual litigation by each member makes or make it impractical for California Class Members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought, or be required to be brought, by each individual Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other Class Members who are parties to the adjudication and/or may substantially impede their ability to adequately protect their interests.

**The New York Class**

52.     Plaintiff brings the New York claims alleged herein under New York law as class action claims on behalf of, and seeks to have certified pursuant to Rule 23 of the Federal Rules of Civil Procedure, a class comprised of all individuals who were sponsored by Cultural Care and worked as au pairs in the State of New York during any portion of the period commencing six years prior to the filing of this action through the entry of final judgment in this action (the "New York Class" and "New York Class Members").

10

53.     The claims of the New York Class have been brought and may properly be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because (1) the class is so numerous that joinder of all class members is impracticable; (2) there are questions of law and or fact common to the class; (3) the claims of the proposed class representative are typical of the claims of the class; and (4) the proposed class representative and her counsel will fairly and adequately protect the interests of the class.  In addition, the questions of law or fact that are common to the class predominate over any questions affecting only individual class members and a class action is superior to other available means for fairly and efficiently adjudicating the controversy.

54.     Numerosity: The New York Class as defined herein is so numerous that joinder would be impracticable. Cultural Care have employed hundreds of au pairs during the New York Class Period. The names and addresses of the New York Class Members are available to the Cultural Care and the composition of the New York Class can be readily ascertained. Notice can be provided to the New York Class Members via first class mail using techniques and a form of notice similar to those customarily used in class action lawsuits of this nature.

55.     Commonality and Predominance of Common Questions: There are questions of law and fact common to Plaintiff and the New York Class Members that predominate over any questions affecting only individual members of the Class.  These common questions of law and fact include, but are not limited to:

  a.  Whether Cultural Care maintained a policy or practice of requiring New York Class Members to work for less than the minimum wage for all hours worked;

  b.  Whether Cultural Care maintained a policy or practice of requiring New York Class Members to work overtime hours without overtime compensation;

  c.  Whether Cultural Care violated New York Labor Law by its failure to pay New York Class Members minimum wages for all hours worked;

11

d.  Whether Cultural Care has violated N.Y. LAB. LAW § 191 by failing to pay wages for all hours worked;

e.  Whether Cultural Care has violated Sections 142-2.2 and 142-2.9 of the enacting regulations of the New York Labor Law (N.Y. COMP. CODES R. & REGS. tit. 12, §§ 142-2.2, 142-2.9) by their failure to pay New York Class Members overtime compensation;

f.  Whether Cultural Care's policy or practice gives rise to liquidated damages

g.  Whether Cultural Care has knowingly and intentionally violated N.Y. LAB. LAW § 195 by failing to furnish New York Class Members with statements at the time of the payment of their wages showing their actual hours worked;

h.  Whether Cultural Care has knowingly and intentionally violated N.Y. LAB. LAW § 195 by failing to furnish New York Class Members with statements at the time of the payment of their wages indicating the hourly rate of pay;

i.  Whether Cultural Care has knowingly and intentionally N.Y. LAB. LAW § 195 by failing to furnish New York Class Members with statements at the time of the payment of their wages indicating the inclusive date of the period for which the employee was paid;

j.  Whether Cultural Care violated N.Y. LAB. LAW § 195 by failing to keep accurate records of employees' hours of work;

k.  Whether Cultural Care's statements to host families regarding applicable wages constituted deceptive acts and practices pursuant to N.Y. General Business Law §§ 349, 350

l.  The proper measure of damages, restitution, interest, and penalties owed to Plaintiff and the New York Class Members.

56.  Typicality: Plaintiff's claims are typical of the claims of the other New York Class Members.  Cultural Care's common course of unlawful conduct has caused Plaintiff and New York Class Members to sustain the same or similar injuries and damages caused by the same common policies, practices, and decisions of Cultural Care.  Plaintiff's claims are thereby representative of and co-extensive with the claims of the other New York Class Members.

57.  Adequacy of Representation: Plaintiff is a member of the Rule 23 Class defined herein, does not have any conflicts of interest with other New York Class Members, and will prosecute the case vigorously on behalf of the class.  Plaintiff will fairly and adequately represent

and protect the interests of the New York Class Members.  Plaintiff has retained attorneys who are competent and experienced in litigating large employment class actions, including large wage and hour class actions.

