_____

| | |
|---|---|
| KAREN MORALES POSADA, AMANDA SARMENTO FERREIRA GUIMARAES, WILLIANA ROCHA, and SARA BARRIENTOS, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>   v.<br><br>CULTURAL CARE, INC., a Massachusetts Corporation,<br><br>         Defendant. | Civil Action No.  1:20-CV-11862-IT |

_____

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs file this amendment by right pursuant to Fed. R. Civ. P. 15.

1.      Plaintiffs Karen Morales Posada ("Morales Posada") Amanda Sarmento Ferreira Guimaraes ("Guimaraes") Williana Rocha ("Rocha"), and Sara Barrientos (Barrientos) on behalf of themselves and all others similarly situated, complains against Defendant Cultural Care, Inc. ("Cultural Care") for all the causes of action stated herein and alleged as follows.

2.      Cultural Care employs in-home childcare workers ("au pairs") who work in the United States on J-1 au pair visas. The services that the au pairs perform for Cultural Care constitute a regular and continuing part of Cultural Care's usual business.

3.      Cultural Care's business model depends on its persuading host families to pay thousands of dollars in fees directly to Cultural Care in exchange for Cultural Care helping to meet those families' childcare needs by providing them with au pairs. Cultural Care does not inform the families that the stipend it tells families to pay au pairs results in violations of the Fair Labor

Standards Act ("FLSA") as well as California, New York, New Jersey, and Illinois wage laws. Cultural Care profits on deceiving host families (to drive up its fees) and underpaying au pairs (to minimize its costs).

4. In this action, Plaintiffs seek to recover damages on behalf of themselves and other aggrieved au pairs employed by Cultural Care. With respect to the Nationwide FLSA Collective, Plaintiffs seek to recover unpaid wages (including minimum wages and overtime wages) and liquidated damages. With respect to the California Class, Plaintiff seeks to recover unpaid wages (including minimum wages and overtime wages), liquidated damages and statutory penalties. With respect to the New York Class, Plaintiff seeks to recover unpaid wages (including minimum wages and overtime wages), liquidated damages, and statutory penalties. With respect to the New Jersey Class, Plaintiff seeks to recover unpaid wages (including minimum wages and overtime wages) and liquidated damages. With respect to the Illinois Class, Plaintiff seeks to recover unpaid wages (including minimum wages and overtime wages), statutory penalties, and treble damages. Plaintiffs also seek to recover damages and penalties under the consumer protection laws of their respective states, and to recover their attorneys' fees and costs.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332(d)(2).

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Cultural Care, Inc. is a Massachusetts Corporation with its principal place of business in Massachusetts.

## PARTIES

7. Plaintiff Morales Posada is a resident of San Francisco, California. She has worked for Cultural Care as an au pair since January 2019. She worked for Cultural Care in New York

from January 2019 until December 2019. Since January 7, 2020, Plaintiff has been working as an au pair in San Francisco, California.

8.  Plaintiff Guimaraes is a citizen of Brazil and currently resides in New York. She worked for Cultural Care in Utah from September to October 2018 and has worked for Cultural Care in Larchmont New York, since October 2018.

9.  Plaintiff Rocha is a citizen of Brazil and currently resides in New Jersey. She has worked for Cultural Care in South Orange, New Jersey from January 2020 to present and continuing.

10.  Plaintiff Barrientos is a citizen of Colombia and currently resides in Illinois. She worked for Cultural Care in Winnetka, Illinois from August 2018 to March 2020, and in Kenilworth, Illinois from April 2020 to June 2020.

11.  Plaintiffs consent to join this action to pursue their FLSA claims. Their consent forms are attached hereto as Exhibit A.

12.  Defendant Cultural Care, Inc. is a Massachusetts Corporation with its principal place of business in Massachusetts.

## FACTUAL ALLEGATIONS

### A.  Cultural Care's Employment of Au Pairs

13.  Cultural Care employs in-home childcare workers who work in the United States on J-1 au pair visas. According to the United States Department of State, each year, approximately 3,100 J-1 visa au pairs work in California, 2,500 J-1 visa au pairs work in New York,1,700 J-1 visa au pairs in New Jersey, and 1,100 J-1 visa au pairs work in Illinois. At least 10% of these au pairs are employed by Cultural Care.

14.     Cultural Care's au pairs typically work at least 40 hours per week and 50 weeks per year.

15.     Cultural Care's business model depends on the systemic underpayment of au pairs in violation of California, New York, New Jersey, and Illinois law.

16.     To implement this strategy, Cultural Care deceives au pairs and host families by claiming that it is legal to pay an au pair $195.75 per week for up to 45 hours of work in New York, California, New Jersey, and Illinois.

17.     Cultural Care instructs host families to pay a weekly "stipend," which it currently describes as a weekly payment of $195.75. This "stipend" is part of the annual au pair cost breakdown of $19,553.25 advertised to host families by Cultural Care. That $19,553.25 number includes fees paid to Cultural Care of $9,570 and leaves a meager $9,983.25 per year for au pairs, who work up to 45 hours per week caring for children in homes across the United States—meaning that of the advertised cost to families of the au pair program, only about half goes to paying au pairs. The problem is that the funds leftover, after Cultural Care gets paid, are not sufficient to meet minimum wage laws in many states, including California, New York, New Jersey, Illinois and others.

18.     On top of this systemic illegal underpayment, Cultural Care fails to provide wage statements with required information about pay, deductions, and withholdings.

19.     Cultural Care also instructs host families that there is different pricing in Massachusetts because "[o]n December 2, 2019, the U.S. Court of Appeals for the First Circuit issued its decision that host families must comply with Massachusetts labor laws applicable to domestic workers, including the Massachusetts Domestic Workers' Bill of Rights."

20.     On the Cultural Care website, Massachusetts host families are instructed to pay minimum wage and overtime consistent with Massachusetts' state laws. Cultural Care states:

**Paid weekly to your au pair:**

Au pairs who live with a host family in Massachusetts are entitled to a weekly payment directly from their host family, that is at least the greater of either:

- The minimum federal stipend of $195.75[1]
- The MA minimum wage ($12.75/hour in 2020) times the number of hours the au pair is on duty for the week up to 40. If the au pair works between 41-45 hours during a week, you must pay time-and-a-half for the hours worked over the 40 hour limit. You may be able to deduct from the weekly pay to your au pair under the MA minimum wage laws for a meal credit of up to $42 per week and/or a lodging credit of up to $35 per week if you determine all state requirements for these credits are met.

21.     However, Cultural Care's pricing for all other states, including California, New York, New Jersey, and Illinois says nothing about the applicability of state law. Instead, for all states except for MA, Cultural Care's website states:

**Minimum au pair stipend payments**
This calculation is based on a weekly stipend of at least $195.75[1] paid to your au pair for 51 weeks, including 2 weeks of paid vacation.

22.     Cultural Care exercises control over the wages, hours, and working conditions of au pairs to ensure the implementation of this illegal wage scheme.

23.     Cultural Care retains control over the rate and method of paying au pairs by, among other things, dictating that payment will be in the form of a weekly stipend. Cultural Care describes that weekly stipend, to families and au pairs, as a minimum payment of $195.75 per week.

