UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KAREN MORALES POSADA, | * | |
| AMANDA SARMENTO FERREIRA | * | |
| GUIMARES, WILLIANA ROCHA and | * | |
| SARA BARRIENTOS, individually and | * | |
| on behalf of all others similarly situated, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:20-cv-11862-IT |
| | * | |
| CULTURAL CARE, INC., a | * | |
| Massachusetts Corporation, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

June 20, 2023

TALWANI, D.J.

Plaintiffs Karen Morales Posada, Amanda Sarmento Ferreira Guimares, Williana Rocha,

and Sara Barrientos allege that Defendant Cultural Care, Inc. ("Cultural Care") has violated the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., by failing to pay minimum wages

and overtime pay and by failing to provide certain disclosures. Sec. Amend. Compl. ("SAC"),

Counts XII-XIII [Doc. No. 43]. Plaintiffs assert these claims on their own behalf and on behalf

of similarly situated individuals "who were sponsored by Cultural Care and worked as J-1 visa

au pairs during any portion of the period commencing three years prior to the filing of this action

through the entry of final judgment in this action." Id. at ¶ 120; see also id. at ¶¶ 183, 198.

Pending before the court is Cultural Care's Motion to Strike Pre-Certification Consents

[Doc. No. 114]. Cultural Care asks the court (1) to strike the consents without prejudice to

refiling if and when the court conditionally certifies a FLSA collective and approves notice and

consent forms to join such collective, and (2) to order Plaintiffs' counsel to cease soliciting opt-in consent to sue forms and to do so only in accordance with any notice requirements approved by the court if a collective is conditionally certified. Id. at 1.

Also pending is Plaintiffs' Motion to Certify a Collective Action Pursuant to 29 U.S.C. § 216(b) and Issue Notice to the Proposed Collective [Doc. No. 98] which asks the court to certify a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and to approve notice to potential opt-in FLSA plaintiffs. Pls' Mot. 1-2 [Doc. No. 98].

For the following reasons, Cultural Care's Motion [Doc. No. 114] is DENIED and Plaintiffs' Motion [Doc. No. 98] is GRANTED subject the modifications detailed below.

## I.   Background

Plaintiffs initiated this action on October 15, 2020, and filed their Second Amended Complaint [Doc. No. 43] on February 19, 2021. As of June 15, 2023, 1904 individuals, including the four named Plaintiffs, have filed (and not withdrawn) consents to join the FLSA collective action.[1] While the motions at issue here were pending, the court granted in part and denied in part Cultural Care's Motion to Dismiss [Doc. No. 66], Mem. and Order [Doc. No. 137], and Cultural Care appealed. Cultural Care also sought a stay of proceedings, Mot. to Stay [Doc. No. 156], which Plaintiffs joined after Cultural Care agreed to toll the FLSA statute of limitations, Jt. Stipulation and Request to Grant Defendant's Mot. to Stay [Doc. No. 161]. On November 4, 2021, the court granted the Joint Motion [Doc. No. 161], stayed the action pending resolution of Cultural Care's appeal, and as agreed upon by the parties, tolled the action from November 4,

---

[1] See Plaintiffs' Notices of Consent Filings [Doc. Nos. 32-42, 44-50, 53-65, 69, 72-77, 79-82, 84, 87-97, 101, 103, 105-111, 117-121, 123, 126, 129-130, 134-135, 138-139, 145-148, 150-154, 160, 163-210, 212-219, 221-240, 242-252, 255-259, 261]; see Plaintiffs' Notices of Withdrawals [Doc. Nos. 136, 140, 220, 241].

2021 (the date of the court's Order) "until the elapse of two weeks from the date that the First Circuit resolves Defendant's appeal or the stay is lifted, whichever is shorter." Order [Doc. No. 162].

The United States Court of Appeals for the First Circuit considered and rejected Cultural Care's contention that it was immune from suit (albeit for reasons distinct from this court's reasons). Opinion 4, 26-34 [Doc. No. 253]. The appellate court declined to exercise its discretion under the doctrine of pendent appellate jurisdiction to review the remaining portions of Cultural Care's appeal. Id. at 34-38. On June 9, 2023, mandate issued, returning the matter to this court. On June 20, 2023, the court lifted the stay. Elec. Order [Doc. No. 262]. Tolling of the statute of limitations ends two weeks from the date of mandate, or June 23, 2023.

## II.     Statutory Scheme

An action for damages under the FLSA "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The statute provides, however, that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. Accordingly, the procedures set forth in Federal Rule of Civil Procedure 23 for class actions, allowing "representative parties" to maintain or defend a suit on behalf of class members whose members have not affirmatively opted in, are inapplicable to an FLSA claim. See Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA") (citing Hoffman-La Rouche Inc. v. Sperling, 493 U.S. 165, 177-78 (1989) (Scalia, J., dissenting)). Instead, groups of employees may proceed jointly to bring an FLSA claim only as "party plaintiff[s]" who have affirmatively consented to the action. 29 U.S.C. § 216(b).

