# EXHIBIT A

# Arbitration Procedures and Practice in Switzerland: Overview

**by Urs Feller, Marcel Frey and Bernhard C Lauterburg, Prager Dreifuss AG**

Country Q&A | Law stated as at 01-Jun-2023 | Switzerland

A Q&A guide to arbitration law and practice in Switzerland.

The country-specific Q&A guide provides a structured overview of the key practical issues concerning arbitration in this jurisdiction, including any mandatory provisions and default rules applicable under local law, confidentiality, local courts' willingness to assist arbitration, enforcement of awards and the available remedies, both final and interim.

## Use of Arbitration and Recent Trends

> 1. How is commercial arbitration used and what are the recent trends?

### Use of Commercial Arbitration and Recent Trends

Arbitration is widely used to resolve commercial disputes in both domestic and international matters. From an international perspective, Switzerland is among the most preferred seats for arbitration, as was revealed in *Queen Mary University of London, School of International Arbitration: 2021 International Arbitration Survey: Adapting Arbitration to a Changing World*.

According to the International Chamber of Commerce (ICC) Dispute Resolution Statistics 2019, 10% of ICC arbitral proceedings are seated in Switzerland, which makes Switzerland the third most chosen seat for ICC arbitration. The Swiss Arbitration Centre received 103 new cases in 2022, of which the great majority were international cases. In addition, there are ad hoc arbitral proceedings, including investment arbitrations (for which statistics are difficult to find) and a high number of sports arbitrations.

The *Swiss Rules of International Arbitration* saw an upgrade in 2021 to reflect, among others, the ongoing digitalisation. Paperless filings have become the new standard. Organising the proceedings now expressly includes that the arbitral tribunal at an early stage discusses with the parties issues of data protection and cybersecurity, to ensure an appropriate level of compliance and security.

On 1 January 2023, the revision of the of the of the law on the company limited by shares (which is a part of the *Swiss Code of Obligations*) took effect. According to the new Article 697n, the articles of association can provide that disputes arising out of company law must be adjudicated exclusively by an arbitral tribunal having its seat in Switzerland.

© 2023 Thomson Reuters. All rights reserved.

Case 1:20-cv-11862-IT   Document 311-1   Filed 08/18/23   Page 3 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

## Advantages/Disadvantages

Switzerland has strong democratic structures and a well-equipped, reliable state court system to handle large and complex commercial cases in a reasonable time and at a reasonable cost. It also has a reliable practice in recognising judgments handed down by foreign state courts.

According to the 2018 survey of the Queen Mary University, users mention the enforceability of arbitral awards and the avoidance of specific legal systems/national courts as the most valuable characteristics of arbitration, followed by flexibility and the ability of the parties to select arbitrators.

In addition, arbitration is flexible. Unlike in court proceedings, attorneys not registered in Switzerland can act as party representatives in arbitral proceedings. Also, the entire proceedings (excluding appeals) can be held in English or any other foreign language. Appeals to the Federal Supreme Court (which on average take about six months) can be fully or partially waived in express agreements by foreign parties.

Further, Switzerland's arbitration law, as well as its contract law, focus on party autonomy and flexibility.

Both litigation in state courts and before arbitral tribunals have their distinctive advantages and disadvantages. While cost efficiency is a frequently mentioned advantage of arbitration over court litigation, it should be borne in mind that the flexibility in respect of shaping the rules or arbitration may lead to increased costs. For example, the often less strict rules of evidence can make the evidentiary process much more burdensome and time-consuming. The finality of an arbitral award can be both positive and negative, due to limited possibilities of appeal.

# Legislative Framework

## Applicable Legislation

> 2. What legislation applies to arbitration? To what extent has your jurisdiction adopted the UNCITRAL Model Law on International Commercial Arbitration 1985 (UNCITRAL Model Law)?

The principal legislation applicable to international arbitration is Chapter 12 of the Private International Law Act (PILA). By election, the parties to an international dispute can chose the third part of the Code on Civil Procedure (CCP), governing domestic arbitration, to apply. This Q&A limits discussion to the PILA, unless specific reference to the CCP is necessary for a full understanding of the Swiss provisions. Light revisions to Chapter 12 of the PILA entered into force on 1 January 2021.

Chapter 12 of the PILA is not based on the UNCITRAL Model Law, although there are no fundamental differences in substance between the two laws. The main difference between the PILA and the UNCITRAL Model Law is the degree of regulation. While the UNCITRAL Model Law contains a comprehensive set of provisions, the PILA only contains a few fundamental rules and instead largely leaves the set-up of the proceedings in the hands of the parties and the arbitral tribunal.

© 2023 Thomson Reuters. All rights reserved.

Case 1:20-cv-11862-IT   Document 311-1   Filed 08/18/23   Page 4 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

For further detail, see *Practice note, Arbitration in Switzerland: Sources of Swiss arbitration law - International arbitration: Private International Law Act*.

.

## Mandatory Legislative Provisions

---

3. Are there any mandatory legislative provisions? What is their effect?

---

If the parties to an international arbitration seated in Switzerland do not chose to exclude the application of the PILA in favour of the CCP, the following provisions in the PILA must be observed:

- Articles 177(1) and (2): arbitrability/restrictions on state entities to invoke national law to contest arbitrability or capacity to be subject to arbitration.

- Articles 178(1): form of the arbitration agreement.