58.    Superiority:  The expense and burden of individual litigation by each member makes or make it impractical for New York Class Members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought, or be required to be brought, by each individual New York Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other New York Class Members who are parties to the adjudication and/or may substantially impede their ability to adequately protect their interests.

## COUNT I –FAILURE TO PAY MINIMUM WAGES FOR ALL HOURS WORKED
### *(On Behalf Of Plaintiff and the California Class)*

59.    The IWC Wage Orders, California Labor Code §§ 1194 and 1197, and the San Francisco Minimum Wage Ordinance require employers to pay employees at least minimum wage for all hours worked.

60.    California Labor Code § 1182.12, as well as the IWC Wage Orders, provide that the California minimum wage was $10.00/hour effective January 1, 2016; $10.50/hour effective January 1, 2017; $11.00/hour effective January 1, 2018; $12.00/hour effective January 1, 2019; and $13.00/ hour effective January 1, 2020.

61.    The San Francisco Minimum Wage Ordinance, San Francisco Administrative Code, Chapter 12R.4, provides that employees working within the geographic boundaries of the City are entitled to a Minimum Wage as follows for each hour worked: (A) Beginning on July 1, 2016, an hourly wage of $13.00; (B) Beginning on July 1, 2017, an hourly wage of $14.00. (C)

Beginning on July 1, 2018, an hourly wage of $15.00; (D) Beginning on July 1, 2019, an hourly wage of $15.59; and (E) Beginning on July 1, 2020, an hourly wage of $6.07.

62.     California Labor Code § 1194.2 provides that "In any action under Section 1193.6 or Section 1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."

63.     The minimum wage provisions of California Law are enforceable by private civil action pursuant to California Labor Code § 1194(a).

64.     As described herein, Cultural Care maintained a policy and/or practice of failing and refusing to pay Plaintiff and the California Class Members minimum wages for all hours worked. At all times relevant herein, Cultural Care had a policy and practice of failing to pay Plaintiff and California Class Members for all hours they worked.

65.     As a direct and proximate result of Cultural Care's unlawful conduct as set forth herein, Plaintiff and California Class Members have sustained damages, including lost wages, in an amount to be determined at trial.

66.     In addition to recovering unpaid wages, Plaintiff and California Class Members are entitled to recover interest and liquidated damages, and reasonable attorneys' fees and costs, pursuant to California Labor Code §§1194(a) and 1194.2(a).

### COUNT II –FAILURE TO PAY OVERTIME WAGES
*(On Behalf Of Plaintiff and the California Class)*

67.     California Labor Code § 1454 provides that domestic workers Plaintiff and California Class Members are entitled to overtime compensation after working nine hours in a day or 45 hours in a week.

68.     Plaintiff and California Class Members worked over nine hours in a day and over 45 hours in a week while serving as au pairs, for which Cultural Care did not pay them overtime premium compensation.

69.     By failing to pay overtime compensation to Plaintiff and California Class Members, Cultural Care violated Labor Code § 1450 et. seq and IWC wage order No. 15.

70.     As a result of Cultural Care's unlawful acts, Plaintiff and California Class Members have been deprived of overtime compensation in an amount to be determined at trial, and are entitled to recovery of such amounts, plus interest thereon, and attorneys' fees and costs, under Labor Code § 1194.

### COUNT III – FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS
*(On Behalf Of Plaintiff and the California Class)*

71.     California Labor Code § 226(a) provides:

> Each employer shall semimonthly, or at the time of each payment of wages, furnish each of his or her employees either as a detachable part of the check, draft or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an itemized wage statement in writing showing: (1) gross wages earned; (2) total number of hours worked by each employee whose compensation is based on an hourly wage; (3) all deductions provided that all deductions made on written orders of the employee may be aggregated and shown as one item; (4) net wages earned; (5) the inclusive date of the period for which the employees is paid; (6) the name of the employee and his or her social security number; and (7) the name and address of the legal entity which is the employer.

72.     California Labor Code § 226(e) provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees. * * * An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide a wage statement.

73.     Cultural Care failed to provide Plaintiff and the California Class Members any wage statement.

74.     As a direct and proximate result of Cultural Care's unlawful conduct as set forth herein, Plaintiff and California Class Members may recover the damages and penalties provided for under California Labor Code § 226(e), plus interest thereon, reasonable attorneys' fees, and costs. In addition, Plaintiff and the California Class Members are entitled to injunctive relief to ensure compliance with this section, pursuant to California Labor Code § 226(h).