24.     Cultural Care communicates with au pairs regarding their maximum work hours, the performance of their job duties, and other terms and conditions of their employment; and maintains the right to terminate or reassign au pairs (including the unilateral right to determine that

a host family's home is unsuitable, to terminate a host family's participation in the program, and to mediate disputes between au pairs and host families). Specifically, Cultural Care:

    a.   Requires that, if an infant less than three months old is in the home, a parent or other responsible adult shall be present at all times, and a parent or responsible adult shall stay in the home for the first three days of an au pair's assignment;

    b.   Requires that the au pair's schedule be limited to 45 hours per week, with a maximum of 10 hours per day and no more than 5.5 days per week of work. Failure to comply will result in Cultural Care terminating the host family from the program;

    c.   Retains the exclusive right to determine that the host family's environment is not suitable and to terminate the host family from the program;

    d.   Requires that the host family notify Cultural Care immediately if there is a change in the composition of the family and of any incidents involving law enforcement;

    e.   Requires that any adults residing in the home must be screened by Cultural Care;

    f.   Dictates that the au pair will perform childcare services and light housework relating to childcare services and may not do general housekeeping or heavy chores;

    g.   Requires that the host family provide automobile insurance for au pairs who drive;

    h.   Requires that the au pair must contact Cultural Care if the family wishes to take the au pair out of the country on vacation;

    i.   Requires the host family notify Cultural Care if the au pair needs medical attention; and

    j.   Vests Cultural Care with the right to determine, in its sole judgment, if the au pair is unable to perform her duties for an extended period of time—in which case Cultural Care will send the au pair home and end her assignment.

      25.    Cultural Care retains the right to reject any au pair application for any reason it deems advisable.

      26.    Cultural Care retains the right to end any au pair's employment if the au pair engages in conduct that Cultural Care believes is not in the best interest of the program.

      27.    Cultural Care does not maintain any records of hours worked, breaks taken, or the value of room and board provided for Plaintiffs and other au pairs.

      28.    Cultural Care does, however, maintain other records regarding the employment of Plaintiffs and other au pairs, including records of meetings with Cultural Care's regional points of

contact, documents regarding au pairs' immigration status and visa status, and other employment-related information.

29. Cultural Care requires all its au pairs to attend four days of training prior to traveling to their host family. Until recently, that training occurred in Tarrytown, New York.

30. Cultural Care's training is completely uncompensated.

**B. Ms. Morales Posada's Employment with Cultural Care**

31. Ms. Morales Posada is a citizen of Colombia.

32. Ms. Morales Posada started as a Cultural Care au pair in New York in or about January 2019 and spent about six months at this first placement.

33. Ms. Morales Posada attended three days of training required by, and put on by, Cultural Care in New York upon her arrival.

34. At her first New York placement, in Chappaqua, New York, Ms. Morales Posada was paid $200 per week for every week worked.

35. At her first New York placement, Ms. Morales Posada usually worked approximately 8.5 hours per day, 5 days a week (or 42.5 hours per week) during five of the six months.

36. For one of the six months at her first New York Placement, in addition to the 42.5 hours, Ms. Morales Posada worked 2 hours a week on the weekend.

37. Ms. Morales Posada never received any overtime premiums at her first New York placement.

38. After her initial six-month placement in New York, Ms. Morales Posada moved to a second placement in Briarcliff Manor, New York.

39.     Ms. Morales Posada was also paid $200 per week for every work week at her second placement, with an additional $50 for transportation costs.

40.     At her second New York placement, Ms. Morales Posada usually worked approximately 11 hours per day on Monday, Wednesday, and Friday and 8.5 hours a day on Tuesday and Thursday (or 50 hours per week).

41.     Ms. Morales Posada never received any overtime premiums at her second New York placement.

42.     Ms. Morales Posada's third placement with Cultural Care is in San Francisco, California and began in January 2020 and is ongoing.

43.     Ms. Morales Posada usually receives $200 per week in her third placement.

44.     Until the COVID 19 pandemic began in or about March 2020, Ms. Morales Posada worked roughly 40 hours per week.

45.     Starting in or about March 2020, with the onset of the pandemic, Ms. Morales Posada worked roughly 49 hours per week. Many days she worked 10 hours straight with no breaks. Ms. Morales Posada's host family paid her marginally more during this brief period, but still less than any applicable minimum wage.

46.     Ms. Morales Posada worked fewer hours while her host family's children attended camp during the June 2020.

47.     Ms. Morales Posada has never received overtime premiums at her third placement.

48.     Cultural Care has failed to maintain any time records for any of Ms. Morales Posada's work.

49.     Cultural Care has failed to provide pay statements for any of Ms. Morales Posada's work.

### C. **Ms. Guimaraes' Employment with Cultural Care**

50. Ms. Guimaraes is a citizen of Brazil.

51. Ms. Guimaraes started as a Cultural Care au pair in or about September 2018.

52. She spent the first two weeks of the placement with her family in Utah, and then moved with the family to New York in or about October 2018.

53. Ms. Guimaraes attended three or four days of training required by, and put on by, Cultural Care in New York upon her arrival.

54. Throughout her placement, Ms. Guimaraes has been paid $200 per week for every week worked.

55. For the first year of her placement, from approximately September 2018 through September 2019, Ms. Guimaraes worked approximately 9 hours per day, 5 days a week (or 45 hours per week). During this period, she typically did not have any break in responsibilities that would allow her to leave the house.

56. From approximately September 2019 until November 2020, Ms. Guimaraes worked a schedule from 9 am until 6pm five days a week, with a break in the middle of the day of approximately 2.5 hours.

57. From approximately November 2020 through the present, Ms. Guimaraes has worked approximately 9 hours per day, 5 days a week (or 45 hours per week). During this period, she typically has not had any break in responsibilities that would allow her to leave the house or even eat a meal relieved of duty.

58. Ms. Guimaraes has never received any overtime premiums for hours worked in excess of 40 in a week.

59. Ms. Guimaraes never received any pay statements for any of her work as a J-1 visa au pair.

## D. **Ms. Rocha's Employment with Cultural Care**

60. Ms. Rocha is a citizen of Brazil.

61. Ms. Rocha started as a Cultural Care au pair in or about January 2020 in South Orange, New Jersey. Ms. Rocha continues to work as an au pair in South Orange, New Jersey.

62. Ms. Rocha participated in a three to four days of training, required by, and put on by, Cultural Care in New York upon her arrival.

63. This training was uncompensated.

64. At her New Jersey placement, Ms. Rocha was initially paid $195.75 per week for every week worked. After approximately nine months the weekly amount was rounded to $200.00. Beginning on January 1, 2020 she receives a weekly amount of $250.00 for each week worked.

65. For the first three months of three months of her placement, prior to the COVID-19 pandemic, Ms. Rocha usually worked approximately 7 hours per day, 5 days a week (or 35 hours per week).

66. Since March 2020, following the start of the pandemic, Ms. Rocha's schedule was to work from 8:30 am to 6:00 p.m., with a one hour break in the middle of the day, meaning that she worked 8.5 hours per day, 5 days a week (or 42 hours per week).

67. Ms. Rocha never received any overtime premiums at her New Jersey placement.

68. Cultural Care has failed to maintain any time records for any of Ms. Rocha's work.

69. Cultural Care has failed to provide pay statements for any of Ms. Rocha's work.

## E. Ms. Barrientos' Employment with Cultural Care

70. Ms. Barrientos is a citizen of Colombia.

71. Ms. Barrientos attended a several day training required by, and put on by, Cultural Care in New York upon her arrival.