In <u>Hoffmann-La Roche</u>, the Supreme Court explained the advantages of a collective action to plaintiffs and the courts. 493 U.S. at 170. The Court addressed the issue in the context of an Age Discrimination in Employment Act ("ADEA") case, as the FLSA's collective action provision in 29 U.S.C. § 216(b) is directly incorporated in the ADEA. <u>Id.</u> at 169 (citing 29 U.S.C. § 626(b)). The Court explained that "[a] collective action allows age discrimination plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." <u>Id.</u> at 170. This advantage is at least equally important in FLSA actions seeking to vindicate minimum wage and overtime laws for low wage employees. <u>See</u> <u>Brooklyn Sav. Bank v. O'Neil</u>, 324 U.S. 697, 707 n.18 (1945) ("The legislative debates indicate that the prime purpose of the [FLSA] was to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage.") (citation to legislative history omitted).

The Court also pointed out the benefits that accrue to the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." <u>Hoffmann-La Roche</u>, 493 U.S. at 170. This benefit is even more compelling in FLSA actions challenging relatively straightforward wage and hour policies and practices as compared to ADEA cases, which necessarily involve more complex issues of discriminatory intent.

The Court concluded that the benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." <u>Id.</u> Accordingly, once a collective action is filed, the district court "has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." <u>Id.</u> at

4

170-71. A district court may exercise its discretion by conditionally certifying an action and

sending such notice. Id. at 171-72. "'[C]onditional certification' does not produce a class with an

independent legal status, or join additional parties to the action." Genesis Healthcare Corp., 569

U.S. at 75. Instead, "the sole consequence of conditional certification is the sending of court-

approved written notice to employees[.]" Id. (citing Hoffmann–La Roche Inc., 493 U.S. at 171–

72).

Under the statutory scheme, the applicable statutes of limitations continue running until

individuals affirmatively join the action by filing their written consent. 29 U.S.C. § 256

(providing that an FLSA collective or class action "shall be considered to be commenced in the

case of any individual claimant — (a) on the date when the complaint is filed, if he is specifically

named as a party plaintiff in the complaint and his written consent to become a party plaintiff is

filed on such date in the court in which the action is brought; or (b) if such written consent was

not so filed or if his name did not so appear—on the subsequent date on which such written

consent is filed…").

### III.   Cultural Care's Motion to Strike Consents

#### A.   Consents Filed Prior to Certification

Cultural Care argues that consents gathered prior to court-approved notice were

prematurely solicited, that they omitted material information routinely required in court-ordered

FLSA collective action notices, and that they should be stricken. Def's Mem. 8 [Doc. No. 115].

The statute itself, however, requires no certification or court permission before individuals may

participate. Nor did the Court in Hoffmann–La Roche mandate that conditional certification

occur before individuals could join the action by filing a consent.

Cultural Care cites two district court decisions from this circuit to support its contention

that consents gathered prior to court-approved notice should be stricken. Def's Mem. 6 [Doc.

115] (citing Dyse v. HealthAll Consulting, 433 F.Supp.3d 35, 40 n.2 (D. Mass. 2020) and

Melendez Cintron v. Hershey Puerto Rico, Inc., 363 F.Supp.2d 10, 17 (D.P.R. 2005)). In Dyse,

the court found "no violation of the FLSA in obtaining declarations necessary to demonstrate

that conditional certification is appropriate." 433 F. Supp. 3d at 40 n.2. Nonetheless, the court

concluded that the plaintiff "should not have distributed any notice of consent to join prior to

court authorization" and directed that the consents to join be refiled. Id. The court provided no

authority or rationale for this conclusion, however, and no acknowledgement of the impact of the

requirement that consents be refiled. In Melendez Cintron, the court did cite other district court

cases to support its conclusion that a trial court "must first decide whether the potential class

should receive notice of the action" before opt-ins may be filed. 363 F.Supp.2d at 17. But the

cases on which the court relied—Reeves v. Alliant Techsystems, Inc., 77 F.Supp.2d 242 (D.R.I.

1999) and Kane v. Gage Merchandising Services, Inc., 138 F.Supp.2d 212 (D. Mass. 2001)—

contain no discussion of opt-ins filed prior to court approved notice. Where none of these

decisions offer any reasoning for such a rule or consider the impact of 29 U.S.C. § 256, which

contemplates opt-ins being filed both with and after the filing of the complaint and sets the

commencement date for purposes of the statute of limitations to the date of each party plaintiffs'

affirmative opt-in, the court finds no support for the limitation suggested by Cultural Care.

Notably, once Plaintiffs sought certification and court-supervised notice, Cultural Care

asserted that the request was "not ripe" and was "premature" in light of Cultural Care's then-

pending Motion to Dismiss [Doc. No. 66]. Def's Opp. to Certification 1-4, 6 n.2 [Doc. No. 112].