- Articles 180(1)(c) and 180(2): challenge of arbitrators on justifiable grounds relating to independence, and restrictions on challenges of arbitrators by the nominating/appointing party.

- Article 181: addressing pending actions (*lis pendens*).

- Article 182(3): equal treatment to the parties and their right to be heard.

- Article 185: further assistance by the state court.

- Article 186(1): *kompetenz-kompetenz* to the extent that the parties cannot exclude it. However, they can enhance it (for example, by excluding appeals, to the extent permitted).

- Article 190(2): grounds for setting aside an arbitral award, to the extent that the grounds for setting aside are exhaustive, although qualifying parties can waive an appeal on all or one or more of these grounds.

---

4. Does the law prohibit any types of dispute from being resolved through arbitration?

---

Any dispute of financial interest can be subject to arbitration (Article 177(1), PILA). The broad scope of arbitrability is limited only by substantive provisions considered mandatory as a matter of public policy, which reserve jurisdiction exclusively to state courts (for example, certain claims under the Debt Enforcement and Bankruptcy Act (attachment proceedings) and family

© 2023 Thomson Reuters. All rights reserved.

Case 1:20-cv-11862-IT  Document 311-1  Filed 08/18/23  Page 5 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

law status matters (in particular, marriage, paternity, adoption, divorce, and separation), although the financial consequences are arbitrable).

## Limitation

> 5. Does the law of limitation apply to arbitration proceedings?

The statute of limitations is a matter of substantive law. If the law applicable to the matter in dispute is Swiss substantive law, the relevant limitation periods apply.

The Swiss Code of Obligations (as of 1 January 2020) provides for the following limitation periods:

- A general statutory limitation period of ten years for all claims (unless federal law prescribes a different limitation period).

- Five years for claims which by their nature require quick settlement, such as claims:

  - for rent, interest or other periodic payments;

  - by tradesmen, craftsmen and for medical treatment;

  - relating to the sale of foodstuffs and payments for board and lodging;

  - relating to the work of tradesmen and craftsmen but also legal counsel and notaries;

  - of employees.

- Tort claims become time-barred after three years from the day on which the injured party has knowledge of the damage and the injuring party. A tort claim will become unenforceable owing to the statute of limitations after ten years from the date of injury. Where a tort claim is derived from an offence for which the criminal law envisages a longer limitation period, the longer period is also applicable to tort claims.

- Claims based on unjust enrichment become time-barred three years after the date on which the injured party becomes aware of its claim, but in any event, ten years after the claim first arose.

## Arbitration Institutions

Case 1:20-cv-11862-IT   Document 311-1   Filed 08/18/23   Page 6 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

> 6. Which arbitration institutions are commonly used to resolve large commercial disputes?

The main arbitration institutions used in Switzerland are the:

- International Chamber of Commerce (ICC) International Court of Arbitration.

- Swiss Arbitration Centre.

- World Intellectual Property Organization (WIPO) Arbitration and Mediation Center.

- Court of Arbitration for Sport.

## Jurisdictional Issues

> 7. What remedies are available where one party denies that the tribunal has jurisdiction to determine the dispute(s)? Does your jurisdiction recognise the concept of kompetenz-kompetenz? Does the tribunal or the local court determine issues of jurisdiction?

The arbitral tribunal must rule on its own jurisdiction (see *Question 3*), which it either does in the form of an interim award on jurisdiction or in the final award. The concept of *kompetenz-kompetenz* is governed by PILA**.**

Decisions by the arbitral tribunal on its jurisdiction are subject to an appeal to the Federal Supreme Court, provided that eligible parties did not waive such an appeal (see *Question 1, Question 3* and *Question 28*). An interim award on jurisdiction must be separately appealed and an appeal together with the final award is not possible.

For more information, see *Practice note, Arbitration in Switzerland: Jurisdictional issues - The Swiss approach to the principle of kompetez-kompetenz*.

## Arbitration Agreements

### Validity Requirements

Case 1:20-cv-11862-IT   Document 311-1   Filed 08/18/23   Page 7 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

> 8. What are the requirements for an arbitration agreement to be enforceable?

## Formal Requirements

An arbitration agreement is valid if it is made in writing or any other means of communication that permits it to be evidenced by a text (Article 178(1), PILA). The PILA does not require the arbitration agreement to be signed by all the parties.

Possible reasons for an arbitration agreement to be invalid are:

- The parties' lack of legal capacity.

- The parties' lack of capacity to act.

- Agency without authority.

- A plea of defect in consent.

- Substantive requirements not being met (see below, *Substantive Requirements*).

## Substantive Requirements

The arbitration agreement is valid if it conforms to the law chosen by the parties, the law governing the subject matter of the contract or Swiss law (Article 178(2), PILA).

Generally, the exclusion of state jurisdiction (and therefore the consensus to arbitrate) must be clear under the law governing the conclusion and construction of contracts (strict approach by the Federal Supreme Court). Once this exclusion is clear, the construction of the content and scope of the arbitration clause follows a less restrictive approach.

For more information, see *Practice note, Arbitration in Switzerland: Arbitration agreements – Formal requirements*.

## Separate Arbitration Agreement

A separate arbitration agreement is not required and it suffices that the arbitration clause is contained in the main contract.

Arbitration agreements by reference, such as in the bye-laws of a corporate body or in general terms and conditions, are generally valid.

For more information, see *Practice note, Arbitration in Switzerland: Arbitration agreements – Substantive requirements*.