## COUNT IV – UNFAIR BUSINESS PRACTICES IN VIOALATION OF THE UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200
### (On Behalf Of Plaintiff and the California Class)

75.     California Business and Professions Code § 17200, et seq. ("BCP 17200") prohibits "any unlawful, unfair, or fraudulent business act or practice."

76.     Cultural Care's knowing conduct, as alleged herein, constitutes an unlawful and/or fraudulent business practice, as set forth in BCP 17200. Specifically, Cultural Care conducted business activities while failing to comply with the legal mandates cited herein.

77.     A violation of BCP 17200 may be predicated on the violation of any state or federal law. Here Cultural Care's policies and practices of (1) failing to pay Plaintiff and California Class Members minimum wages in violation of California law; (2) failing to pay Plaintiff and California Class Members overtime wages in violation of California law; (3) making deductions from the compensation owed Plaintiff and California Class Members in violation of California law, including by unlawfully crediting lodging and meals provided Plaintiff and California Class Members; and (4) failing to provide complete and accurate itemized wage statements pursuant to California Labor Code § 226.

16

78.     Cultural Care's knowing failure to adopt policies in accordance with and/or to adhere to these laws, all of which are binding upon and burdensome to its competitors, engenders an unfair competitive advantage to Cultural Care thereby constituting an unfair business practice under BPC 17200.

79.     Cultural Care's violation of California wage and hour laws and illegal payroll practices or payment policies constitute an unfair business practice because they were done repeatedly over a significant period of time, an in a systematic manner to the detriment of Plaintiff and California Class Members.

80.     The harm of the above-described failure to pay wages owed to Plaintiff and California Class Members outweighs the utility of the practices by Cultural Care, and consequently, constitutes an unfair business act or practice within the meaning of the UCL.

81.     Upon information and belief, Cultural Care continues its fraudulent and/or unlawful and/or unfair conduct as previously described. As a result of this conduct, Cultural Care has fraudulently and/or unlawfully and/or unfairly obtained monies due to Plaintiff and all other class members, thereby unfairly competing in the marketplace.

82.     Plaintiff thus brings this cause of action seeking equitable and statutory relief to stop Cultural Care's misconduct, as complained of herein, and to seek restitution of the amounts Cultural Care acquired through the unfair, unlawful, and fraudulent business practices described herein.

83.     Pursuant to BPC 17200, Plaintiff and California Class Members are entitled to (i) restitution of all wages and compensation alleged herein that Cultural Care withheld and retained during the period commencing four years prior to the filing of this action, (ii) a permanent injunction requiring prohibiting further violations of the type alleged herein, (iii) an award of

17

reasonable attorneys' fees pursuant to Cal. Civ. Proc. Code § 1021.5 and other applicable law, and (iv) costs.

## <u>COUNT V –FAILURE TO PAY MINIMUM WAGES FOR ALL HOURS WORKED</u>
*(On Behalf Of Plaintiff and the New York Class)*

84. The minimum wage provisions of Article 19 of the New York Labor Law ("NYLL") and the supporting New York State Department of Labor Regulations apply to Cultural Care, and protect the Plaintiff and New York Class Members.

85. Cultural Care failed to pay Plaintiff and New York Class Members the minimum hourly wages to which she was entitled under the NYLL and the supporting New York State Department of Labor Regulations.

86. Pursuant to the N.Y. Lab. Law §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, Cultural Care was required to pay Plaintiff and the New York Class members minimum wage consistent with N.Y. Lab. Law § 652.

87. Through their knowing or intentional failure to pay minimum hourly wages to the Plaintiff and New York Class Members, Cultural Care willfully violated N.Y. Lab. Law §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations.

88. Due to Cultural Care's willful violations of the NYLL, Plaintiff and New York Class Members are entitled to recover from Cultural Care her unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest.

## COUNT VI –FAILURE TO PAY OVERTIME WAGES
*(On Behalf Of Plaintiff and the New York Class)*

89.     Cultural Care did not pay Plaintiff the proper overtime wages for all the time that she was suffered or permitted to work more than forty-four (44) hours each workweek in New York.

90.     During her employment in New York, Plaintiff generally and consistently worked in excess of 44 hours per work week.