72. Ms. Barrientos first placement in Tennessee only lasted two weeks, from approximately July 1, 2018 to July 13, 2018.

73. Ms. Barrientos' second placement was in Winnetka, Illinois where she worked from August 2018 to June 2020.

74. At her placement in Winnetka, Illinois, she was paid $200.00 per week for every week worked.

75. At her placement in Winnetka, Illinois Ms. Barrientos usually worked approximately 10 hours per day, 5 days a week (or 50 hours per week).

76. On many days she worked 10 hours straight with no break.

77. In addition to the 50 hours, Ms. Barrientos occasionally worked a few hours on the weekend for which she might be paid an extra $10.00 per hour.

78. Ms. Barrientos' third placement was in Kenilworth, Illinois where she worked from April 2020 to June 2020.

79. At her placement in Kenilworth, Illinois she was paid $200.00 per week for every week worked.

80. At her placement in Kenilworth, Illinois Ms. Barrientos usually worked approximately 6 hours per day, 5 days a week (or 30 hours per week.)

81. Ms. Barrientos never received any overtime premiums at her Illinois placements.

82. Cultural Care has failed to maintain any time records of Ms. Barrientos's work.

83. Cultural Care has failed to provide pay statements for any of Ms. Barrientos' work.

# RULE 23 CLASS ALLEGATIONS

Plaintiffs brings all claims alleged herein on behalf of the following classes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

## The California Class

84.     Plaintiff Morales Posada brings the California claims alleged herein under California law as class action claims on behalf of, and seeks to have certified pursuant to Rule 23 of the Federal Rules of Civil Procedure, a class comprised of all individuals who were sponsored by Cultural Care and worked as au pairs in the State of California during any portion of the period commencing four years prior to the filing of this action through the entry of final judgment in this action (the "California Class" and "California Class Members").

85.     The claims of the California Class have been brought and may properly be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because (1) the class is so numerous that joinder of all class members is impracticable; (2) there are questions of law and or fact common to the class; (3) the claims of the proposed class representative are typical of the claims of the class; and (4) the proposed class representative and her counsel will fairly and adequately protect the interests of the class.  In addition, the questions of law or fact that are common to the class predominate over any questions affecting only individual class members and a class action is superior to other available means for fairly and efficiently adjudicating the controversy.

86.     Numerosity: The California Class as defined herein is so numerous that joinder would be impracticable. Cultural Care has sponsored hundreds of au pairs during the California Class Period. The names and addresses of the California Class Members are available to Cultural

Care and the composition of the California Class can be readily ascertained. Notice can be provided to the California Class Members via first class mail using techniques and a form of notice similar to those customarily used in class action lawsuits of this nature.

87.     Commonality and Predominance of Common Questions: There are questions of law and fact common to Plaintiff Morales Posada and the California Class Members that predominate over any questions affecting only individual members of the Class.  These common questions of law and fact include, but are not limited to:

    a. Whether state wage and hour laws are preempted by federal law.

    b. Whether Cultural Care maintained a policy or practice of requiring California Class Members to work for less than the minimum wage for all hours worked;

    c. Whether Cultural Care maintained a policy or practice of requiring California Class Members to work overtime hours without overtime compensation;

    d. Whether Cultural Care violated California Labor Code § 1194, IWC Wage Order 15, and the Minimum Wage Order by their failure to pay California Class Members minimum wages for all hours worked.

    e. Whether Cultural Care has violated California Labor Code § 510 and IWC Wage Order 15 by their failure to pay California Class Members overtime compensation;

    f. Whether Cultural Care's policy or practice gives rise to liquidated damages under Labor Code § 1194.2;

    g. Whether Cultural Care failed to maintain records showing hours worked, breaks taken, and value of room and board provided in violation of §§ 226, 226.7, 512, 1174, and Wage Order 15;

    h. Whether Cultural Care Failed to provide lawful wage statements to California Class Members in violation of Labor Code § 226(a) and Wage Order 15;

    i. Whether Cultural Care knowingly and intentionally violated California Labor Code § 226(a) by failing to furnish California Class Members with accurate written itemized statements at the time of the payment of their wages; and

    j. Whether Cultural Care's practices constituted unlawful, unfair, and/or fraudulent business practices under California Busines and Professions Code § 17200 et seq.

88.     Typicality: Plaintiff Morales Posada's claims are typical of the claims of the other California Class Members. Cultural Care's common course of unlawful conduct has caused Plaintiff Morales Posada and California Class Members to sustain the same or similar injuries and

damages caused by the same common policies, practices, and decisions of Cultural Care. Plaintiff Morales Posada's claims are thereby representative of and co-extensive with the claims of the other California Class Members.

89.     Adequacy of Representation: Plaintiff Morales Posada is a member of the Rule 23 Class defined herein, does not have any conflicts of interest with other California Class Members, and will prosecute the case vigorously on behalf of the class. Plaintiff will fairly and adequately represent and protect the interests of the California Class Members. Plaintiff Morales Posada has retained attorneys who are competent and experienced in litigating large employment class actions, including large wage and hour class actions.

90.     Superiority: The expense and burden of individual litigation by each member makes or make it impractical for California Class Members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought, or be required to be brought, by each individual Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other Class Members who are parties to the adjudication and/or may substantially impede their ability to adequately protect their interests.

**The New York Class**

91.     Plaintiffs Morales Posada and Guimaraes (the "New York Plaintiffs") bring New York claims alleged herein under New York law as class action claims on behalf of, and seek to have certified pursuant to Rule 23 of the Federal Rules of Civil Procedure, a class comprised of all individuals who were sponsored by Cultural Care and worked as au pairs in the State of New York

during any portion of the period commencing six years prior to the filing of this action through the entry of final judgment in this action (the "New York Class" and "New York Class Members").

92. The claims of the New York Class have been brought and may properly be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because (1) the class is so numerous that joinder of all class members is impracticable; (2) there are questions of law and or fact common to the class; (3) the claims of the proposed class representative are typical of the claims of the class; and (4) the proposed class representative and her counsel will fairly and adequately protect the interests of the class. In addition, the questions of law or fact that are common to the class predominate over any questions affecting only individual class members and a class action is superior to other available means for fairly and efficiently adjudicating the controversy.

93. Numerosity: The New York Class as defined herein is so numerous that joinder would be impracticable. Cultural Care has employed hundreds of au pairs during the New York Class Period. The names and addresses of the New York Class Members are available to Cultural Care and the composition of the New York Class can be readily ascertained. Notice can be provided to the New York Class Members via first class mail using techniques and a form of notice similar to those customarily used in class action lawsuits of this nature.