While this argument supported delay in court approval of notice until that motion was decided, it

does not justify striking the opt-ins that were filed (or that have been filed while Cultural Care

pursued an interlocutory appeal). Moreover, since the statutory scheme does not require

certification for an FLSA action to proceed, Cultural Care's offer to toll the statute of limitations until the court determines whether to certify the class for notice purposes imposes an unwarranted condition.

The court notes finally that employers may attempt to moot a collective action where individual opt-ins have not yet been filed by making offers of judgment to named plaintiffs. Genesis Healthcare Corp., 569 U.S. at 78 ("The Court of Appeals concluded that respondent's individual claim became moot following petitioners' Rule 68 offer of judgment. We have assumed, without deciding, that this is correct"). So, unless individual employees promptly file consents, their rights to join in such a suit are at risk.

In sum, where the statutory scheme requires plaintiffs to file consents to proceed with an action, with the statute of limitations running until a consent is filed, the Supreme Court has identified the process as one of "joinder" rather than "class certification," and defendants may seek to moot a collective action by making offers of judgment to named plaintiffs, the court finds no grounds to make conditional certification in an FLSA action a prerequisite to filing of consents to sue.

### B.    Pre-certification Advertising or Solicitation

Cultural Care contends that Plaintiffs' counsel's website concerning the case, which provides links to allow potential plaintiffs to opt-in, is misleading and that the consents filed to date should therefore be stricken. Def's Mem. 1 [Doc. No. 115]; see also Frisch Decl. [Doc. No. 116]. Some courts have stricken pre-certification consents after finding that the plaintiffs' attorneys had sent communications that were misleading or false, or that seemed designed to trick people into participating in lawsuits for the attorneys' benefit. See, e.g., Sandoval v. Serco, Inc., 2019 WL 2075910, at *6-7 (E.D. Mo. May 10, 2019); Reyes v. Topgolf Int'l, Inc., 2017 WL 11496868, at *7-9 (N.D. Tex. May 15, 2017); Chemi v. Champion Mortg., 2006 WL

7353427, at *8-10 (D.N.J. June 19, 2006). In other cases, courts have entered protective orders enjoining communication between plaintiffs' counsel and potential plaintiffs or requiring a corrective notice. See, e.g., Laichev v. JBM, Inc., 2008 WL 11452416, at *4–5 (S.D. Ohio Apr. 11, 2008); Jones v. Casey's General Stores, 517 F.Supp.2d 1080, 1086 (S.D. Iowa 2007); Maddox v. Knowledge Learning Corp., 499 F.Supp.2d. 1338, 1344-45 (N.D. Ga. Aug. 3, 2007). Courts may provide such remedies if plaintiffs' advertising to potential collective action plaintiffs is not "balanced, accurate, and factual." Laichev, 2008 WL 11452416, at *4; see also Lusk v. Serve U Brands, Inc., 2018 WL 2979098, at *9 (W.D.N.Y. June 14, 2018); Struck v. PNC Bank N.A., 2013 WL 571849, at *5 (S.D. Ohio Feb. 13, 2013); Piper v. RGIS Inventory Specialists, Inc., 2007 WL 1690887, at *7 (N.D. Cal. June 11, 2007).

These cases reflect the partial protection the First Amendment provides for attorney advertising: false, deceptive, misleading or potentially misleading advertising is not protected, but limits on truthful attorney advertising must be narrowly tailored to serve a substantial state interest. See Shapero v. Kentucky Bar Ass'n, 486 U.S. 466, 472 (1988); In re R.M.J., 455 U.S. 191, 203 (1982). Moreover, in considering such communications, "there is a difference of constitutional dimension between rules prohibiting appeals to the public at large, and rules prohibiting direct, personalized communication in a coercive setting." Tennessee Secondary Sch. Athletic Ass'n v. Brentwood Acad., 551 U.S. 291, 296 (2007) (internal citations omitted). A website amounts to an appeal to the public, rather than a direct, personalized communication, and as such, should not be restricted absent misleading content. See Shapero, 486 U.S. at 472–78 (overturning blanket proscription on all forms of legal solicitation); Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 641 (1985) (invalidating restriction on truthful, nondeceptive legal advertising directed at people with specific legal

problem). Consistent with this First Amendment protection, Rule 7.2(a) of the Massachusetts Rules of Professional Conduct[2] permits a lawyer to "communicate information regarding the lawyer's services through any media." That permission is limited by Rule 7.3, which prohibits solicitation only in certain circumstances not raised here,[3] and by Rule 7.1, which prohibits misleading communications.[4]

Cultural Care asserts that Plaintiffs' counsel's website was misleading because "it fails to mention anything about the discovery or testimonial obligations of opt-in plaintiffs, or various other information typically required by courts when authorizing notice to putative collective opt-ins for purposes of conditionally certifying an FLSA collective." Def's Mem. 2 [Doc. No. 115]. Cultural Care complains further that the website "fails to provide a link to Cultural Care's motion to dismiss, contact information for Cultural Care's counsel, or the fact that Cultural Care disputes Plaintiffs' allegations." Id. at 3.