## Unilateral or Optional Clauses

Case 1:20-cv-11862-IT   Document 311-1   Filed 08/18/23   Page 8 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

> 9. Are unilateral or optional clauses, where one party has the right to choose arbitration, enforceable?

Unilateral or optional clauses are enforceable.

## Third Parties

> 10. In what circumstances can a party that is not a party to an arbitration agreement be joined to the arbitration proceedings?

The PILA does not provide for the joining of third parties to arbitration proceedings. However, the arbitration rules of many arbitral institutions allow for the joinder of third parties (for example, Article 7 of the ICC Arbitration Rules and Article 6 of the Swiss Rules of International Arbitration). The parties to an arbitration agreement can choose such institutional arbitration.

Contractual obligations generally only bind the contracting parties. However, it is recognised that an arbitration agreement can also bind third parties, for example where:

- Claims were assigned.

- A third party assumed a contractual obligation.

- A contract was transferred to a third party.

- The parties entered into a contract in favour of a third party.

In some exceptional cases, the arbitration agreement can be extended to third parties. Whether an arbitration clause extends to a third party is a matter of substance and follows the general principles applicable to the interpretation of contracts. This may be the case, for example, where a third party intervened in the conclusion of, or performs work under, a contract in a manner that creates legitimate grounds to assume that the third party intended to be bound by the contract and the arbitration agreement.

Also, in some cases, the court may find that a corporation lacks a separate identity from an individual or corporate (majority) shareholder and the corporate veil may be pierced. In such cases, the rights and obligations arising out of the agreement concerned, including the arbitration agreement, become binding on that majority shareholder (see, for example, Federal Supreme Court Decision 4A_160/2009).

For a discussion of case law on this issue, see *Practice note, Arbitration in Switzerland: Arbitration agreements - Extension to non-signatories*.

© 2023 Thomson Reuters. All rights reserved.

Case 1:20-cv-11862-IT   Document 311-1   Filed 08/18/23   Page 9 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

11. In what circumstances can a party that is not a party to an arbitration agreement compel a party to the arbitration agreement to arbitrate disputes under the arbitration agreement?

The PILA does not provide that a third party can compel a party to an arbitration agreement to arbitrate a dispute under that arbitration agreement. Whether a third party has such a right is a matter to be determined by the arbitral tribunal or the competent courts.

## Separability

12. Does the applicable law recognise the separability of arbitration agreements?

The validity of an arbitration agreement cannot be contested on the grounds that the principal contract is invalid (Article 178(3), PILA).

For further information, see *Practice note, Arbitration in Switzerland: Arbitration agreements - Separability*.

## Breach of an Arbitration Agreement

13. What remedies are available where a party starts court proceedings in breach of an arbitration agreement or initiates arbitration in breach of a valid jurisdiction clause?

A Swiss court must decline jurisdiction, unless the:

- Defendant proceeded with its defence on the merits, without objecting to the state court's jurisdiction.

- State court finds that the arbitration agreement is null and void, inoperative or incapable of being performed.

- Arbitral tribunal cannot be constituted for reasons for which the defendant is manifestly responsible.

(Article 7, PILA.)

For further information, see *Practice note, Arbitration in Switzerland: State courts' powers in support of arbitration - Court proceedings brought in breach of a valid arbitration agreement*.

© 2023 Thomson Reuters. All rights reserved.

If arbitration is initiated in breach of a valid jurisdiction clause, the arbitral tribunal, deciding on its own jurisdiction (Article 186(1), PILA) (see *Question 7*), must decline jurisdiction.

### Arbitration in Breach of a Valid Jurisdiction Clause

14. Will the local courts grant an injunction to restrain proceedings started overseas in breach of an arbitration agreement?

Swiss courts will deny motions for an anti-suit injunction. Further, anti-suit injunctions are contrary to the concept of kompetenz-kompetenz, which Swiss law recognises (see *Question 7*).

## Arbitrators

### Number and Qualifications/Characteristics

15. Are there any legal requirements relating to the number, qualifications and characteristics of arbitrators? Must an arbitrator be a national of, or licensed to practice in your jurisdiction to serve as an arbitrator there?

The basic rule is that arbitrators are appointed under the parties' agreement. Unless otherwise agreed by the parties, there must be three arbitrators, with the parties each appointing one member and the members unanimously electing a president.

Any person with full legal capacity, whom a party considers suitable to resolve a dispute, can be appointed as arbitrator. Arbitrators need not be licensed to practice as attorneys in Switzerland (or elsewhere).

An arbitrator can, among other reasons, be rejected if there are justified doubts about their independence or impartiality (see *Question 16*).

### Independence/Impartiality

Case 1:20-cv-11862-IT   Document 311-1   Filed 08/18/23   Page 11 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

> 16. Are there any requirements relating to arbitrators' independence and/or impartiality?

An arbitrator can, among other reasons, be rejected if there are justified doubts about their independence or impartiality. The Federal Supreme Court considers the IBA Guidelines on Conflict of Interest (although without any statutory value) a valuable instrument in assessing conflicts of interest in relation to arbitrators (*Supreme Court Decision 142 III 521, consid. 3.1.2*).

For more information, see *Practice note, Arbitration in Switzerland: Arbitrators' duties and powers - Duties of independence, impartiality and disclosure*.

## Appointment/Removal

> 17. Does the law contain default provisions relating to the appointment and/or removal of arbitrators?