91.     During such workweeks, Cultural Care did not compensate Plaintiff at time and a half the regular wage rate for all of the overtime hours she worked.

92.     The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Cultural Care, and protect Plaintiff.

93.     Cultural Care failed to pay Plaintiff the premium overtime wages to which she was entitled under the NYLL and the supporting New York State Department of Labor Regulations for all hours worked beyond 44 hours per workweek.

94.     Cultural Care failed to keep, make, preserve, maintain and furnish accurate records of time worked by the Plaintiff and New York Class Members.

95.     Through their knowing or intentional failure to pay Plaintiff overtime wages for hours worked in excess of 44 hours per workweek, Cultural Care willfully violated the N.Y. Lab. Law §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

96.     Due to Cultural Care's willful violations of the NYLL, Plaintiff and New York Class Members are entitled to recover from Cultural Care their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorney's fees and costs of the action, and pre-judgment and post-judgment interest.

## COUNT VII –FAILURE TO PROVIDE WAGE STATEMENTS
*(On Behalf Of Plaintiff and the New York Class)*

97.     Cultural Care willfully failed to provide Plaintiff and those similarly situated with written notices of their rate of pay, regular pay day, and such information as required by N.Y. Lab. Law § 195(3) and/or 198(1-b).

98.     Due to Cultural Care's violations of the NYLL, Plaintiff and those similarly situated are each entitled to recover fifty dollars ($50) for each work day that the violations occurred or continue to occur, or a total of five thousand ($5,000) dollars, costs, reasonable attorney's fees, and including injunctive and declaratory relief that the court in its discretion deems necessary or appropriate.

## COUNT VIII –DECEPTIVE TRADE PRACTICE
*(On Behalf Of Plaintiff and the New York Class)*

99.     Plaintiff and those similarly situated assert claims for deceptive acts and practices in the conduct of business, trade, and commerce and furnishing services against Cultural Care pursuant to N.Y. General Business Law § 349.

100.     Cultural Care engaged in consumer-oriented conduct by instructing New York au pairs and host families that au pair wages should be a minimum of $195.75 per week.

101.     The instruction that au pair wages in New York should be a minimum of $195.75 per week is materially misleading because it ignores requirements to pay state minimum wage and overtime in New York, which typically will result in a legal minimum significantly more than $195.75 per week.

102.     Plaintiff and those similarly situated suffered injuries as a result of Cultural Care's deceptive acts and practices, including by being paid significantly less than the amounts required by New York minimum wage and overtime laws.

103.    Plaintiff and those similarly situated are entitled to damages, penalties, and attorney's fees pursuant to N.Y. General Business Law § 349(h).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

I.    Issue an order allowing this action to proceed as a class action and appointing Plaintiff and their counsel to represent the Classes.

II.    Order a certified, independent accounting, at Cultural Care's expense, of all records in the possession of the Cultural Care that are relevant to the calculation of the damages sought by Plaintiff in this action, and/or the appointment of a Master or Receiver to determine the correct compensation owed to Plaintiff and Class Members.

III.    Determine the damages sustained by Plaintiff and the Class as a result of Cultural Care's violations and award those damages against Cultural Care and in favor of Plaintiff and the Classes, including treble damages and prejudgment interest.

IV.    Order Cultural Care to immediately cease its wrongful conduct as set forth above.

V.    Award Plaintiff and the Classes costs and disbursements of this suit, including, without limitation, reasonable attorneys' fees and expenses.

VI.    Award Plaintiff and the Classes post-judgment interest on all amounts awarded at the highest rate allowable by law; and

VII.    Any other or further relief as the Court may deem just and proper.

### Jury Demand

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL CLAIMS SO TRIABLE**.

21

Dated: October 15, 2020

By: s/David H. Seligman
DAVID H. SELIGMAN
ALEXANDER N. HOOD
TOWARDS JUSTICE
PO Box 371680
PMB 44465
Denver, Colorado 80237-5680
Ph: (720) 441-2236
David@TowardsJustice.org

PETER RUKIN
RUKIN HYLAND & RIGGIN LLP
1939 Harrison Street, Suite 290
Oakland, CA 94612

MATTHEW C. HELLAND
NICHOLS KASTER, LLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104

H. CLARA COLEMAN
NICHOLS KASTER, PLLP
4700 IDS Center, 80 S. 8th St.
Minneapolis, MN 55402

Attorneys for Plaintiff