94. Commonality and Predominance of Common Questions: There are questions of law and fact common to the New York Plaintiffs and the New York Class Members that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, but are not limited to:

    a. Whether state wage and hour laws are preempted by federal law.

    b. Whether Cultural Care maintained a policy or practice of requiring New York Class Members to work for less than the minimum wage for all hours worked;

15

c. Whether Cultural Care maintained a policy or practice of requiring New York Class Members to work overtime hours without overtime compensation;

d. Whether Cultural Care violated New York Labor Law by its failure to pay New York Class Members minimum wages for all hours worked;

e. Whether Cultural Care has violated N.Y. LAB. LAW § 191 by failing to pay wages for all hours worked;

f. Whether Cultural Care has violated Sections 142-2.2 and 142-2.9 of the enacting regulations of the New York Labor Law (N.Y. COMP. CODES R. & REGS. tit. 12, §§ 142-2.2, 142-2.9) by their failure to pay New York Class Members overtime compensation;

g. Whether Cultural Care's policy or practice gives rise to liquidated damages

h. Whether Cultural Care has knowingly and intentionally violated N.Y. LAB. LAW § 195 by failing to furnish New York Class Members with statements at the time of the payment of their wages showing their actual hours worked;

i. Whether Cultural Care has knowingly and intentionally violated N.Y. LAB. LAW § 195 by failing to furnish New York Class Members with statements at the time of the payment of their wages indicating the hourly rate of pay;

j. Whether Cultural Care has knowingly and intentionally N.Y. LAB. LAW § 195 by failing to furnish New York Class Members with statements at the time of the payment of their wages indicating the inclusive date of the period for which the employee was paid;

k. Whether Cultural Care violated N.Y. LAB. LAW § 195 by failing to keep accurate records of employees' hours of work;

l. The proper measure of damages, restitution, interest, and penalties owed to the New York Plaintiffs and the New York Class Members.

95. Typicality: The New York Plaintiffs' claims are typical of the claims of the other New York Class Members. Cultural Care's common course of unlawful conduct has caused Plaintiff and New York Class Members to sustain the same or similar injuries and damages caused by the same common policies, practices, and decisions of Cultural Care. The New York Plaintiffs' claims are thereby representative of and co-extensive with the claims of the other New York Class Members.

96. Adequacy of Representation: The New York Plaintiffs are members of the Rule 23 Class defined herein, do not have any conflicts of interest with other New York Class Members,

and will prosecute the case vigorously on behalf of the class. The New York Plaintiffs will fairly and adequately represent and protect the interests of the New York Class Members. The New York Plaintiffs have retained attorneys who are competent and experienced in litigating large employment class actions, including large wage and hour class actions.

97.    Superiority:  The expense and burden of individual litigation by each member makes or make it impractical for New York Class Members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought, or be required to be brought, by each individual New York Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other New York Class Members who are parties to the adjudication and/or may substantially impede their ability to adequately protect their interests.

**The New Jersey Class**

98.    Plaintiff Rocha brings the New Jersey claims alleged herein under New Jersey law as class action claims on behalf of, and seek to have certified pursuant to Rule 23 of the Federal Rules of Civil Procedure, a class comprised of all individuals who were sponsored by Cultural Care and worked as au pairs in the State of New Jersey during any portion of the period commencing six years prior to the filing of this action through the entry of final judgment in this action (the "New Jersey Class" and "New Jersey Class Members").

99.    The claims of the New Jersey Class have been brought and may properly be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because (1) the class is so numerous that joinder of all class members is impracticable; (2) there are questions of law and or fact common to the class; (3) the claims of the proposed class representative are typical

of the claims of the class; and (4) the proposed class representative and her counsel will fairly and adequately protect the interests of the class. In addition, the questions of law or fact that are common to the class predominate over any questions affecting only individual class members and a class action is superior to other available means for fairly and efficiently adjudicating the controversy.

100.     Numerosity: The New Jersey Class as defined herein is so numerous that joinder would be impracticable. Cultural Care has employed hundreds, and perhaps thousands of au pairs during the New Jersey Class Period. The names and addresses of the New Jersey Class Members are available to Cultural Care and the composition of the New Jersey Class can be readily ascertained. Notice can be provided to the New Jersey Class Members via first class mail using techniques and a form of notice similar to those customarily used in class action lawsuits of this nature.

101.     Commonality and Predominance of Common Questions: There are questions of law and fact common to Plaintiff Rocha and the New Jersey Class Members that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, but are not limited to:

a.   Whether state wage and hour laws are preempted by federal law.

b.   Whether Cultural Care maintained a policy or practice of requiring New Jersey Class Members to work for less than the minimum wage for all hours worked;

c.   Whether Cultural Care maintained a policy or practice of requiring New Jersey Class Members to work overtime hours without overtime compensation;

d.   Whether Cultural Care violated New Jersey Law by its failure to pay New Jersey Class Members minimum wages for all hours worked;

e.   Whether Cultural Care has violated New Jersey Law by its failure to pay New York Class Members overtime compensation;

f.   Whether Cultural Care's policy or practice gives rise to liquidated damages;

       g.   The proper measure of damages, restitution, interest, and penalties owed to Plaintiff Rocha the New Jersey Class Members.

102.    Typicality: Plaintiff Rocha's claims are typical of the claims of the other New Jersey Class Members. Cultural Care's common course of unlawful conduct has caused Plaintiff Rocha and New Jersey Class Members to sustain the same or similar injuries and damages caused by the same common policies, practices, and decisions of Cultural Care. Plaintiff Rocha's claims are thereby representative of and co-extensive with the claims of the other New Jersey Class Members.

103.    Adequacy of Representation: Plaintiff Rocha is a member of the Rule 23 Class defined herein, do not have any conflicts of interest with other New Jersey Class Members, and will prosecute the case vigorously on behalf of the class. Plaintiff Rocha will fairly and adequately represent and protect the interests of the New Jersey Class Members. Plaintiff Rocha has retained attorneys who are competent and experienced in litigating large employment class actions, including large wage and hour class actions.

104.    Superiority: The expense and burden of individual litigation by each member makes or make it impractical for New Jersey Class Members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought, or be required to be brought, by each individual New Jersey Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other New Jersey Class Members who are parties to the adjudication and/or may substantially impede their ability to adequately protect their interests.

**The Illinois Class**

105.     Plaintiff Barrientos brings the Illinois alleged herein under Illinois law as class action claims on behalf of, and seek to have certified pursuant to Rule 23 of the Federal Rules of Civil Procedure, a class comprised of all individuals who were sponsored by Cultural Care and worked as au pairs in the State of Illinois during any portion of the period commencing three years prior to the filing of this action through the entry of final judgment in this action (the "Illinois Class" and "Illinois Class Members").

106.     The claims of the Illinois have been brought and may properly be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because (1) the class is so numerous that joinder of all class members is impracticable; (2) there are questions of law and or fact common to the class; (3) the claims of the proposed class representative are typical of the claims of the class; and (4) the proposed class representative and her counsel will fairly and adequately protect the interests of the class. In addition, the questions of law or fact that are common to the class predominate over any questions affecting only individual class members and a class action is superior to other available means for fairly and efficiently adjudicating the controversy.

107.     Numerosity: The Illinois Class as defined herein is so numerous that joinder would be impracticable. Cultural Care has employed hundreds, and perhaps thousands of au pairs during the Illinois Class Period. The names and addresses of the Illinois Class Members are available to Cultural Care and the composition of the Illinois Class can be readily ascertained. Notice can be provided to the Illinois Class Members via first class mail using techniques and a form of notice similar to those customarily used in class action lawsuits of this nature.

108.     Commonality and Predominance of Common Questions: There are questions of law and fact common to Plaintiff Barrientos and the Illinois Class Members that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, but are not limited to:

a. Whether state wage and hour laws are preempted by federal law.

b. Whether Cultural Care maintained a policy or practice of requiring Illinois Class Members to work for less than the minimum wage for all hours worked;

c. Whether Cultural Care maintained a policy or practice of requiring Illinois Class Members to work overtime hours without overtime compensation;

d. Whether Cultural Care violated Illinois Law by its failure to pay Illinois Class Members minimum wages for all hours worked;

e. Whether Cultural Care has violated Illinois Law by its failure to pay Illinois Class Members overtime compensation;

f. Whether Illinois policy or practice gives rise to liquidated damages;

g. The proper measure of damages, restitution, interest, and penalties owed to Plaintiff Barrientos and the Illinois Class Members.