The court finds Plaintiffs' counsel's website as presented to the court appropriate and not misleading, and further, that Cultural Care's demands would improperly intrude on Plaintiffs' attorneys' First Amendment rights. As in Lusk, where the court found no issue with plaintiffs'

---

[2] The Rules of Professional Conduct applicable to attorneys appearing and practicing before this court are (with certain exceptions not relevant here) the Massachusetts Rules of Professional Conduct adopted by the Massachusetts Supreme Judicial Court, as set forth as Rule 3:07 of that court, as of January 1, 2015, and subsequent amendments. See L.R. 83.6.1(a).

[3] Rule 7.3 prohibits most in-person, live or real-time solicitations, and prohibits other solicitations when the target of the solicitation has made known a desire not to be solicited, the solicitation involves coercion, duress or harassment, or the lawyers knows or reasonably should know that the physical, mental, or emotional state of the target is such that the target cannot exercise reasonable judgment, and the solicitation is for a fee.

[4] Rule 7.1 provides that "[a] lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading."

counsel's pre-certification website, "[t]he website maintained by Plaintiffs' counsel in this case makes it clear that the Court has not yet authorized notice, that no liability determination has been made, and that there is no money available at this time." 2018 WL 2979098 at *9. Plaintiffs' counsel's website may not have included Cultural Care's position and defenses or its counsel's contact information, but those omissions are not misleading; while a court-approved notice would likely include this information, as demonstrated by the cases cited by Cultural Care and discussed below, the website does not have the imprimatur of the court and therefore is not subject to the same exacting neutrality requirements. See Hoffmann-La Roche, 493 U.S. at 174. The website also does not say that potential plaintiffs may be called to provide testimony or respond to written discovery. Whether this statement should be included in a court-ordered notice is a fair question; the suggestion that attorneys are misleading if they do not list the difficulties and burdens of litigation on their website is a novel and unsupported proposition with significant First Amendment implications.

Nor is the description of the case misleading. The upper part of the website reads as follows:

> On October 15, 2020, an au-pair who worked through Cultural Care, Inc. initiated a lawsuit alleging that Cultural Care is liable, as an employer of *au pairs*, for failing to pay minimum wages and overtime pay under various state and federal wage and hour laws, and for failing to provide *au pairs* with proper wage statements containing required information about pay, hours, and deductions. The Complaint also alleges that Cultural Care deceives host families by failing to inform host families that the stipend it tells them to pay *au pairs* results in violations of state and federal wage and hour laws. The lawsuit is filed as a putative collective action under the federal Fair Labor Standards Act, a wage and hour class action under California, Illinois, New Jersey, and New York state laws, and a deceptive trade practices class action under New York, Illinois, New Jersey, Connecticut, and Washington state laws. The action seeks to recover for *au pairs* their unpaid wages within the applicable statutes of limitation, an award of liquidated (double) damages, and other penalties and interest.

Frisch Decl. Ex. 1 at 2-3 [Doc. No. 116]. While Cultural Care disputes that it is an employer of *au pairs*, the website's report that the lawsuit alleges that Cultural Care is "an employer of *au pairs*" is accurate. The website also notes (albeit in a small footer) that "You should consult an attorney for advice regarding your individual situation." Id. at 4.

As a final matter, Cultural Care reports that it inspected the code underlying the website and noted that Plaintiffs' counsel appears to be using a Facebook ad tracker on its website. Def's Mem. 3 n.3 [Doc. No. 115]. As Cultural Care concedes, without more this does not establish that Plaintiffs' counsel is actively advertising on Facebook or any other platform. Id. Nor is there any basis from this limited report to find that any misleading or otherwise improper solicitation has occurred.

### IV.     **Plaintiffs' Motion to Certify FLSA Collective Action and Give Notice**

To facilitate the opt-in process, Plaintiffs seek certification of a collective action and court approval to give notice to "All individuals who were sponsored by Cultural Care and worked as J-1 visa *au pairs* during any portion of the period commencing three years prior to the filing of this action through the entry of final judgment in this action." Pl.'s Mot. 1 [Doc. No. 98]; SAC ¶ 120 [Doc. No. 43].

In order to determine whether to give such notice to potential opt-ins, "most courts — including most district courts in this circuit — follow a two-step approach . . . ." Cunha v. Avis Budget Car Rental, LLC, 221 F. Supp. 3d 178, 182 (D. Mass. 2016). The court in Prescott v. Prudential Ins. Co., 729 F. Supp. 2d 357 (D. Me. 2010), summarized the approach as follows:

> The first stage determines whether notice should be given to potential collective action members and usually occurs early in a case, before substantial discovery, based only on the pleadings and any affidavits which have been submitted. At the first stage, the plaintiff has the burden of showing a reasonable basis for her claim that there are other similarly situated employees. In other words, the plaintiff must make a modest factual showing that she and other employees, with similar but not necessarily identical jobs, suffered from a common unlawful policy or plan. The

standard at the initial stage has been called "not particularly stringent," "fairly lenient," "flexible," "not heavy," and "less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b). Under this "fairly lenient" standard, the initial stage analysis typically results in conditional certification of a collective action.