### Appointment

If the parties fail to agree on a number of arbitrators, there must be three, with the parties each appointing one member and the members unanimously electing a president. If the parties have not agreed on the appointment of arbitrators, the matter can be brought before the court at the seat of the arbitral tribunal.

### Removal

Rules relating to removal and replacement are usually included in the parties' arbitration agreement (for example, as a matter of reference to institutional rules, such as Article 14 et seq. of the Swiss Rules of International Arbitration or Article 15 of the ICC Arbitration Rules).

Under PILA, an arbitrator can be challenged:

- If the arbitrator does not possess the qualification agreed on by the parties.

- On the grounds for challenge in the rules of arbitration adopted by the parties.

- If the circumstances permit legitimate doubt about the arbitrator's independence.

(Article 180(1), PILA.)

If an arbitrator is challenged (notice of which must be given to the challenged arbitrator), the requesting party can ask the state court to render a final decision within 30 days from the notice. During the challenge proceedings, the arbitral tribunal can continue the proceedings without excluding the challenged member until the decision of the state court, unless the parties have agreed otherwise.

© 2023 Thomson Reuters. All rights reserved.

Case 1:20-cv-11862-IT   Document 311-1   Filed 08/18/23   Page 12 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

Where there is no agreed procedure on the removal of arbitrators, the court at the seat of the arbitral tribunal must rule on the removal.

For further information, see *Practice note, Arbitration in Switzerland: Arbitral tribunal - Challenge* and *Replacement*.

## Procedure

### Commencement of Arbitral Proceedings

> 18. Does the law provide default rules governing the commencement of arbitral proceedings?

The parties usually agree to apply certain arbitration rules in relation to commencement of proceedings. The PILA only defines when *lis pendens* (see *Question 3*) occurs, that is, either:

- When one of the parties files a claim before the sole arbitrator of the arbitrators designated in the arbitration agreement.

- In the absence of such a designation, when one of the parties institutes the procedure for the appointment of the arbitral tribunal.

(Article 181, PILA.)

### Applicable Rules and Powers

> 19. What procedural rules are arbitrators bound by? Can the parties determine the procedural rules that apply? Does the law provide any default rules governing procedure?

Chapter 12 of the PILA is premised on the principle of party autonomy. The parties can, in the arbitration agreement or by reference to a set of institutional arbitration rules, determine the arbitral procedure applicable to their dispute (Article 182(1), PILA). They can also submit the arbitral procedure to a procedural law of their choice.

Where the parties have not explicitly organised the proceedings, the arbitral tribunal can determine, to the extent necessary, the applicable rules, either directly or by reference to a law or to arbitration rules (Article 182(2), PILA).

Regardless of the procedural rules chosen, the arbitral tribunal must ensure the equal treatment of the parties and the right of the parties to be heard in adversarial proceedings (Article 182(3), PILA) (see also *Question 3*).

Case 1:20-cv-11862-IT   Document 311-1   Filed 08/18/23   Page 13 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

## Disclosure

> 20. If there is no express agreement, can the arbitrator order disclosure of documents and attendance of witnesses (factual or expert)?

The rules on the taking of evidence form part of the arbitral procedure, which is usually determined by the parties. In the absence of an agreement between the parties on issues of evidence, the arbitral tribunal must determine the procedure to the extent necessary (Article 182(2), PILA).

In any event, the arbitral tribunal has the duty to conduct the taking of evidence (Article 184(1), PILA). Unlike state courts, arbitral tribunals have no sovereign powers and cannot order coercive measures against parties not complying with evidentiary orders. Therefore, in instances where a party refuses to co-operate with the tribunal, the assistance of Swiss state judicial authorities can be sought. Assistance can be requested from the state court at the seat of the arbitral tribunal (Article 184(2), PILA). The Swiss court then applies its own domestic (Swiss) procedural law (that is, the CCP (Article 184(3), PILA)), but can also, if so requested by a party, apply a different set of procedural rules.

The practical significance of state judicial assistance in the taking of evidence is limited, since where a party refuses to comply with an arbitral order, the tribunal can only draw negative inferences from such behaviour.

## Evidence

> 21. What documents must the parties disclose to the other parties and/or the arbitrator? How, in practice, does the scope of disclosure in arbitrations compare with disclosure in domestic court litigation? Can the parties set the rules on disclosure by agreement?

### Scope of Disclosure

The procedure on the taking of evidence, such as disclosure of documents, forms part of the arbitral procedure, which is determined by the parties or, in the absence of an agreement, by the arbitral tribunal (Article 182(2), PILA). The admissibility of evidence is therefore assessed in accordance with the chosen or determined procedural law. If agreed by the parties, arbitrators frequently seek guidance from the IBA Rules on the Taking of Evidence in International Arbitration.

When compared to common law discovery proceedings, Swiss arbitrators frequently opt for more limited disclosure. Communication that can be considered legally privileged (trade secrets and correspondence with attorneys) will be exempt from production.

© 2023 Thomson Reuters. All rights reserved.

Case 1:20-cv-11862-IT   Document 311-1   Filed 08/18/23   Page 14 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

Despite this, the tribunal usually allows requests for other documents that are deemed relevant for the determination of the dispute. Arbitrators frequently manage document production by means of a "Redfern Schedule" (that is, a collaborative document prepared by the parties and the tribunal containing the requests for disclosure, the arguments for the requests and the tribunal's decisions on each).

### Validity of Parties' Agreement as to Rules of Disclosure

The parties can enter into special agreements concerning the taking of evidence (see above, *Scope of Disclosure*).