109.     Typicality: Plaintiff Barrientos's claims are typical of the claims of the other Illinois Class Members. Cultural Care's common course of unlawful conduct has caused Plaintiff Barrientos and Illinois Class Members to sustain the same or similar injuries and damages caused by the same common policies, practices, and decisions of Cultural Care. Plaintiff Barrientos' claims are thereby representative of and co-extensive with the claims of the other Illinois Class Members.

110.     Adequacy of Representation: Plaintiff Barrientos is a member of the Rule 23 Class defined herein, do not have any conflicts of interest with other Illinois Class Members, and will prosecute the case vigorously on behalf of the class. Plaintiff Barrientos will fairly and adequately represent and protect the interests of the Illinois Class Members. Plaintiff Barrientos has retained

attorneys who are competent and experienced in litigating large employment class actions, including large wage and hour class actions.

111. Superiority: The expense and burden of individual litigation by each member makes or make it impractical for Illinois Class Members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought, or be required to be brought, by each individual Illinois Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other Illinois Class Members who are parties to the adjudication and/or may substantially impede their ability to adequately protect their interests.

**The Consumer Class**

112. Plaintiffs bring their consumer claims alleged herein under the applicable state consumer protection laws as class action claims on behalf of, and seek to have certified pursuant to Rule 23 of the Federal Rules of Civil Procedure, a class comprised of all individuals who were sponsored by Cultural Care and worked as au pairs in the states of New York, Illinois, New Jersey, Connecticut, and Washington during any portion of the period commencing during the applicable statute of limitations prior to the filing of this action through the entry of final judgment in this action (the "Consumer Class").

113. The claims of the Consumer Class have been brought and may properly be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because (1) the class is so numerous that joinder of all class members is impracticable; (2) there are questions of law and or fact common to the class; (3) the claims of the proposed class representative are typical of the claims of the class; and (4) the proposed class representative and her counsel will fairly and

adequately protect the interests of the class. In addition, the questions of law or fact that are common to the class predominate over any questions affecting only individual class members and a class action is superior to other available means for fairly and efficiently adjudicating the controversy.

114. Numerosity: The Consumer Class as defined herein is so numerous that joinder would be impracticable. There were over 7,000 au pairs in the applicable states in 2019 and Cultural Care employed a significant percentage of those au pairs. Cultural Care's business records will contain the exact number. Notice can be provided to the Consumer Class Members via first class mail using techniques and a form of notice similar to those customarily used in class action lawsuits of this nature.

115. Commonality and Predominance of Common Questions: There are questions of law and fact common to Plaintiffs and the Consumer Class Members that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, but are not limited to:

    a. Whether state wage and hour laws are preempted by federal law.

    b. Whether Cultural Care had a policy of instructing au pairs and host families that au pair pay could be less than applicable state and federal minimums.

116. Typicality: Plaintiffs' claims are typical of the claims of the other Consumer Class Members. Cultural Care's common course of unlawful conduct has caused Plaintiffs and Consumer Class Members to sustain the same or similar injuries and damages caused by the same common policies, practices, and decisions of Cultural Care. Plaintiffs' claims are thereby representative of and co-extensive with the claims of the other Consumer Class Members.

117. Adequacy of Representation: Plaintiffs are members of the Rule 23 Class defined herein, do not have any conflicts of interest with other Consumer Class Members, and will prosecute the case vigorously on behalf of the class. Plaintiff will fairly and adequately represent and protect the interests of the Consumer Class Members. Plaintiffs have retained attorneys who are competent and experienced in litigating large employment and consumer class actions, including large wage and hour class actions.

118. Superiority: The expense and burden of individual litigation by each member makes or make it impractical for Consumer Class Members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought, or be required to be brought, by each individual Consumer Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other Consumer Class Members who are parties to the adjudication and/or may substantially impede their ability to adequately protect their interests.

## FLSA COLLECTIVE ACTION ALLEGATIONS

119. Plaintiffs bring their Fair Labor Standards Act ("FLSA") claims as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all other similarly situated current and former employees of Defendants.

120. Pending any modifications necessitated by discovery, Plaintiffs preliminarily define the "FLSA Class" of all individuals who were sponsored by Cultural Care and worked as J-1 visa au pairs during any portion of the period commencing three years prior to the filing of this action through the entry of final judgment in this action (the "FLSA Collective").

121. All potential FLSA Collective Members are similarly situated because, among other things, they were all employees of Defendant and, upon information and belief, all suffered from the same policies of Defendant, *i.e.*, instructing au pair host families that it is legal to pay as little as $195.75 per week for 45 hours per week of work, requiring au pairs to attend four days of uncompensated training prior to traveling to their host families, and not, as third-party employers, paying overtime to au pairs that work more than 40 hours in a workweek.

122. Plaintiffs have filed consent forms to join this action. It is anticipated that additional au pairs will file consent forms to join this action as it proceeds.

## COUNT I –FAILURE TO PAY CALIFORNIA MINIMUM WAGES FOR ALL HOURS WORKED
### *(On Behalf Of Plaintiff Morales Posada and the California Class)*

123. The IWC Wage Orders, California Labor Code §§ 1194 and 1197, and the San Francisco Minimum Wage Ordinance require employers to pay employees at least minimum wage for all hours worked.

124. California Labor Code § 1182.12, as well as the IWC Wage Orders, provide that the California minimum wage was $10.00/hour effective January 1, 2016; $10.50/hour effective January 1, 2017; $11.00/hour effective January 1, 2018; $12.00/hour effective January 1, 2019; $13.00/ hour effective January 1, 2020; and $14.00/ hour effective January 1, 2021.

125. The San Francisco Minimum Wage Ordinance, San Francisco Administrative Code, Chapter 12R.4, provides that employees working within the geographic boundaries of the City are entitled to a Minimum Wage as follows for each hour worked: (A) Beginning on July 1, 2016, an hourly wage of $13.00; (B) Beginning on July 1, 2017, an hourly wage of $14.00. (C) Beginning on July 1, 2018, an hourly wage of $15.00; (D) Beginning on July 1, 2019, an hourly wage of $15.59; and (E) Beginning on July 1, 2020, an hourly wage of $16.07.

126.     California Labor Code § 1194.2 provides that "In any action under Section 1193.6 or Section 1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."

127.     The minimum wage provisions of California Law are enforceable by private civil action pursuant to California Labor Code § 1194(a).

128.     As described herein, Cultural Care maintained a policy and/or practice of failing and refusing to pay Plaintiff and the California Class Members minimum wages for all hours worked. At all times relevant herein, Cultural Care had a policy and practice of failing to pay Plaintiff Morales Posada and California Class Members for all hours they worked.

129.     As a direct and proximate result of Cultural Care's unlawful conduct as set forth herein, Plaintiff and California Class Members have sustained damages, including lost wages, in an amount to be determined at trial.

130.     In addition to recovering unpaid wages, Plaintiff and California Class Members are entitled to recover interest and liquidated damages, and reasonable attorneys' fees and costs, pursuant to California Labor Code §§1194(a) and 1194.2(a).