Later, when discovery is complete, an employer may move to decertify the collective action. This is the "second" stage, and the court must then make a factual determination as to whether there are similarly-situated employees who have opted in. Factors relevant to the stage-two determination include: factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action. If the court finds then that employees are not "similarly situated," it will decertify the class and dismiss the opt-in plaintiffs without prejudice.

729 Supp. 2d at 364-65 (cleaned up).

> A.   *Conditional Certification*
>
> 1.   Similarly Situated Employees

Plaintiffs allege they were subject to the following common policies by Cultural Care: instructing host families to pay *au pairs* at or near $195.75 per week for up to 45 hours a week of work, failing to pay overtime for hours worked in excess of 40 hours a week, and failing to compensate *au pairs* at all for training time, SAC ¶ 121 [Doc. No. 43], and that Cultural Care has asserted uniform defenses to Plaintiffs' FLSA claims, see id. at ¶¶ 13-30; Pls' Mem. 3 [Doc. No. 99]. In support of these allegations, Plaintiffs attach forty-nine declarations from opt-in Plaintiffs, see Helland Decl. [Doc. No. 100], Ex. 5 [Doc. No. 100-5], who worked as *au pairs* sponsored by Cultural Care from 2019 onward who state they attended a four-day training for which they did not receive any pay, that they sometimes worked over forty hours in a week, and that they received a weekly stipend without being paid time and a half for hours worked over forty hours in a week.

Plaintiffs have adequately supported the allegation that Cultural Care has a uniform policy of not compensating *au pairs* for training time where the named Plaintiffs and all of the

forty-nine additional declarants state that they attended but were not compensated for a training conducted by Cultural Care. SAC ¶¶ 29-30 (alleging that the training is uncompensated); ¶ 33 (Plaintiff Morales Posada), ¶ 53 (Plaintiff Guimaraes), ¶ 62 (Plaintiff Rocha), ¶ 71 (Plaintiff Barrientos) [Doc. No. 43]; Helland Decl. Ex. 5 [Doc. No. 100-5] (stating in ¶ 3 of each declaration that the declarant attended a training and did not receive pay). Cultural Care does not appear to contest Plaintiffs' allegation that the training is required and uncompensated. Thus, the proposed collective is similarly situated with respect to the training policy.

Plaintiffs have also adequately supported the allegation that Cultural Care has a uniform policy of instructing host families to pay at or near $195.75 per week for forty-five hours of work. Plaintiffs point to two parts of Cultural Care's website to support their allegation: first, that Cultural Care's website states that that the minimum *au pair* payment recommended for all states except Massachusetts "is based on a weekly stipend of at least $195.75 . . . for 51 weeks, including 2 weeks of paid vacation," SAC ¶ 21 [Doc. No. 43], and second, that Cultural Care advertises the total cost of the program for host families to be $19,553.25, comprised of $9,983.25 in stipend payments to *au pairs* and $9,750 in fees to Cultural Care, id. at ¶ 17.

Cultural Care contends that the website cannot form the basis of a uniform policy where the website explicitly states that the $195.75 figure is a minimum payment, not a ceiling.[5] Def's Opp. 11-12 [Doc. No. 112]. It also argues, based on cases from outside the First Circuit, that compensation may include deductions for room and board, see id. at 12-13, and that host families

---

[5] Cultural Care also contends that as of June 2021, its website "expressly advises that "host families and au pairs may agree to a higher stipend amount." Def's Opp. 11 [Doc. No. 112]. However, where Cultural Care points to a website publication date both after the initiation of Plaintiffs' case and the pending Motion [Doc. No. 98], the court does not take potentially later-included notices on the website as instructive.

are not required to pay overtime for childcare services, id. at 9-10. However, Cultural Care's arguments in opposition to conditional certification do not, for the most part, dispute that the parties are similarly situated. Rather, Cultural Care offers various arguments as to why its common actions and policies are lawful. These legal arguments underscore the efficiencies of allowing the Plaintiffs to proceed jointly and addressing Cultural Care's common defenses in a single forum.

Finally, to the extent that Culture Care contends that conditional certification is premature where threshold defenses raised in its motion to dismiss have not been decided, that argument is now moot where the court has ruled on the motion. See Mem. & Order 12-13, 18-20 (holding that Cultural Care is not entitled to derivative sovereign immunity and rejecting Cultural Care's argument that it is not an employer) [Doc. No. 137]; see also USCA Opinion 4, 18-31 [Doc. No. 253] (concluding that Cultural care is not entitled to immunity). Although Cultural Care also contends that other defenses to individual class-member clams vary, its only support for that contention is to point to the class members' burdens of proof. See Def's Opp. 15 [Doc. No. 112]. Where Cultural Care continues to assert common defenses as to the legality of its actions, the court finds that conditional certification is appropriate.