## Confidentiality

> 22. Is arbitration confidential? If so, what is the scope of that confidentiality and who is subject to the obligation (parties, arbitrators, institutions and so on)?

In principle, the parties are free to agree that the fact of their dispute, the resorting to arbitration and the proceedings and outcome will remain confidential. There are no statutory rules providing for confidentiality, although the Supreme Court has confirmed that Swiss arbitral proceedings are, as a rule, not open to the public.

However, confidentiality can only be deemed applicable to the actual arbitration proceedings themselves and not to any related state proceedings in connection with injunctive relief sought by the parties (Article 54(1), CCP). Equally, appeal proceedings to the Supreme Court are generally open to the public (Article 59(1), Supreme Court Act).

Scholarly opinions diverge on the issue of whether the parties themselves are bound by confidentiality in the absence of an express obligation to that effect.

## Courts and Arbitration

> 23. Will the local courts intervene to assist arbitration proceedings seated in their jurisdiction?

State courts can be involved in arbitration proceedings to the extent that sovereign power is needed to compel parties in matters of evidence or with regard to interim measures not complied with voluntarily by the parties (see *Question 20*).

In addition, where an arbitration agreement is mute on the nomination and election of arbitrators, or where the arbitrators cannot be appointed for another reason, a party can approach the local state court judge at the agreed seat of the arbitration,

© 2023 Thomson Reuters. All rights reserved.

requesting the appointment of arbitrators (Article 179(2), PILA) (see *Question 17*). Where no seat has been elected, the first court approached can appoint the arbitrators (Article 179(2), PILA).

For more information on the court's role in arbitration, see *Practice note, Arbitration in Switzerland: State courts' powers in support of arbitration*.

---

24. What is the risk of a local court intervening to frustrate an arbitration seated in its jurisdiction? Can a party delay proceedings by frequent court applications?

---

## Risk of Court Intervention

In principle, a Swiss court will not intervene or frustrate correctly commenced arbitration proceedings located in Switzerland, as long as the dispute matter can validly be subjected to arbitration (that is, a claim involving an economic interest (Article 177(1), PILA)).

## Delaying Proceedings

As noted in *Question 20*, parties to arbitration proceedings seated in Switzerland have recourse to state courts for interim measures not complied with or for other coercive orders. Invoking these measures can lead to a degree of delay.

Further, a party can try to delay the outcome of the arbitration by challenging the appointment of arbitrators or the jurisdiction of the tribunal itself.

The final arbitral award itself can be brought before the state Supreme Court, in limited cases, with an appeal. Invoking this measure can further delay the enforcement proceedings.

# Insolvency

---

25. What is the effect on the arbitration of pending insolvency of one or more of the parties to the arbitration?

---

The commencement of bankruptcy proceedings does not automatically lead to a transfer of rights and obligations of the debtor to the bankruptcy estate. However, previously concluded arbitration agreements remain binding on the bankruptcy estate, whether the estate is a claimant or a defending party.

# Remedies

© 2023 Thomson Reuters. All rights reserved.

Case 1:20-cv-11862-IT   Document 311-1   Filed 08/18/23   Page 16 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

---

26. What interim remedies are available from the tribunal?

---

## Interim Remedies

Unless the parties have agreed otherwise, the arbitral tribunal can, on application by a party, order interim measures (Article 183(1), PILA). Interim measures commonly include:

- Safeguarding measures: aiming to secure the subsequent enforcement of the disputed claim, maintaining or restoring the status quo for the duration of the proceedings.

- Regulatory measures: serving to regulate and/or stabilise provisionally the relationship between the parties.

- Executory measures: characterised by the fact that they include a temporary enforcement of the alleged claim.

## Ex Parte/Without Notice Applications

The arbitral tribunal has, in accordance with the prevailing opinion, the power to grant interim remedies without notice to the other party, provided that both:

- There is a particular urgency or that a hearing of the opposing party would frustrate the effectiveness of the measure.

- The arbitral tribunal reviews its decision promptly after issuing the measure and after hearing both parties.

## Security

The arbitral tribunal or the state court can make the interim or conservatory measures subject to the provision of appropriate security (Article 183(3), PILA). If the applicable arbitration rules allow such a provision, arbitrators will make such an order. The Swiss Rules on International Arbitration authorise arbitrators to require such a payment.

Domestic arbitration rules also have provision on the awarding of security if the claimant appears to be insolvent (Article 379, CCP). In addition, the defendant must establish that its future costs claim, if any, would be frustrated or significantly jeopardised by the appearance of the claimant's insolvency if not immediately secured.

---

27. What final remedies are available from the tribunal?

---

© 2023 Thomson Reuters. All rights reserved.

Case 1:20-cv-11862-IT   Document 311-1   Filed 08/18/23   Page 17 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

The type of final remedy issued by a Swiss-based tribunal is determined by the material law applicable to the dispute and available to the parties under that governing law. As a rule, for arbitrations taking place in Switzerland, a final award can order a party to:

- Pay damages.

- Perform specific actions or desist from certain actions.

Awards that would be considered to be contrary to the Swiss understanding of the public policy doctrine (*ordre public*) (such as awarding high punitive damages) risk being unenforceable in Switzerland, and a party can appeal such an award to the Supreme Court on public policy grounds (Article 190(2)(e), PILA). Further, awards in areas of law that are considered out of the scope of arbitration (for example, family law matters) cannot be enforced in Switzerland (see *Question 3*, *Question 4* and *Question 24*).