## COUNT II –FAILURE TO PAY CALIFORNIA OVERTIME WAGES
*(On Behalf Of Plaintiff Morales Posada and the California Class)*

131.     California Labor Code § 1454 provides that domestic workers Plaintiff and California Class Members are entitled to overtime compensation after working nine hours in a day or 45 hours in a week.

132.     Plaintiff Morales Posada and California Class Members worked over nine hours in a day and over 45 hours in a week while serving as au pairs, for which Cultural Care did not pay them overtime premium compensation.

133. By failing to pay overtime compensation to Plaintiff Morales Posada and California Class Members, Cultural Care violated Labor Code § 1450 et. seq and IWC wage order No. 15.

134. As a result of Cultural Care's unlawful acts, Plaintiff Morales Posada and California Class Members have been deprived of overtime compensation in an amount to be determined at trial, and are entitled to recovery of such amounts, plus interest thereon, and attorneys' fees and costs, under Labor Code § 1194.

## COUNT III – FAILURE TO PROVIDE ACCURATE CALIFORNIA WAGE STATEMENTS
*(On Behalf Of Plaintiff Morales Posada and the California Class)*

135. California Labor Code § 226(a) provides:

> Each employer shall semimonthly, or at the time of each payment of wages, furnish each of his or her employees either as a detachable part of the check, draft or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an itemized wage statement in writing showing: (1) gross wages earned; (2) total number of hours worked by each employee whose compensation is based on an hourly wage; (3) all deductions provided that all deductions made on written orders of the employee may be aggregated and shown as one item; (4) net wages earned; (5) the inclusive date of the period for which the employees is paid; (6) the name of the employee and his or her social security number; and (7) the name and address of the legal entity which is the employer.

136. California Labor Code § 226(e) provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees. * * * An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide a wage statement.

137. Cultural Care failed to provide Plaintiff Morales Posada and the California Class Members any wage statement.

138.     As a direct and proximate result of Cultural Care's unlawful conduct as set forth herein, Plaintiff Morales Posada and California Class Members may recover the damages and penalties provided for under California Labor Code § 226(e), plus interest thereon, reasonable attorneys' fees, and costs. In addition, Plaintiff Morales Posada and the California Class Members are entitled to injunctive relief to ensure compliance with this section, pursuant to California Labor Code § 226(h).

## COUNT IV – UNFAIR BUSINESS PRACTICES IN VIOALATION OF THE UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200
*(On Behalf Of Plaintiff Morales Posada and the California Class)*

139.     California Business and Professions Code § 17200, et seq. ("BCP 17200") prohibits "any unlawful, unfair, or fraudulent business act or practice."

140.     Cultural Care's knowing conduct, as alleged herein, constitutes an unlawful and/or fraudulent business practice, as set forth in BCP 17200. Specifically, Cultural Care conducted business activities while failing to comply with the legal mandates cited herein.

141.     A violation of BCP 17200 may be predicated on the violation of any state or federal law. Here Cultural Care's policies and practices of (1) failing to pay Plaintiff Morales Posada and California Class Members minimum wages in violation of California law; (2) failing to pay Plaintiff Morales Posada and California Class Members overtime wages in violation of California law; (3) making deductions from the compensation owed Plaintiff Morales Posada and California Class Members in violation of California law, including by unlawfully crediting lodging and meals provided Plaintiff Morales Posada and California Class Members; and (4) failing to provide complete and accurate itemized wage statements pursuant to California Labor Code § 226.

142.     Cultural Care's knowing failure to adopt policies in accordance with and/or to adhere to these laws, all of which are binding upon and burdensome to its competitors, engenders

an unfair competitive advantage to Cultural Care thereby constituting an unfair business practice under BPC 17200.

143. Cultural Care's violation of California wage and hour laws and illegal payroll practices or payment policies constitute an unfair business practice because they were done repeatedly over a significant period of time, an in a systematic manner to the detriment of Plaintiff Morales Posada and California Class Members.

144. The harm of the above-described failure to pay wages owed to Plaintiff Morales Posada and California Class Members outweighs the utility of the practices by Cultural Care, and consequently, constitutes an unfair business act or practice within the meaning of the UCL.

145. Upon information and belief, Cultural Care continues its fraudulent and/or unlawful and/or unfair conduct as previously described. As a result of this conduct, Cultural Care has fraudulently and/or unlawfully and/or unfairly obtained monies due to Plaintiff and all other class members, thereby unfairly competing in the marketplace.

146. Plaintiff Morales Posada thus brings this cause of action seeking equitable and statutory relief to stop Cultural Care's misconduct, as complained of herein, and to seek restitution of the amounts Cultural Care acquired through the unfair, unlawful, and fraudulent business practices described herein.

147. Pursuant to BPC 17200, Plaintiff Morales Posada and California Class Members are entitled to (i) restitution of all wages and compensation alleged herein that Cultural Care withheld and retained during the period commencing four years prior to the filing of this action, (ii) a permanent injunction requiring prohibiting further violations of the type alleged herein, (iii) an award of reasonable attorneys' fees pursuant to Cal. Civ. Proc. Code § 1021.5 and other applicable law, and (iv) costs.

## COUNT V –FAILURE TO PAY NEW YORK MINIMUM WAGES FOR ALL HOURS WORKED

*(On Behalf Of the New York Plaintiffs and the New York Class)*

148.     The minimum wage provisions of Article 19 of the New York Labor Law ("NYLL") and the supporting New York State Department of Labor Regulations apply to Cultural Care, and protect the Plaintiffs and New York Class Members.

149.     Cultural Care failed to pay the New York Plaintiffs and New York Class Members the minimum hourly wages to which she was entitled under the NYLL and the supporting New York State Department of Labor Regulations.

150.     Pursuant to the N.Y. Lab. Law §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, Cultural Care was required to pay the New York Plaintiffs and the New York Class members minimum wage consistent with N.Y. Lab. Law § 652.

151.     Through their knowing or intentional failure to pay minimum hourly wages to the New York Plaintiffs and New York Class Members, Cultural Care willfully violated N.Y. Lab. Law §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations.

152.     Due to Cultural Care's willful violations of the NYLL, the New York Plaintiffs and New York Class Members are entitled to recover from Cultural Care her unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest.

153.     The minimum wage provisions of Article 19 of the New York Labor Law ("NYLL") and the supporting New York State Department of Labor Regulations apply to Cultural Care, and protect the Plaintiffs and New York Class Members.

## COUNT VI – FAILURE TO PAY NEW YORK OVERTIME WAGES
*(On Behalf Of the New York Plaintiffs and the New York Class)*

154.     Cultural Care did not pay the New York Plaintiffs the proper overtime wages for all the time that they were suffered or permitted to work more than forty-four (44) hours each workweek in New York.

155.     During their employment in New York, the New York Plaintiffs and the New York Class generally and consistently worked in excess of 44 hours per work week.

156.     During such workweeks, Cultural Care did not compensate the New York Plaintiffs and the New York Class at time and a half the regular wage rate for all of the overtime hours she worked.

157.     The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Cultural Care, and protect Plaintiffs and the New York Class.

158.     Cultural Care failed to pay the New York Plaintiffs and the New York Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations for all hours worked beyond 44 hours per workweek.

159.     Cultural Care failed to keep, make, preserve, maintain and furnish accurate records of time worked by the New York Plaintiffs and New York Class Members.