2.    The Beltran Settlement

Cultural Care also argues that Plaintiffs are not similarly situated because some Plaintiffs' claims are partially barred by a settlement in Beltran v. Interexchange, Inc., No. 1:14-cv-03074-CMA-KMT, 2017 WL 4418684 (D. Colo. Apr. 28, 2017) (Beltran Dkt. #1187-1) (the "Beltran Settlement"); Def's Opp. 7-9 [Doc. No. 112]. Cultural Care contends specifically that the Beltran Settlement precludes the FLSA claims of Plaintiffs Guimaraes, Barrientos, and Morales Posada to the extent those claims are based on events before September 1, 2019. Id. at 8-9.

Beltran involved claims by individuals who worked as *au pairs* against a variety of
sponsors, including Cultural Care. Beltran, 2017 WL 4418684 at *1. The action included both
Rule 23 state law and federal law claims and FLSA collective action claims. See Beltran, 2016
WL 695967, at *3 (D. Colo. Feb. 22, 2016), report and recommendation adopted in part, rejected
in part sub nom. Beltran v. InterExchange, Inc., 176 F. Supp. 3d 1066 (D. Colo. 2016). The court
certified both Rule 23 classes and a FLSA collective action; the Rule 23 certified classes
included one class comprised of "[a]ll persons sponsored by [Defendants, including Cultural
Care] to work as a standard au pair in the United States pursuant to a J-1 VISA." Beltran v.
InterExchange, Inc., 2018 WL 1948687, at *14 (D. Colo. Feb. 2, 2018). The FLSA certified
collective action, as conditionally certified on June 9, 2017, included "all current and former au
pairs for whom Defendant Cultural Care, Inc., d/b/a Cultural Care Au Pair, was a J-1 Visa
Sponsor." Beltran, No. 1:14-cv-03074-CMA-KMT, Dkt. 1176, at 3. The Beltran court did not
clarify what the end date for the class was, see c.f., Lucas v. JBS Plainwell, Inc., 2012 WL
12854880, at *2 (W.D. Mich. Mar. 8, 2012) (defining the class end and start date), and was
settled with an effective date of August 1, 2019, Beltran, No. 1:14-cv-03074-CMA-KMT, Dkt.
1186, at 11, 27-28 (defining "Effective Date"), Dkt. 1235 (Amended Final Judgment).

Defendant claims that the Beltran settlement bars claims that arose prior to the effective
date of that settlement. But Plaintiffs also assert claims that arise after the Beltran effective date.
While the Beltran settlement may preclude claims for earlier periods – even for individuals who
did not opt-in – this legal defense may be efficiently resolved after conditional certification and
is premature at this time. See Keller-Brittle v. Collecto Inc., 2018 WL 6199568, at *2 (D. Mass.
Nov. 28, 2018) (discussing what courts consider in determining the scope of a collective action
class at the second step of the certification process).

3.      The Statute of Limitations

Plaintiffs and Cultural Care do not disagree that any class should be limited to persons whose claims fall within the statute of limitations. The parties dispute, however, whether the relevant statute of limitations is two or three years. Cultural Care asserts that the two-year statute should be used barring a willful violation not demonstrated by Plaintiffs. Def's Opp. 16-17 [Doc. No. 112]. Plaintiffs contend that Cultural Care's statute of limitations argument is inapposite where the statute of limitations is an affirmative defense and not an element of a FLSA claim. Pls' Reply 6 [Doc. No. 133]. Further, Plaintiffs contend that they have adequately pleaded that Cultural Care knew or should have known its actions were reckless and/or willful, and that Cultural Care may challenge those allegations should it seek decertification. Id. at 6-7.

The FLSA "provides that [] actions must be commenced within two years 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" McLaughlin v. Richland Shoe Co., 486 U.S. 128, 129 (1988) (quoting 61 Stat. 88, 29 U.S.C. § 255(a)). An employer acts willfully if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Id. at 133.

At this stage, Plaintiffs have sufficiently alleged that Cultural Care's actions were willful. See Figueroa v. Cactus Mexican Grill LLC, 575 F. Supp. 3d 208, 215 (D. Mass. 2021) (holding that allegations that defendants failed to pay overtime and threatened to fire an employee were sufficient to survive a motion to dismiss as to willfulness); see also Bah v. Enter. Rent-A-Car Co. of Bos., LLC, 560 F. Supp. 3d 366, 373 (D. Mass. 2021) ("However, the issues of willfulness and the merits of [plaintiff's] claims are closely intertwined with the merits of the possible class action, and whether the plaintiffs who have opted in are in fact similarly situated to

16

the named plaintiff [ ] is a question better addressed at the second stage of the certification

process, when such opt-in plaintiffs have been identified.") (internal quotations omitted). This is

especially true where Cultural Care was on notice after both the <u>Beltran</u> settlement and <u>Capron v.</u>

<u>Off. of Att'y Gen. of Mass.</u>, 944 F.3d 9, 12 (1st Cir. 2019), the latter of which, Plaintiffs contend,

prompted Cultural Care to update its weekly stipend instructions for Massachusetts host families,

but failed to do so for other states. <u>See</u> SAC ¶¶ 19-21 [Doc. No. 43]. If, after discovery, there is

no evidence of willfulness then the class can be narrowed at the second stage. <u>See</u> <u>Enriquez v.</u>

<u>Cherry Hill Mkt. Corp.</u>, 2012 WL 440691, at *3 (E.D.N.Y. Feb. 10, 2012) (taking a similar

approach).