## Appeals

> 28. Can arbitration proceedings and awards be appealed or challenged in the local courts? What are the grounds and procedure? Can the parties waive any rights of appeal or challenge to an award by agreement before the dispute arises (such as in the arbitral clause itself)?

### Rights of Appeal/Challenge

In matters of international arbitration, an appeal can only be brought to the Swiss Supreme Court (Article 191, PILA).

### Grounds and Procedure

There are very limited grounds for appeal which are if the:

- Sole arbitrator was not properly appointed or if the arbitral tribunal was not properly constituted.

- Arbitral tribunal wrongly accepted or declined jurisdiction.

- Arbitral tribunal's decision went beyond the claims submitted to it or failed to decide one of the items of the claim.

- Principle of equal treatment of the parties or the right of the parties to be heard was violated.

- Award is incompatible with public policy.

(Article 190(2), PILA.)

A party considering bringing an appeal against a Swiss arbitration award must lodge its appeal within 30 days from receipt of the award and must invoke one of the setting aside reasons in Article 190(2) of the PILA.

A party also has the right to lodge an application for the review of an international arbitration award (Article 190a, PILA).

© 2023 Thomson Reuters. All rights reserved.

Case 1:20-cv-11862-IT Document 311-1 Filed 08/18/23 Page 18 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

Review applications are possible where:

- After the rendering of the award, significant evidence or information is obtained that was not available earlier despite exercising due diligence. This does not apply to facts or evidence that came into existence after the award was issued (Article 190a(1)a, PILA).

- Criminal proceedings have established that the arbitral award was influenced to the detriment of the party concerned by a felony or misdemeanour, even if no one is convicted by a criminal court. If criminal proceedings are not possible, proof can be provided in some other manner. (Article 190a(1)b, PILA.)

- A ground for a challenge under Article 180(1)c of the PILA comes to light only after conclusion of the arbitration proceedings despite exercising due diligence, and no other legal remedy is available (Article 190a(1)b, PILA).

## Waiving rights of appeal

If none of the parties has their domicile, habitual residence or a business establishment in Switzerland, they can, by an express statement in the arbitration agreement or by a subsequent written agreement, waive fully their entitlement to bring an appeal against the award (*Article 192, PILA*). At the same time, they are also free to bilaterally limit the reasons for an appeal to one or several of the grounds listed in Article 190(2) of the PILA.

> 29. What is the limitation period applicable to actions to vacate or challenge an international arbitration award rendered inside your jurisdiction?

As mentioned in *Question 28*, setting aside proceedings before the Swiss Supreme Court must be brought within the appeal period of 30 days since the proceedings are governed by Article 77 of the Supreme Court Act, which provides that (all) appeals to the highest Swiss court are subject to a 30-day deadline (Article 100(1), Supreme Court Act). The limitation period begins with the notification of the award to the parties and is not extendable.

# Costs

> 30. What legal fee structures can be used? Are fees fixed by law?

Attorneys' fees can be freely arranged between lawyers and their clients. Hourly rates depending on the experience level are the norm. Contingency fees are not permitted. However, conditional fee arrangements providing for a bonus in the case of successful litigation are permitted, if the base fee for the attorney provides a reasonable income. Further, such an agreement

© 2023 Thomson Reuters. All rights reserved.

Case 1:20-cv-11862-IT   Document 311-1   Filed 08/18/23   Page 19 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

must be made at the start of the matter or after the matter is concluded. Party costs and court fees are calculated according to cantonal statutory rules and depend on the value in dispute.

Parties usually finance litigation privately. If successful, a party can recover costs from its opponent. Cost calculations are based on cantonal statutory tariffs and may not fully cover actual expenses.

There are a few third-party funding providers, and their services are becoming increasingly popular. Their services usually involve handing over a share of the claimed amount in successful proceedings. The attorney must remain independent and free from influence in the execution of their mandate. Further, the attorney is not allowed to participate in the funding. The Supreme Court has found that informing a client about the options of third-party funding can form part of the diligent performance of their mandate.

---

31. Does the unsuccessful party have to pay the successful party's costs? How does the tribunal usually calculate any costs award and what factors does it consider?

---

## Cost Allocation

The arbitration rules agreed by the parties usually contain rules on the allocation of costs. The Swiss Rules on International Arbitration, for example, provide that the costs of the arbitration must in principle be borne by the unsuccessful party. However, the arbitral tribunal can apportion any of the costs of the arbitration among the parties if it determines that such apportionment is reasonable, taking into account the circumstances of the case (Article 40(1), Swiss Rules on International Arbitration).

The costs for a party's legal counsel will be reimbursed in the final award to the extent the costs were claimed during the arbitral proceedings, and to the degree the arbitral tribunal deems the amount to be reasonable (Article 38(e), Swiss Rules on International Arbitration).

## Cost Calculation and Factors Considered

Tribunals frequently take into account the claim amount, the complexity of the matter and the duration and stages of the proceedings (submissions, hearings, and evidence) when determining costs.

# Enforcement of an Award

## Domestic Awards

---

32. To what extent is an arbitration award made in your jurisdiction enforceable in the local courts?

---

© 2023 Thomson Reuters. All rights reserved.

Case 1:20-cv-11862-IT   Document 311-1   Filed 08/18/23   Page 20 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

Arbitral awards rendered by tribunals seated in Switzerland are enforced in the same way as judgments of Swiss state courts, meaning that they are automatically enforced and no additional exequatur (recognition procedure) is necessary.