160.     Through their knowing or intentional failure to pay the New York Plaintiffs overtime wages for hours worked in excess of 44 hours per workweek, Cultural Care willfully violated the N.Y. Lab. Law §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

161.     Due to Cultural Care's willful violations of the NYLL, the New York Plaintiffs and New York Class Members are entitled to recover from Cultural Care their unpaid overtime wages,

liquidated damages as provided for by the NYLL, reasonable attorney's fees and costs of the action, and pre-judgment and post-judgment interest.

## COUNT VII –FAILURE TO PROVIDE NEW YORK WAGE STATEMENTS
### *(On Behalf Of the New York Plaintiffs and the New York Class)*

162.    Cultural Care willfully failed to provide the New York Plaintiffs and the New York Class and those similarly situated with written notices of their rate of pay, regular pay day, and such information as required by N.Y. Lab. Law § 195(3) and/or 198(1-b).

163.    Due to Cultural Care's violations of the NYLL, the New York Plaintiffs and the New York Class and those similarly situated are each entitled to recover fifty dollars ($50) for each work day that the violations occurred or continue to occur, or a total of five thousand ($5,000) dollars, costs, reasonable attorney's fees, and including injunctive and declaratory relief that the court in its discretion deems necessary or appropriate.

## COUNT VIII –FAILURE TO PAY NEW JERESY MINIMUM WAGES FOR ALL HOURS WORKED
### *(On Behalf Of Plaintiff Rocha and the New Jersey Class)*

164.    At all relevant times, Cultural Care employed Plaintiff Rocha and the New Jersey Class within the meaning of the New Jersey Wage and Hour Law, N.J.S.A 34:11-56a, *et seq*., and the supporting New Jersey Department of Labor and Workforce Development Regulations (together, "NJWHL").

165.    Cultural Care failed to pay Plaintiff Rocha and the New Jersey Class at least minimum wage under NJWHL during each workweek.

166.    Cultural Care's failure to pay New Jersey minimum wage was willful, as it knew or should have known that state minimum wage requirements applied to Plaintiff Rocha and the New Jersey Class because, among other reasons, previous courts indicated to Cultural Care that state wage and hour law applied to it.

167.     Pursuant to N.J.S.A 34:11-56a25, Plaintiff Rocha and the New Jersey Class are entitled to recover unpaid minimum wages, liquidated damages, attorneys' fees, costs, and pre-judgment and post-judgment interest.

### COUNT IX –FAILURE TO PAY NEW JERESY OVERTIME WAGES
*(On Behalf Of Plaintiff Rocha and the New Jersey Class)*

168.     At all relevant times, Cultural Care employed Plaintiff Rocha and the New Jersey Class within the meaning of the New Jersey Wage and Hour Law, N.J.S.A 34:11-56a, *et seq*., and the supporting New Jersey Department of Labor and Workforce Development Regulations (together, "NJWHL").

169.     Cultural Care failed to pay Plaintiff Rocha and the New Jersey Class overtime for hours worked in excess of 40 in a workweek.

170.     Cultural Care's failure to pay New Jersey overtime was willful, as it knew or should have known that state overtime requirements applied to Plaintiff Rocha and the New Jersey Class because, among other reasons, previous courts indicated to Cultural Care that state wage and hour law applied to it.

171.     Pursuant to N.J.S.A 34:11-56a25, Plaintiff Rocha and the New Jersey Class are entitled to recover unpaid overtime, liquidated damages, attorneys' fees, costs, and pre-judgment and post-judgment interest.

### COUNT X—FAILURE TO PAY ILLINOIS MINIMUM WAGES FOR ALL HOURS WORKED
*(On Behalf of Plaintiff Barrientos and the Illinois Class)*

172.     The minimum wage provisions of the Illinois Minimum Wage Law ("IMWL") apply to Cultural Care and protect Plaintiff Barrientos and Illinois Class Members. 820 ILCS § 105/3(c) & (d).; 820 ILCS § 105/3(d).

173.     Defendant failed to pay Plaintiff Barrientos and Illinois Class Members at least minimum wage under the IMWL during each workweek. 820 ILCS §105/4(a)(1).

174.     Illinois Class Members who worked for Defendant prior to February 19, 2019 are entitled to unpaid overtime, penalty interest equal to two percent (2%) of Defendant's underpayments for each month following the date of payment during which underpayment remained unpaid, pre-judgment and post-judgment interest, and attorney's fees and costs under the IMWL for the preceding three years. 820 ILCS §§ 105/4(a)(1), 105/12(a) (2006).

175.     Illinois Class Members who worked for Defendant on and after February 19, 2019 are entitled to treble the amount of unpaid minimum wages, penalty interest equal to five percent (5%) of Defendant's underpayments for each month following the date of payment during which underpayment remained unpaid, pre-judgment and post-judgment interest, and attorneys' fees and costs under the IMWL for the preceding three years. 820 ILCS §§ 105/4(a)(1), 105/12(a) (2019).

## COUNT XI—FAILURE TO PAY ILLINOIS OVERTIME WAGES

(On Behalf Of Plaintiff Barrientos and the Illinois Class)

176.     Plaintiff Barrientos and the Illinois Class were or are employees of Defendant within the meaning of the IMWL. 820 ILCS § 105/3(d).

177.     Defendant is or was the employer of Plaintiff Barrientos and the Illinois Class within the meaning of the IMWL. 820 ILCS § 105/3(c) & (d).

178.     The IMWL requires employers to pay non-exempt employees one and one-half (1.5) times the regular rate of pay for all hours worked over forty (40) per week. 820 ILCS § 105/4a.

179.     Defendant suffered and permitted Plaintiff Barrientos and Illinois Class to routinely work more than forty (40) hours in a workweek without proper overtime compensation as required by the IMWL. *Id.*

180.     Defendant's failure to comply with the IMWL's overtime protections caused Plaintiffs and the Illinois Class to suffer loss of wages and interest thereon.

181.     Illinois Class Members who worked for Defendant prior to February 19, 2019 are entitled to unpaid overtime, penalty interest equal to two percent (2%) of Defendant's underpayments for each month following the date of payment during which underpayment remained unpaid, pre-judgment and post-judgment interest, and attorney's fees and costs under the IMWL. 820 ILCS §§ 105/4a(1) and 105/12(a) (2006).

182.     The Illinois Class Members who worked for Defendant on and after February 19, 2019 are entitled to treble the amount of unpaid overtime, penalty interest equal to five percent (5%) of Defendant's underpayments for each month following the date of payment during which underpayment remained unpaid, pre-judgment and post-judgment interest, and attorneys' fees and costs under the IMWL. 820 ILCS §§ 105/4(a)(1), 105/12(a) (2019).

## COUNT XII –FAIR LABOR STANDARDS ACT: FAILURE TO PAY MINIMUM WAGE
*(On Behalf Of Plaintiffs and the FLSA Collective)*

183.     Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated employees pursuant to 29 U.S.C. § 216(b).

184.     Plaintiffs consent to join this action.

185.     At all relevant times, Cultural Care had two or more employees.

186.     At all relevant times, Cultural Care had an annual dollar volume of sales or business done of at least $500,000.

187. At all relevant times, Plaintiffs and those similarly situated were engaged in commerce or in the production of goods for commerce.

188. At all relevant times, Plaintiffs and those similarly situated were engaged in domestic service because they provided live-in childcare.

189. Plaintiffs and all others similarly situated were "employees" as that term is defined by 29 U.S.C § 203(e) because Cultural Care directs the terms and conditions of employment for the au pairs it sponsors.