4.     Conclusion

For the above reasons, the court conditionally certifies a class consisting of "[a]ll

individuals who were sponsored by Cultural Care and worked as J-1 visa au pairs during any

portion of the period commencing three years prior to the filing of this action through the entry

of final judgment in this action." SAC ¶ 120 [Doc. No. 43].

*B.*     *Notice*

1.     Exclusion for Time-Barred Claims

Cultural Care argues that notice should only be sent to members of the conditional class

from the date of this order rather than from the filing of the complaint. Def's Opp. 17 [Doc. No.

112].[6] The statute of limitations in an FLSA action stops running for each individual plaintiff

with the filing of an opt-in notice (rather than the filing of a complaint). 29 U.S.C. § 256

---

[6] After making this argument, Cultural Care stipulated and the court ordered that the statute of limitations was tolled from November 4, 2021, to two weeks after the appeal was resolved, namely, June 23, 2023, which the court calculates as a total of 19 months and 19 days.

(providing that an FLSA action "shall be considered to be commenced in the case of any individual claimant — (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed[.]"). Accordingly, the court agrees that there is no purpose in giving notice beyond three years (plus 19 months and 19 days to account for the tolling period) from the date of this order for those individuals who have not yet filed consents. See e.g., Rosario v. Valentine Ave. Disc. Store, Co., 828 F.Supp.2d 508, 519 (E.D.N.Y. 2011) (holding that "the notice of pendency shall be directed to potential opt-in plaintiffs that worked for [defendant] in the three years preceding the date of this Order."); Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F.Supp.2d 445, 451 (S.D.N.Y. 2011) (holding similar).

2.   Form of Notice

Plaintiffs seek to distribute notice by: (1) emailing the notice to each eligible individual's email address, (2) texting a link to the notice to each eligible collective member's cellular telephone, (3) posting a link to a notice to Facebook through targeted advertisements, and (4) emailing and texting a reminder notice 45 days before the close of the opt-in period to all eligible collective members who have not yet joined the action. Pl's Mem. 12 [Doc. No. 99]. Cultural Care does not challenge notice through email but argues that Plaintiffs should not be allowed to distribute notice via text message or social media. Def's Opp. 18 [Doc. No. 112].

Cultural Care cites Butler v. TFS Oilfield Servs., LLC, 2017 WL 7052879, at *7 (W.D. Tex. Sept. 26, 2017) to argue that text messages should only be authorized when texting has been used as a means of communication between the plaintiff and the defendant in the past. See id.

But Butler itself contains no such bar. Instead, the court found none of the methods of notice requested, including distribution by mail, email, text message, and worksite posting, was unreasonable under the circumstances there where the putative class "is comprised of workers who disperse to non-centralized and remote worksites throughout Texas and other states where they spend long hours away from their home residences." 2017 WL 7052879, at *7. Here, the potential opt-in plaintiffs are likely dispersed both country- and world-wide. While the court in Bhumithanarn v. 22 Noodle Mkt. Corp., 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (cited by the Butler court), referenced an employer's own preference for text communication when it rejected the employer's various objections to the use text message for FLSA notice, it similarly made no suggestion that such a preference was a requirement for such notice. Courts in this circuit have permitted text message notifications without any requirement of previous use of text messaging in the work context. See e.g., Camp v. Bimbo Bakeries USA, Inc., 2019 WL 440567, at *5 (D.N.H. Feb. 4, 2019). The court notes further that in 2023, text messaging is ubiquitous and generally no longer charged per individual text, and that it is common to reach individuals via text rather than by email. Accordingly, the court will allow text notice.

The court will also allow the use of social media to reach eligible individuals. Given the passage of time since this case was initiated, contact information that Cultural Care had for the individuals may be stale. Where the statute of limitations will run until opt-in forms are filed, any delay in reaching the individuals will impact their claims. Although there is a risk of generating opt-in forms from significant numbers of ineligible individuals, Plaintiffs' counsel can avoid burdening the court and Cultural Care with ineligible individuals by comparing the forms with the list of potential class members to be provided by Cultural Care. Nor is the use of social media

to reach *au pairs* unprecedented, and indeed, the <u>Beltran</u> court did approve the use of social media. 2017 WL 4418684, at *6.