## Foreign Awards

33. Is your jurisdiction party to international treaties relating to recognition and enforcement of foreign arbitration awards, such as the Convention on the Recognition and Enforcement of Foreign Arbitral Awards 1958 (New York Convention)?

Foreign arbitral awards rendered by arbitral tribunals not seated in Switzerland will be recognised pursuant to the rules of the New York Convention (Article 194, PILA) or by another applicable treaty if that treaty is more favourable than the New York Convention (*favor recognitionis*). One such treaty is the 1965 Convention on the Settlement of Investment Disputes between States and Nationals of Other States (ICSID).

34. To what extent is a foreign arbitration award enforceable?

In principle, all foreign arbitration awards are enforceable in Switzerland as long as their content is not contrary to public policy and the other safeguarding provisions of the New York Convention (Article V, New York Convention) have been adhered to.

The enforcement procedure is governed by the CCP and summary in nature, adjudged by the court at the place of residence or incorporation of the defendant, the place where the award will be enforced or where it was issued, which would not be applicable in instances of foreign awards.

35. What is the limitation period applicable to actions to enforce international arbitration awards rendered outside your jurisdiction?

How long a party can wait with lodging its enforcement application in Switzerland is primarily an issue of the substantive law applicable to the dispute and the validity that such law gives to an arbitral award. Under Swiss law, an arbitration award is considered equivalent to a state court judgment. As such, Swiss law provides that obligations cast in a court judgment maintain their validity for ten years from their rendering.

© 2023 Thomson Reuters. All rights reserved.

## Length of Enforcement Proceedings

36. How long do enforcement proceedings in the local court take, from the date of filing the application to the date when the first instance court makes its final order? Is there an expedited procedure?

As noted, enforcement proceedings are reasonably quick and uniform. Once seized with an application request for enforcement, the court will notify the counterparty about the pending request and set the respondent a short deadline to lodge a submission on the admissibility.

The arguments that the counterparty can bring against the enforcement are limited to reasons that can halt the enforcement such as:

- Payment.

- An agreed deferment of enforcement.

- Lapsing of the obligation owing the statute of limitations.

- Forfeiture of the right to due performance.

Deferment and statute of limitation arguments must be supported by documentary evidence.

## Reform

37. Are any changes to the law currently under consideration or being proposed?

Certain amendments to the Swiss Code of Obligations (CO) section dealing with the law of share companies came into effect at the beginning of 2023. One such change is that the annual general assembly of a Swiss share company has the power to introduce into the company's articles of incorporation a provision submitting corporate disputes to domestic arbitration (new Article 697n and Article 704(1)14, CO).

Contributor Profiles

**Urs Feller**

© 2023 Thomson Reuters. All rights reserved.

Case 1:20-cv-11862-IT   Document 311-1   Filed 08/18/23   Page 22 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

**Prager Dreifuss AG**
**T** +41 44 254 5555
**F** +41 44 254 5599
**E** *urs.feller@prager-dreifuss.com*
**W** *www.prager-dreifuss.com*

**Professional qualifications.** PhD, University of Zurich, 1998; Admission to the bar, Switzerland, 1999; Admission to the bar, England and Wales, 2002

**Areas of practice.** Litigation and arbitration; corporate and commercial; financing and capital markets; private clients; real estate and construction.

**Recent transactions**

- Advising parties in sanctions-related matters and proceedings.

- Assisting Swiss bank as civil complainant in complex fraud investigation.

- Assisting Swiss bank in internal regulatory compliance reviews.

- Representing a foreign client in large-scale commercial litigation regarding infrastructure project.

- Issuing expert reports on issues of Swiss law for English High Court proceedings.

- Bankruptcy litigation on behalf of creditors in Lehman bankruptcy.

- Assisting sovereign fund in claims against Swiss bank.

- Representing a company in UNCITRAL arbitration proceedings.

- Asset freezing and asset recovery litigation on behalf of private parties as well as on behalf of foreign states in connection with mutual legal assistance proceedings.

**Languages.** English, German, French

**Professional associations/memberships.** Zurich and Swiss Bar Association; International Bar Association; The Law Society (England and Wales); British-Swiss Chamber of Commerce.

**Publications**

- *For internationally active companies, continuing their business in Russia is a balancing act, Neue Zürcher Zeitung, 6 June 2023, p. 8, with Martin Heisch*

- *Chambers Europe 2023, Switzerland – Statutory Arbitration Clauses under the new Swiss Corporate Law, April 2023, with Martin Heisch*

- *Collective Redress - Switzerland keeps up with European developments, Chambers Europe, May 2022, with Martin Heisch.*

- *Chambers Europe 2021 Overview, May 2021, with Marcel Frey.*

© 2023 Thomson Reuters. All rights reserved.

Case 1:20-cv-11862-IT   Document 311-1   Filed 08/18/23   Page 23 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

- *"One for all," or arbitration clauses with effect for unconcluded contracts?, The Lawyer, September 2020, with Marcel Frey and Nina Lim.*

- *Consequences of coronavirus on Swiss civil proceedings, Prager Dreifuss Newsletter, April 2020, with Marcel Frey and Thierry Steib.*

- *Admissible and Inadmissible complaints in Swiss Arbitration, The Lawyer, April 2020, with Marcel Frey.*

## Marcel Frey

**Prager Dreifuss AG**
**T** +41 44 254 5555
**F** +41 44 254 5599
**E** *marcel.frey@prager-dreifuss.com*
**W** *www.prager-dreifuss.com*

**Professional and academic qualifications.** Admission to the bar, Switzerland, 2004; LLM, University of Cape Town, 2006

**Areas of practice.** Litigation and arbitration; private client.

**Recent transactions**

- Advising parties in sanctions-related matters and proceedings.