190. For similar reasons, Cultural Care "employed" Plaintiffs and all others similarly situated as that term is defined by 29 U.S.C. § 203(g) because each Plaintiff and member of the FLSA Collective was suffered or permitted to work by Cultural Care.

191. Finally, Cultural Care employed Plaintiffs and members of the FLSA Collective pursuant to 29 U.S.C. § 203(d) because Cultural Care acted directly or indirectly in their interest in relation to Plaintiffs and members of the FLSA Collective by, among other things, controlling when, where, and how Plaintiffs and members of the FLSA Collective worked; maintaining employment records for Plaintiffs and members of the FLSA Collective; setting the terms of employment for Plaintiffs and members of the FLSA Collective; and having the power to hire and fire Plaintiffs and members of the FLSA Collective.

192. Cultural Care violated the FLSA when it failed to pay Plaintiffs and the FLSA Collective at least minimum wage.

193. Cultural Care advertised that host families could pay $195.75 per week for 45 hours of work with no overtime. $195.75 per week for 45 hours of work is far below the $7.25 per hour (or $326.25 for 45 hours) required by the FLSA.

194. Cultural Care required its au pairs to attend four days of uncompensated training prior to traveling to their host families.

195. Cultural Care's violations of the FLSA were willful under 29 U.S.C. § 255(a) because it knew or should have known that its pay practices violated the law.

196. Indeed, previous courts indicated to Cultural Care that au pairs must be paid at least $7.25 per hour for each hour worked.

197. Plaintiffs and all others similarly situated are entitled to recover unpaid minimum wages, liquidated damages, attorneys' fees, costs, and post-judgment interest. 29 U.S.C. §§ 206, 216(b).

## COUNT XIII –FAIR LABOR STANDARDS ACT: FAILURE TO PAY OVERTIME
*(On Behalf Of Plaintiffs and the FLSA Collective)*

198. Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated employees pursuant to 29 U.S.C. § 216(b).

199. Plaintiffs consent to join this action.

200. At all relevant times, Cultural Care had two or more employees.

201. At all relevant times, Cultural Care had an annual dollar volume of sales or business done of at least $500,000.

202. At all relevant times, Plaintiffs and those similarly situated were engaged in commerce or in the production of goods for commerce.

203. At all relevant times, Plaintiffs and those similarly situated were engaged in domestic service because they provided live-in childcare.

204. Plaintiffs and all others similarly situated were "employees" as that term is defined by 29 U.S.C § 203(e) because Cultural Care directs the terms and conditions of employment for the au pairs it sponsors.

205. For similar reasons, Cultural Care "employed" Plaintiffs and all others similarly situated as that term is defined by 29 U.S.C. § 203(g) because each Plaintiff and member of the FLSA Collective was suffered or permitted to work by Cultural Care.

206. Finally, Cultural Care employed Plaintiffs and members of the FLSA Collective pursuant to 29 U.S.C. § 203(d) because Cultural Care acted directly or indirectly in their interest in relation to Plaintiffs and members of the FLSA Collective by, among other things, controlling when, where, and how Plaintiffs and members of the FLSA Collective worked; maintaining employment records for Plaintiffs and members of the FLSA Collective; setting the terms of employment for Plaintiffs and members of the FLSA Collective; and having the power to hire and fire Plaintiffs and members of the FLSA Collective.

207. Cultural Care violated the FLSA when it failed to pay Plaintiffs and the FLSA Collective required overtime for their work during each workweek.

208. Cultural Care advertised that host families could pay $195.75 per week for 45 hours of work with no overtime.

209. As a third-party employer, Cultural Care was not entitled to any exemption from overtime and failed to pay overtime to its au pairs for hours worked in excess of 40 in a week.

210. Cultural Care's violations of the FLSA were willful under 29 U.S.C. § 255(a) because it knew or should have known that its pay practices violated the law.

211. Previous courts indicated to Cultural Care that FLSA protections applied to au pairs.

212. Plaintiffs and all others similarly situated are entitled to recover unpaid overtime, liquidated damages, attorneys' fees, costs, and post-judgment interest. 29 U.S.C. §§ 206, 207, 216(b).

## COUNT XIV –DECEPTIVE TRADE PRACTICE
*(On Behalf Of Plaintiffs and the Consumer Class)*

213.     Plaintiffs and those similarly situated assert claims for deceptive trade practices under the consumer protection laws of the states where they provided au pair services. Specifically, New York, Illinois, New Jersey, Connecticut, and Washington.

214.     Cultural Care instructed au pairs and host families that au pair wages should be a minimum of $195.75 per week.

215.     The instruction that au pair wages should be a minimum of $195.75 per week is materially misleading because it ignores requirements to pay state minimum wage and overtime in the respective states, which typically will result in a legal minimum significantly more than $195.75 per week.

216.     Plaintiffs and those similarly situated suffered injuries as a result of Cultural Care's deceptive acts and practices, including by being paid significantly less than the amounts required by the minimum wage and overtime laws of the respective states.

217.     Plaintiffs and those similarly situated are entitled to damages, statutory penalties, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

I.     Issue an order authorizing notice of this case to the putative FLSA Collective, allowing this action to proceed as a FLSA collective action, and appointing Plaintiffs and their counsel to represent the FLSA Collective.

II.     Issue an order allowing this action to proceed as a class action and appointing Plaintiffs and their counsel to represent the Classes.

III.     Issue an order granting Plaintiffs leave to amend this complaint to add additional named plaintiffs and/or state law causes of action as necessary.

IV.     Order a certified, independent accounting, at Cultural Care's expense, of all records in the possession of the Cultural Care that are relevant to the calculation of the damages sought by Plaintiffs in this action, and/or the appointment of a Master or Receiver to determine the correct compensation owed to Plaintiffs, the FLSA Collective, and Class Members.

V.     Determine the damages sustained by Plaintiff, the FLSA Collective, and the Classes as a result of Cultural Care's violations and award those damages against Cultural Care and in favor of Plaintiffs, the FLSA Collective, and the Classes, statutory and liquidated damages and prejudgment interest.

VI.     Order Cultural Care to immediately cease its wrongful conduct as set forth above.

VII.     Award Plaintiffs, the FLSA Collective, and the Classes costs and disbursements of this suit, including, without limitation, reasonable attorneys' fees and expenses.

VIII.     Award Plaintiffs, the FLSA Collectives, and the Classes post-judgment interest on all amounts awarded at the highest rate allowable by law; and

IX.     Any other or further relief as the Court may deem just and proper.

### Jury Demand

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL CLAIMS SO TRIABLE**.

Dated: February 19, 2021

By: s/Matthew C. Helland
MATTHEW C. HELLAND
NICHOLS KASTER, LLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104

H. CLARA COLEMAN
NICHOLS KASTER, PLLP
4700 IDS Center, 80 S. 8th St.
Minneapolis, MN 55402

DAVID H. SELIGMAN
ALEXANDER N. HOOD
TOWARDS JUSTICE
PO Box 371680
PMB 44465
Denver, Colorado 80237-5680
Ph: (720) 441-2236
David@TowardsJustice.org

PETER RUKIN
RUKIN HYLAND & RIGGIN LLP
1939 Harrison Street, Suite 290
Oakland, CA 94612


Attorneys for Plaintiffs

**Certificate of Service**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants as indicated on the NEF.

s/Matthew C. Helland
Matthew C. Helland