      3.   Notice Content

      Cultural Care argues that the proposed notice [Doc. No. 100-1] should be amended to say that individuals who opt-in "may be required to submit documents and testify under oath at a deposition, hearing, or trial, which will take place in Boston, Massachusetts." Def's Opp. 18-19 [Doc. No. 112]. There is no clear consensus on whether this type of language should be included. <u>Compare Beltran</u>, 2017 WL 4418684, at *5 (approving similar language, including trial location); <u>Norsoph v. Riverside Resort & Casino, Inc.</u>, 2018 WL 5283427, at *7 (D. Nev. Oct. 23, 2018) (approving similar language but not trial location); <u>Byard v. Verizon W. Virginia, Inc.</u>, 287 F.R.D. 365, 374 (N.D. W. Va. 2012) (same) <u>with</u> <u>Weeks v. Matrix Absence Mgmt. Inc.</u>, 494 F. Supp. 3d 653, 660 (D. Ariz. 2020) (denying request to add similar language in case with many plaintiffs because "individualized discovery was unlikely"); <u>Wynn v. Express, LLC</u>, 2012 WL 874559, at *6 (N.D. Ill. Mar. 14, 2012) (holding that similar language was unnecessary where there were likely to be several thousand plaintiffs and that an individual's chances to testify or be deposed was slim); <u>Walkinshaw v. Saint Elizabeth Reg'l Med. Ctr.</u>, 507 F.Supp.3d 1106, 1126 (D. Neb. 2020) (denying request to add similar language because it "could have a chilling effect."). While it is important to communicate the obligations attendant to participating in a lawsuit, including the location risks needlessly intimidating potential plaintiffs. As in <u>Matrix Absence</u> and <u>Wynn</u>, there are likely to be many plaintiffs here — 1904 consents had been filed as of June 15, 2023 — so the likelihood that any particular individual is deposed or called as a trial witness is low. Accordingly, the court finds it sufficient to include in the notice that

plaintiffs "may be required to submit documents and testify under oath at a deposition, hearing, or trial" without further elaboration.

Cultural Care also requests that the following language be added to the notice: "Cultural Care disputes that it 'employs' *au pairs* and argues that, contrary to employment, it supports *au pairs* during their exchange year and oversees host family compliance with Department of State minimum stipend requirements." Def's Opp. 19 [Doc. No. 112]. Plaintiffs agree to adding the first part of this statement but argue that anything after "Cultural Care disputes that it employs *au pairs*" is surplusage. Pls' Reply 8 [Doc. No. 133]. However, the latter part of the statement is not unduly argumentative. Accordingly, the court approves Cultural Care's addition in the interest of judicial neutrality. See Hoffman-LaRoche, 493 U.S. at 174.

#### 4. Opt-in Period and Reminder Notice

Cultural Care argues that Plaintiffs' requested opt-in period of ninety days and forty-five-day reminder notice are excessive. Def's Opp. 19 [Doc. No. 112]. As other courts have recognized, notice longer than sixty days can be appropriate where there are extenuating circumstances or potential plaintiffs may be difficult to contact. See, e.g., McCloud v. McClinton Energy Grp., L.L.C., 2015 WL 737024, at *10 (W.D. Tex. Feb. 20, 2015). The potential opt-in plaintiffs here are likely to be young and uniquely unfamiliar with American laws and our court system, so erring on the side of a longer notice period is reasonable. Indeed, the Beltran court allowed a 120-day opt-in period and a sixty-day reminder notice. 2017 WL 4418684, at *7. Accordingly, the court finds that a ninety-day opt-in period and forty-five-day reminder notice is reasonable here.

### V.   **Conclusion**

For the forgoing reasons, Cultural Care's Motion to Strike Pre-Certification Consents [Doc. No. 114] is DENIED and Plaintiffs' Motion to Certify a Collective Action and to Issue

Notice to the Proposed Collective [Doc. No. 98] is GRANTED subject to the conditions described below.

Defendant is ordered to produce, within fourteen days of this order, a list of all *au pairs* that Cultural Care sponsored at any time during the three years (plus 19 months and 19 days) preceding this order, including each *au pair*'s email addresses, cell phone numbers, and dates and locations of employment. Plaintiffs' counsel may distribute notice via email, text message, or social media, to all individuals on the list produced by Cultural Care. Consents to join the action will be accepted for ninety-days following the distribution of the notice (the ninety-day opt-in period) and Plaintiffs may distribute a reminder notice forty-five days into the ninety-day period.

Plaintiffs' proposed form of notice, Helland Decl. Ex. 1 [Doc. No. 100-1], is approved, subject to the following modifications:

> 1. The following text must be added: "Individuals who consent to join this action may be required to submit documents and testify under oath at a deposition, hearing, or trial."

> 2. The following text must be added: "Cultural Care disputes that it 'employs' *au pairs* and argues that, contrary to employment, it supports *au pairs* during their exchange year and oversees host family compliance with Department of State minimum stipend requirements."

If Plaintiffs' counsel elects to keep its current website running, it is ordered to make the following changes to the website:

1. The following text must be added: "Individuals who consent to join the FLSA collective action may be required to submit documents and testify under oath at a deposition, hearing, or trial."

2. The website must make clear that any individual has the right to hire their own attorney.

IT IS SO ORDERED.

June 20, 2023                                      /s/ Indira Talwani
                                                   United States District Judge