- Assisting Swiss bank as civil complainant in complex fraud investigation.

- Representing foreign client in large-scale commercial litigation regarding infrastructure project.

- Issuing expert reports on issues of Swiss law for English High Court of Justice proceedings.

- Assisting sovereign fund in claims against Swiss bank.

- Representing a company in UNCITRAL arbitration proceedings.

- Representing claimants and defendants in high-level D&O claims.

**Languages.** German, English, French, Afrikaans

**Professional associations/memberships.** Zurich and Swiss Bar Association; SwissCham Southern Africa.

**Publications**

- *INDEPTH FEATURE: Commercial Arbitration 2023 – Switzerland in: Financier, February 2023, with Reto Jenny.*

- *Overcoming hurdles in international debt collection in Switzerland in: Lawyer Monthly, March 2023.*

© 2023 Thomson Reuters. All rights reserved.

Case 1:20-cv-11862-IT   Document 311-1   Filed 08/18/23   Page 24 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

- *Medical Devices & Consumer Health Products 2022: A Chambers Global Practice Guide Publication, September 2022, with Andrea Schütz and Christian Schönfeld.*

- *Chambers Europe 2021 Overview, May 2021, with Urs Feller.*

- *Litigation and Enforcement in Switzerland: Overview, March 2021, in Thomson Reuters Practical Law, with Urs Feller and Bernhard C. Lauterburg.*

- *Sun Yang and Switzerland's international arbitration rules, March 2021, in IFLR, with Bernhard Lauterburg.*

- *Arbitration Procedures and Practice in Switzerland: Overview, March 2021, in Thomson Reuters Practical Law, with Urs Feller and Bernhard C. Lauterburg.*

- *Brexit - enforcement of judgments and jurisdiction clauses from a Swiss perspective; Prager Dreifuss Newsletter, December 2020, with Urs Feller and Michaela Kappeler.*

## Bernhard C Lauterburg

**Prager Dreifuss AG**
**T** +41 31 327 5454
**F** +41 31 327 5499
**E** bernhard.lauterburg@prager-dreifuss.com
**W** www.prager-dreifuss.com

**Professional and academic qualifications.** Georgetown University Law Centre, LLM, 2006; Admission to the bar, Switzerland, 2010

**Areas of practice.** Competition and regulatory; corporate and commercial; litigation and arbitration.

**Recent transactions**

- Representing clients before state courts and arbitral tribunals.

- Advising on competition law (unfair competition, mergers, cartel investigations, abuse of dominance, distribution agreements, and private enforcement of competition law).

- Advising on public procurement law and state aid law.

**Languages.** German, English, French

**Professional associations/memberships.** Swiss and Berne Bar Association; Swiss Arbitration Association; *Studienvereinigung Kartellrecht e.V.*; Swiss Chapter of the Ligue *Internationale du Droit de la Concurrence*; International Bar Association.

**Publications**

© 2023 Thomson Reuters. All rights reserved.

Case 1:20-cv-11862-IT   Document 311-1   Filed 08/18/23   Page 25 of 25

Arbitration Procedures and Practice in Switzerland: Overview, Practical Law Country...

- *SIWR - Commentary on Article 49a(1) of the Swiss Law on Cartels and other Restraints of Competition (forthcoming).*

- *GCR - The Guide to Life Sciences - First Edition (2022) - "Switzerland: Merger Control Reform Could Have Big Impact, Especially for 'National' Markets," with Philipp Zurkinden and Andrea Schütz.*

- *Sun Yang and Switzerland's international arbitration rules, March 2021, in IFLR, with Marcel Frey.*

- *Litigation and enforcement in Switzerland: overview, March 2021, in Thomson Reuters Practical Law, with Urs Feller and Marcel Frey.*

- *Arbitration Procedures and Practice in Switzerland: Overview, March 2021, in Thomson Reuters Practical Law, with Urs Feller and Marcel Frey.*

- *To what extent should competition law be concerned with differences in prices, terms and conditions and quality to different purchasers? Ligue Internationale du Droit de la Concurrence, Paris Conference 2019, National Report for Switzerland (forthcoming with Springer).*

- *Chapter on Merger Control, in: SBVR Vol. XI (Allgemeines Aussenwirtschafts- und Binnenmarktrecht), 2020.*

- *Merger control in Switzerland, market intelligence, Lexology GTDT, September 2020, with Prof. Dr. Philipp Zurkinden.*

- *Public Procurement 2020 – Lexology GTDT, June 2020, with Prof. Dr. Philipp Zurkinden.*

- *Litigation and Enforcement in Switzerland: Overview, Thomson Reuters Practical Law, March 2020, with Urs Feller and Marcel Frey.*

- *Articles 32-34, in: Commentary on the UN Sales Law (CISG), 2019, together with Christoph Brunner*

- *Verband und Kooperationen, in: Michael Tschudin, Kartellrecht in der Praxis, Helbing Lichtenhahn, Basel, 2018.*

**END OF DOCUMENT**

© 2023 Thomson Reuters. All rights reserved.