# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

KAREN MORALES POSADA, AMANDA
SARMENTO FERREIRA GUIMARAES,
WILLIANA ROCHA, and SARA
BARRIENTOS, individually and on behalf
of all others similarly situated,

                 Plaintiffs,

     v.

CULTURAL CARE, INC.,

                 Defendant.

No. 1:20-cv-11862-IT

**ORAL ARGUMENT REQUESTED**

## <u>DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION</u>

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND........................................................................................2

      A.     CCI Au Pairs Enter Into Agreements with Arbitration Clauses ............................2

      B.     Procedural History .................................................................................4

LEGAL STANDARDS ................................................................................................5

ARGUMENT ................................................................................................................6

I.      PLAINTIFFS' ARBITRATION AGREEMENTS DELEGATE THE QUESTION
       OF ARBITRABILITY TO THE ARBITRATOR ...............................................6

II.    EVEN IF ARBITRABILITY WERE NOT DELEGATED TO THE
       ARBITRATOR, THE COURT SHOULD COMPEL ARBITRATION OF THE
       CLAIMS OF PLAINTIFFS WHO SIGNED THE PRE-2023 CONTRACTS...................8

      A.     Plaintiffs Entered Into Valid, Binding Agreements to Arbitrate ...........................9

      B.     The Arbitration Clause Covers the Asserted Claims ................................................9

      C.     CCI Is Entitled to Enforce the Arbitration Clause in the Contracts......................10

           1.     CCI Is a Third Party Beneficiary to the Contracts ....................................11

           2.     Equitable Estoppel Permits CCI to Invoke Arbitration ............................12

III.   THE COURT MUST ALSO COMPEL PLAINTIFFS WHO SIGNED THE 2023
       CONTRACTS TO ARBITRATION AND STRIKE ANY OPT-IN CONSENTS ..........13

IV.   CCI HAS NOT WAIVED ITS RIGHT TO COMPEL ARBITRATION.........................14

V.    THE COURT SHOULD STAY THE CASE AS TO THE ALLEGED
       CALIFORNIA CLASS IN FAVOR OF THE FIRST-FILED *KUDLACZ*
       ACTION .................................................................................................19

CONCLUSION.............................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Air-Con, Inc. v. Daikin Applied Latin Am., LLC*,
    21 F.4th 168 (1st Cir. 2021) ................................................................6, 9

*Alonso v. Am. Express Co.*,
    2023 WL 196619 (D. Me. Jan. 17, 2023) .........................................6, 15

*Apollo Comp., Inc. v. Berg*,
    886 F.2d 469 (1st Cir. 1989) ..................................................................7

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009) ..............................................................................10

*Barbosa v. Midland Credit Mgmt., Inc.*,
    981 F.3d 82 (1st Cir. 2020) ..................................................................11

*Bekele v. Lyft, Inc.*,
    199 F. Supp. 3d 284 (D. Mass. 2016), *aff'd*, 918 F.3d 181 (1st Cir. 2019) ........................9, 10

*Belnap v. Iasis Healthcare*,
    844 F.3d 1272 (10th Cir. 2017) .............................................................7

*Bossé v. N.Y. Life Ins. Co.*,
    992 F.3d 20 (1st Cir. 2021) ................................................................6, 8

*Boustead Sec., LLC v. Leaping Grp. Co., Ltd.*,
    2023 WL 2481109 (S.D.N.Y. Feb. 14, 2023) .......................................16

*Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*,
    2020 WL 620294 (C.D. Cal. Jan. 9, 2020) ..........................................18

*Chevron Corp. v. Rep. of Ecuador*,
    949 F. Supp. 2d 57 (D.D.C. 2013) .........................................................5

*Coinbase, Inc. v. Bielski*,
    143 S. Ct. 1915 (2023) .........................................................................18

*Commonwealth Equity Servs., LLC v. Ohio Nat'l Life Ins. Co.*,
    2019 WL 1470131 (D. Mass. Apr. 3, 2019) ........................................12

*Crean v. Morgan Stanley Smith Barney, LLC*,
    2023 WL 363589 (D. Mass. Jan. 23, 2023) ........................................15

*Creative Sols. Grp., Inc. v. Pentzer Corp.*,
    252 F.3d 28 (1st Cir. 2001) ..............................................................15, 16

*Cumis Ins. Society, Inc. v. BJ's Wholesale Club, Inc.*,
   455 Mass. 458 (2009) ...................................................................................................11, 12

*Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*,
   638 F.3d 367 (1st Cir. 2011)...................................................................................................9

*Eazy Elecs. & Tech., LLC v. LG Elecs., Inc.*,
   226 F. Supp. 3d 68 (D.P.R. 2016).................................................................................5, 8, 9

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018)...........................................................................................................13

*Fairfield v. DCD Automotive Holdings, Inc.*,
   2023 WL 4186191 (D. Mass. June 26, 2023) ......................................................................11

*Flaherty v. Park Plus, Inc.*,
   2023 WL 4995337 (D. Mass. June 22, 2023) ......................................................................13

*FPE Found. v. Cohen*,
   801 F.3d 25 (1st Cir. 2015)...............................................................................................14, 15

*Gaffers v. Kelly Servs., Inc.*,
   900 F.3d 293 (6th Cir. 2018) .................................................................................................13

*GE Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*,
   140 S. Ct. 1637 (2020) ...........................................................................................................11

*Grand Wireless, Inc. v. Verizon Wireless, Inc.*,
   748 F.3d 1 (1st Cir. 2014).......................................................................................................10

*Haarslev, Inc. v. Nissen*,
   2023 WL 2782313 (W.D. Mo. Jan. 30, 2023) ......................................................................18

*Hayes v. Conduent Commercial Sols., LLC*,
   2022 WL 1104622 (D. Mass. Apr. 13, 2022) ......................................................................15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019)..............................................................................................................5

*Herrera Gollo v. Seaborne P.R., LLC*,
   2017 WL 657430 (D.P.R. Feb. 17, 2017)..............................................................14, 16, 17

*InterGen N.V. v. Grina*,
   344 F.3d 134 (1st Cir. 2003)....................................................................................................8

*In re Intuniv Antitrust Litig.*,
   2021 WL 517386 (D. Mass. Feb. 11, 2021) ..........................................................................6

*In re Intuniv Antitrust Litig.*,
    2023 WL 2662173 (D. Mass. Mar. 15, 2023)........................................................14

*James B. Nutter & Co. v. Estate of Murphy*,
    478 Mass. 664 (2018) ...........................................................................................11

*Joseph v. Quality Dining, Inc.*,
    244 F. Supp. 3d 467 (E.D. Pa. 2017) ...................................................................20

*Kudlacz et al. v. Cultural Care, Inc*,
    No. CGC-20-584567 (Cal. Super. Ct.) ...................................................................2

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)...............................................................................................20

*Ledee v. Ceramiche Ragno*,
    684 F.2d 184 (1st Cir. 1982)................................................................................5, 8

*Lobster 207, LLC v. Pettegrow*,
    2020 WL 2839287 (D. Me. June 1, 2020) ............................................................16

*Machado v. System4 LLC*,
    471 Mass. 204 (2015) .........................................................................10, 11, 12, 13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
    473 U.S. 614 (1985)..................................................................................................5

*Morgan v. Sundance, Inc.*,
    142 S. Ct. 1708 (2022)......................................................................................14, 15

*Next Step Med. Co. v. Johnson & Johnson Int'l*,
    619 F.3d 67, 71 (1st Cir. 2010)..........................................................................2, 20

*Odunukwe v. Trans Union, LLC*,
    2021 WL 4554089 (D. Mass. Oct. 5, 2021)..........................................................15

*Optum, Inc. v. Smith*,
    353 F. Supp. 3d 127, 130-31 (D. Mass. 2019).................................................18, 19

*Perez-Tejada v. Mattress Firm, Inc.*,
    2019 WL 830450 (D. Mass. Feb. 21, 2019) ...................................................5, 9, 13

*Posada v. Cultural Care, Inc.*,
    66 F.4th 348 (1st Cir. 2023)..................................................................................18

*Prcic v. Carnival Corp.*,
    2022 WL 16949605 (S.D. Fla. Nov. 15, 2022).......................................................11

*Sharif v. Wellness Int'l Network, Ltd.*,
    376 F.3d 720 (7th Cir. 2004) ........................................................................16

*Shen v. CMFG Life Ins. Co.*,
    2016 WL 1129308 (D. Mass. Mar. 4, 2016).................................................9

*Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*,
    754 F.2d 457, 463 (2d Cir. 1985) ..............................................................17

*Trejo v. Sea Harvest, Inc.*,
    2021 WL 4311958 (D. Mass. Sept. 22, 2021) ..............................................7

*United States v. Williams Building Co., Inc.*,
    137 F. Supp. 3d 6 (D. Mass. 2015) .............................................................15

*United States ex rel. Hagerty v. Cyberonics, Inc.*,
    146 F. Supp. 3d 337, 350 (D. Mass. 2015), *aff'd*, 844 F.3d 26 (1st Cir. 2016) .....................17

*Walsh Construction Co. P.R. v. United Surety & Indem. Co.*,
    2015 WL 13548470 (D.P.R. 2015).............................................................20

*Williams v. Cigna Financial Advisors*,
    56 F.3d 656 (5th Cir. 1995) ........................................................................16

*Zachman v. Hudson Valley Fed. Credit Union*,
    49 F.4th 95 (2d Cir. 2022) ........................................................................6, 9

## Statutes and Regulations

9 U.S.C. § 2.........................................................................................................5, 9

9 U.S.C. § 3.......................................................................................................2, 20

9 U.S.C. § 16........................................................................................................18

9 U.S.C. § 201 *et seq.*............................................................................................5

9 U.S.C. § 202........................................................................................................8

9 U.S.C. § 206...............................................................................................2, 8, 20

22 C.F.R. § 62.31(a)................................................................................................2

Defendant Cultural Care, Inc. ("Cultural Care" or "CCI") respectfully submits this memorandum in support of its Motion to Compel Arbitration.

## PRELIMINARY STATEMENT

Defendant Cultural Care, Inc. and International Care, Ltd. ("ICL"), whose registered business name is also Cultural Care, are affiliates that work in tandem to identify au pair candidates in various foreign countries per the regulations of the Department of State ("DOS") and then to place them in the homes of host families in the United States, again following DOS regulations. The au pair Plaintiffs each signed a contract with ICL setting forth terms and conditions of their participation in DOS's Au Pair Program (the "Program"), including an agreement that ICL (referred to as "Cultural Care" or "CC" in the contract) "is not responsible for any financial disputes I have with my host family such as outstanding money for . . . [the] weekly stipend." *E.g.*, Jordan Decl. Ex. A, Dkt. 310-1, ¶ 7. Each au pair also broadly agreed in the contract that any claims or disputes between the parties are to be resolved by arbitration in Switzerland applying Swiss law. *Id.* ¶ 15. In addition, au pairs who started in January 2023 and thereafter signed an additional contract with CCI, which requires arbitration of all claims against CCI at JAMS in Boston. Jordan Decl. Ex. E, Dkt. 310-5, ¶ 27.

The Plaintiffs' fundamental allegation in this case is that CCI is their "employer" and therefore is obligated to pay them amounts purportedly due for their work as au pairs. *See, e.g.*, 2nd Am. Class Action Compl. ("Compl."), Dkt. 43, ¶¶ 2, 4. That allegation is the basis of all of Plaintiffs' claims and is a proposition which CCI vehemently disputes. The contracts that the au pairs agreed to with CCI and ICL will be centrally relevant to deciding this issue, and they require all disputes to be arbitrated.

Defendant brings this motion to enforce the arbitration agreement that each au pair entered into before participating in the Program under CCI's sponsorship. A duly appointed arbitrator

should decide issues of arbitrability, and CCI has not waived its rights to arbitration. Accordingly, the Court should enforce the au pairs' agreements and grant CCI's motion to compel pursuant to the Federal Arbitration Act ("FAA"). Specifically, this Court should: (1) compel the named Plaintiffs and opt-in Plaintiffs to arbitration, pursuant to their contracts and 9 U.S.C. § 206, and dismiss as to them, *see Next Step Med. Co. v. Johnson & Johnson Int'l*, 619 F.3d 67, 71 (1st Cir. 2010); or (2) alternatively, compel the named Plaintiffs to arbitration, stay the case as to them (*see* 9 U.S.C. § 3), and dismiss the opt-in Plaintiffs without prejudice, *see, e.g.*, *Joseph v. Quality Dining, Inc.*, 244 F. Supp. 3d 467, 475 (E.D. Pa. 2017) (employing this procedure following grant of motion to compel arbitration of named plaintiffs' claims in FLSA collective action); and (3) compel the sub-classes to arbitration except for the alleged California class, as to which this Court should stay all proceedings in favor of first-filed litigation in California state court, *Kudlacz et al. v. Cultural Care, Inc*, No. CGC-20-584567 (Cal. Super. Ct.). *Kudlacz* involves California PAGA claims based on identical California wage and hour violations as alleged here, asserted on behalf of the same putative class. ICL and CCI are asserting their rights there to arbitrate under the same arbitration agreements. Finally, (4), to the extent it does not order such Plaintiffs to arbitration, the Court should strike any opt-in consents from Plaintiffs who signed the 2023 contracts with CCI, because those contracts include an express waiver of opting in to a collective or class action.

## FACTUAL BACKGROUND

### A.    CCI Au Pairs Enter Into Agreements with Arbitration Clauses

CCI is a legally designated sponsor organization for the DOS Program. Order on Pls.' Mot. to Dismiss, Dkt. 137, at 3-4, 6. As a Program sponsor, DOS regulations require CCI to screen and select foreign nationals who want to participate in the Program, screen and select host families, and monitor au pairs' well-being. *Id.* at 3-4. Prospective au pairs, who are all foreign nationals (22 C.F.R. § 62.31(a)), contact CCI's international affiliate, ICL, a Swiss-based company, about

participation in the Program. Jordan Decl., Dkt. 310, ¶ 4. ICL screens prospective au pairs and delivers information about the candidates to CCI, which then facilitates the matching of au pairs with host families and otherwise performs the tasks required by the DOS regulations. *Id.*

Au pairs who entered the Program with CCI as their sponsor each signed a contract with ICL (the "Contract") setting forth "the [] terms and conditions . . . relating to the au pair's participation in" the Program with CCI as a sponsor. *E.g.*, Jordan Decl. Ex. A, Morales Posada Contract, Dkt. 310-1, at 1. The Contract expressly references CCI, noting among other things that during the Program, "CC staff in the U.S." would be the au pairs' "primary contacts." *Id.* ¶ 8. The au pairs expressly agreed that: "CC is not responsible for any financial disputes I have with my host family such as outstanding money for . . . weekly stipend, etc. I understand that I must settle all disputes directly with my host family prior to my departure from their home." *Id.* ¶ 7.

Each Contract that Plaintiffs signed also contains an identical arbitration clause:

> This Agreement shall take effect as a sealed instrument under and shall be governed by the laws of Switzerland.  In the event of any claim, dispute, or proceeding arising out of the relationship of me and CC, or any claim which in contract, tort, or otherwise at law or in equity arises between the parties, whether or not related to this Agreement, the parties submit and consent to the exclusive jurisdiction and venue of the arbitrational tribunals of Switzerland.

*See, e.g.*, *id.* ¶ 15; Jordan Decl. Ex. B, Guimaraes Contract, Dkt. 310-2, ¶ 15; Jordan Decl. Ex. C, Rocha Contract, Dkt. 310-3, ¶ 16; Jordan Decl. Ex. D, Barrientos Contract, Dkt. 310-4, ¶ 15.

Beginning in January 2023, new au pairs also entered into separate Au Pair Program Participation Agreements directly with CCI (the "2023 Contracts"), in addition to signing a Contract with ICL. *See* Jordan Decl. Ex. E, Dkt. 310-5.[1] In these Contracts, 2023 au pairs again

---

[1]   This Court approved the sending of the collective action notice to au pairs sponsored by CCI through June 20, 2023. Stip. and Order, Dkt. 271, at 3 ¶ 2. Any opt-in Plaintiffs who began their au pair placements in 2023 will be subject to a 2023 Contract. Jordan Decl., Dkt. 310, ¶ 12.

acknowledged that CCI is not responsible for determining their weekly stipend beyond ensuring that host families comply with DOS regulations relating to compensation. *See id.* ¶¶ 8, 14-15.

The 2023 Contracts each contain arbitration provisions providing for arbitration in Boston at JAMS (*id.* ¶¶ 26-28, reproduced in Appendix A to this memorandum):

> In connection with any claim, dispute, or proceeding arising out of or relating in any manner to this Agreement or my relationship with CCI, or any dispute or claim between me and CCI whether in contract, tort, or otherwise, or at law or in equity, whether or not related to this Agreement, the parties hereby mutually agree to submit to mandatory, final, and binding arbitration on an individual basis. I understand that this means both CCI and I have selected arbitration as the sole and exclusive forum for the parties to sue or be sued for any and all disputes between us and not to have such disputes decided by a court or a jury.

*Id.* ¶ 27. The 2023 Contracts also provide that "ALL COVERED DISPUTES . . . SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS ONLY," and that "[i]n the event that I may be covered by a class, collective, representative, consolidated or joint lawsuit brought against CCI in a court or arbitration proceeding by a third party, I agree to opt-out of the proceeding." *Id.* ¶ 28.

### B.    Procedural History

Defendant filed a motion to dismiss on March 22, 2021. Dkt. 66. On August 13, 2021, the Court largely denied the motion, Dkt. 137, and on November 4, 2021 stayed this case pending Defendant's appeal. Dkt. 162. On June 20, 2023, following the First Circuit's affirmance on the issue of derivative sovereign immunity, this Court lifted the stay. Dkt. 262-1. The parties conferred on June 30, 2023, during which CCI's counsel informed Plaintiffs' counsel of CCI's intent to move to compel arbitration of the Plaintiffs' claims unless Plaintiffs consented, which they did not. Wolkoff Decl., Dkt. 311, ¶ 4.[2] CCI answered the Second Amended Complaint on July 7, 2023,

---

[2]    In the parallel *Kudlacz* litigation, discussed *infra* Sec. V, CCI's counsel had previously told plaintiffs' counsel, who are also Plaintiffs' counsel here, that CCI intended to move to compel arbitration based on the same Contracts.  Wolkoff Decl., Dkt. 311, ¶ 3.

specifically stating its intention to move to compel arbitration and asserting an affirmative defense of arbitration. Dkt. 274, at 1-2, 32. The parties agreed on a schedule for Defendant's motion, Dkt. 273, which the Court adopted following the July 13, 2023 scheduling conference. Dkt. 283, 289.

## LEGAL STANDARDS

The FAA provides that written arbitration agreements are valid, irrevocable, and enforceable, 9 U.S.C. § 2, and "embodies the national policy favoring arbitration." *Perez-Tejada v. Mattress Firm, Inc.*, 2019 WL 830450, at *4 (D. Mass. Feb. 21, 2019). When interpreting an arbitration clause, "the parties' . . . intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985).

Both sets of contracts here are governed by the New York Convention, codified in Chapter 2 of the FAA, 9 U.S.C. § 201 *et seq.* The Convention applies when (1) there is "an agreement in writing to arbitrate the controversy between the parties," which (2) "provide[s] for arbitration in a country that is a signatory to the Convention," (3) the "agreement arise[s] out of a commercial relationship," and (4) it "include[s] foreign citizens as parties . . . ." *Eazy Elecs. & Tech., LLC v. LG Elecs., Inc.*, 226 F. Supp. 3d 68, 73 (D.P.R. 2016) (citing *Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186 (1st Cir. 1982)). A court performs a "very limited inquiry" on a motion to compel arbitration under FAA ch. 2; if these four criteria apply, the court "must order arbitration" unless the arbitration clause is deemed "null and void, inoperative or incapable of being performed." *Ledee*, 684 F.2d at 186-87. This narrow exception encompasses only "situations [] such as fraud, mistake, duress, and waiver [] that can be applied neutrally on an international scale." *Id.* at 187.

Where an agreement, based on "clear and unmistakable evidence," delegates to an arbitrator threshold issues of arbitrability, courts enforce that delegation. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019); *Chevron Corp. v. Rep. of Ecuador*, 949 F. Supp. 2d 57, 64-66 (D.D.C. 2013) (same under the Convention). These include the scope of an

arbitration clause and whether a non-signatory can invoke it. *See In re Intuniv Antitrust Litig.*, 2021 WL 517386, at *3, *6-8 (D. Mass. Feb. 11, 2021). In such cases, the court's role is "limited to determining [] whether a valid arbitration agreement exists, but" if so, "a court may not decide the arbitrability issue." *Bossé v. N.Y. Life Ins. Co.*, 992 F.3d 20, 28 (1st Cir. 2021).

Absent a delegation, once the moving party carries its initial burden to demonstrate that an arbitration agreement exists, the burden shifts to the non-moving party to provide evidence that the agreement is inapplicable or invalid. *See Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 175, 177 (1st Cir. 2021); *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 102 (2d Cir. 2022) ("[The movant's] burden does not require the moving party to show that the agreement would be enforceable—only that an agreement to arbitrate existed . . . [then] the burden shifts to the party seeking to avoid arbitration to show[] the agreement to be inapplicable or invalid.'"); *Alonso v. Am. Express Co.*, 2023 WL 196619, at *5 (D. Me. Jan. 17, 2023) ("The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue.").

## ARGUMENT

## I.    PLAINTIFFS' ARBITRATION AGREEMENTS DELEGATE THE QUESTION OF ARBITRABILITY TO THE ARBITRATOR

The Contracts and 2023 Contracts contain valid, enforceable arbitration provisions that CCI may invoke to require arbitration of the claims asserted here. Moreover, any question of arbitrability should be determined by the arbitrator. The arbitration clause in the Contract provides, "[T]he parties submit and consent to the exclusive jurisdiction and venue of the arbitrational tribunals of Switzerland." *E.g.*, Dkt. 310-1, ¶ 15. The two arbitration tribunals in Switzerland for commercial disputes are the Swiss Arbitration Centre and the International Chamber of Commerce

("ICC") International Court of Arbitration.[3] The rules for both tribunals expressly reserve to the arbitrator the power to rule on any objections to jurisdiction.[4] Accordingly, the Plaintiffs who signed Contracts agreed to arbitral bodies whose rules reserve the determination of arbitrability issues, including the scope and validity of the arbitration clauses, to the arbitrator. *See, e.g.*, *Apollo Comp., Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) (agreement to arbitrate in accordance with ICC Rules "delegate[d] to the arbitrator decisions about . . . arbitrability.").

     Moreover, the 2023 Contracts contain express delegation language:

> The arbitrator (and not a court or jury) shall decide *all issues* in or related to any such dispute or claim [covered by the agreement] including but not limited to *issues regarding the scope of the arbitrator's authority* . . . and *all other issues regarding the formation, existence, application, interpretation, and implementation of this Agreement* or of any issue in any dispute covered by this agreement.

Dkt. 310-5, ¶ 27 (emph. added). They also provide that arbitrations "shall be conducted and administered under" the JAMS Comprehensive Arbitration Rules. *Id.* This is an express delegation of all arbitrability issues.[5] *See Trejo v. Sea Harvest, Inc.*, 2021 WL 4311958, at *4 (D. Mass. Sept. 22, 2021) ("[T]he express delegation language . . . and [] incorporation of the JAMS rules establish that the parties intended that an arbitrator decide whether [plaintiff] must arbitrate his claims.").[6]

---

[3]  *See* Wolkoff Decl. Ex. A, Urs Feller et al., <u>Arbitration Procedures and Practice in Switzerland: Overview</u>, Dkt. 311-1, at 4-5 (2023).

[4]  *See* Wolkoff Decl. Ex. B, Swiss Rules of International Arbitration, Art. 23 (2021), Dkt. 311-2, ¶ 1 ("The arbitral tribunal shall have the power to rule on any objections to its jurisdiction, including regarding the existence, validity or scope of the Arbitration Agreement[.]"); Wolkoff Decl. Ex. C, ICC Rules of Arbitration, Art. 6 (2021), Dkt. 311-3, ¶ 3 ("[I]f any party raises one or more pleas concerning the existence, validity or scope of the arbitration agreement  . . . any question of jurisdiction … shall be decided directly by the arbitral tribunal[.]").

[5]  Wolkoff Decl. Ex. D, JAMS Comp. Arb. Rules & Procedures, R. 11(b) (2021), Dkt. 311-4.

[6]  The incorporation of JAMS rules alone is sufficient evidence of the parties' intent to delegate arbitrability questions to the arbitrator. *See, e.g.*, *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1283 (10th Cir. 2017) (collecting cases).

Accordingly, the Court need only decide whether the contracts were made before sending the matter to arbitration, *Bossé*, 992 F.3d at 28, which Plaintiffs cannot reasonably dispute.

## II.   EVEN IF ARBITRABILITY WERE NOT DELEGATED TO THE ARBITRATOR, THE COURT SHOULD COMPEL ARBITRATION OF THE CLAIMS OF PLAINTIFFS WHO SIGNED THE PRE-2023 CONTRACTS

As noted above, the Contracts are governed by the Convention. Plaintiffs cannot dispute that Switzerland is a signatory, foreign citizens (Plaintiffs, ICL) are parties, and the Contracts arise from a relationship Plaintiffs themselves allege is commercial.[7] *Ledee*, 684 F.2d at 186-87; *see* 9 U.S.C. § 202. Unconscionability is not a defense, *see Eazy Elecs.*, 226 F. Supp. 3d at 78, and Plaintiffs cannot challenge arbitrating in Switzerland, particularly as they are each foreign citizens who affirmatively contacted ICL, a Swiss company, to join the Program, and many have since returned to their home countries. *See* 9 U.S.C. § 206 (arbitration may be directed "at any place . . . provided for [in agreement], whether that place is within or without the United States.").

Accordingly, the only question is whether the Contract includes a written agreement "to arbitrate the subject of the dispute." *Ledee*, 684 F.2d at 186. Because arbitrability is delegated to the arbitrator, this Court need only decide if an arbitration agreement was formed. If (and only if) the Court were to decide that arbitrability is *not* delegated to the arbitrator under the pre-2023 Contracts, CCI must further show "that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003) (applying above analysis to contract subject to Convention and noting that "so long as the parties are bound to arbitrate . . . the

---

[7]   *See* United Nations, Status: Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, 1958) (the "New York Convention"), https://uncitral.un.org/en/texts/arbitration/conventions/foreign_arbitral_awards/status2 (last visited Aug. 17, 2023).

court is under an unflagging, nondiscretionary duty to grant a timely motion to compel arbitration . . . even though the agreement . . . requires arbitration in a distant forum.").[8]

### A.    Plaintiffs Entered Into Valid, Binding Agreements to Arbitrate

A valid contract to arbitrate exists when the parties agree to "the material terms" and have "a present intention to be bound." *Perez-Tejada*, 2019 WL 830450, at *4. A party is bound to an arbitration clause when it signs an agreement containing one. *Shen v. CMFG Life Ins. Co.*, 2016 WL 1129308, at *4-5 (D. Mass. Mar. 4, 2016), *R&R adopted*, 2016 WL 1189125 (D. Mass. Mar. 22, 2016).[9] Plaintiffs cannot dispute that they each accepted the Contract and the Contract contains the arbitration clause. *E.g.*, Dkt. 310-1, ¶ 16 ("My signature on this agreement indicates acceptance of this Agreement and is legally binding."). Plaintiffs also agreed that "the parties submit and consent to the exclusive jurisdiction and venue of the arbitrational tribunals of Switzerland," demonstrating their intent to be bound by the clause specifically. *Id.* ¶ 15.

### B.    The Arbitration Clause Covers the Asserted Claims

The Contract's arbitration clause covers both "any claim, dispute, or proceeding arising out of the [au pairs'] relationship with CC" *and* "any claim . . . between the parties, whether or not related to this Agreement." *Id.* Such language covers "a broad scope of claims." *Bekele v. Lyft,*

---

[8]  Even if the Convention did not apply and this motion were assessed under FAA Chapter 1, the same analysis would apply. *See, e.g.*, *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375-76 (1st Cir. 2011). The only difference is that if not governed by the Convention, the arbitration agreements would be subject to the savings clause in FAA § 2, 9 U.S.C. § 2 (agreements are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract"); *see also Eazy Elecs.*, 226 F. Supp. 3d at 77 (FAA § 2 not applicable to Convention-governed agreements). Here, there are no such grounds, which Plaintiffs would bear the burden of showing. *Air-Con*, 21 F.4th at 175; *Zachman*, 49 F.4th at 102.

[9]  The Contracts are governed by the law of Switzerland, *see, e.g.*, Dkt. 310-1,¶ 15, whose contract law is equivalent on the issue of contract formation. *See* Wolkoff Decl. Ex. E,  Eugen Bucher, Law of Contracts, *in* INTRODUCTION TO SWISS LAW, 3d Ed. (F. Dessemontet & T. Ansay eds.) (2004), Dkt. 311-5, at 107 ("The elements necessary for the formation of a contract are to a large extent identical with those familiar in the Common Law system.").

*Inc.,* 199 F. Supp. 3d 284, 313 (D. Mass. 2016), *aff'd,* 918 F.3d 181 (1st Cir. 2019). Any ambiguities about the scope of an arbitration clause are resolved in favor of arbitration. *See Grand Wireless, Inc. v. Verizon Wireless, Inc.,* 748 F.3d 1, 7 (1st Cir. 2014).

Plaintiffs' claims in this case "arise out of [their] relationship" with ICL, the CCI affiliate that is the signatory to the Contracts. That relationship is inseparable from Plaintiffs' service as au pairs in the United States under the sponsorship of CCI, which is what gives rise to Plaintiffs' core claim in this case: that CCI was their "employer." Dkt. 43, ¶¶ 2, 4. The Contracts make this plain: they set out "terms and conditions" for the au pairs' participation in the Program in the U.S., and expressly address both the childcare that au pairs perform for host families after being placed by CCI and the au pairs' interactions with CCI. *See, e.g.*, Dkt. 310-1, ¶¶ 4, 8. Plaintiffs' claims would never have arisen but for Plaintiffs entering into the Contracts with ICL, whose function is to review and admit au pairs into the Program to be sponsored by CCI. To decide the claims, a trier of fact will necessarily have to interpret the Contracts, and the au pairs agreed to arbitrate "any" claims or disputes, including the nature of the relationship with CCI that the contractual relationship created. *See Machado v. System4 LLC*, 471 Mass. 204, 210 (2015) ("When the signatory's claims against a nonsignatory refer to or presume the existence of the written agreement that compels arbitration, the signatory's claims may be considered to arise out of and be directly intertwined with that agreement, rendering arbitration appropriate.").

### C.   CCI Is Entitled to Enforce the Arbitration Clause in the Contracts

The pre-2023 Contracts between the au pairs and ICL refer to ICL as "Cultural Care" or "CC" throughout, but do not refer specifically to "Cultural Care, Inc." However, a non-signatory to an arbitration agreement can enforce the agreement where state contract law allows it. *See Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 630-31 (2009). In Massachusetts, a non-signatory can compel arbitration when, *inter alia*, it is a third-party beneficiary of the arbitration clause or

when equitable estoppel would apply to require the signatory (the Plaintiffs here) to arbitrate their claims. *See Machado*, 471 Mass. at 209-11.[10]

### 1.   CCI Is a Third Party Beneficiary to the Contracts

The Contracts demonstrate that CCI is a third party beneficiary entitled to enforce the arbitration clause. Third-party beneficiary status exists when "the language and circumstances of the contract show that the parties to the contract clearly and definitely intended the beneficiary to benefit from the promised performance." *Cumis Ins. Society, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 466 (2009) (cleaned up). Where a purpose of a contract is to confer benefits on a third party, the third party is entitled to enforce the contract. *See, e.g.*, *Barbosa v. Midland Credit Mgmt., Inc.*, 981 F.3d 82, 92 n. 11 (1st Cir. 2020).

CCI is an intended beneficiary of the arbitration clauses, and the Contracts as a whole. As noted above, the clauses encompass claims relating to the au pairs' participation in the Program, sponsored by CCI. *See Fairfield v. DCD Auto. Holdings, Inc.*, 2023 WL 4186191, at *3-4 (D. Mass. June 26, 2023) (clause covering "all disputes between [signatories] ... (or otherwise arising out of or relating to this Contract)" contemplated disputes with third parties). It would make no sense to read the Contracts to set forth Plaintiffs' rights and duties vis-à-vis the Program as a whole, including their interactions with CCI, but construe the arbitration clauses as narrowly benefiting ICL alone. *See James B. Nutter & Co. v. Estate of Murphy*, 478 Mass. 664, 669 (2018) ("[W]e construe a contract as a whole, so as to give reasonable effect to each of its provisions").

---

[10]   The Convention does not displace "domestic doctrines" that allow non-signatories to enforce arbitration agreements, including third-party beneficiary and equitable estoppel doctrines (discussed below). *GE Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1645 (2020). Some courts apply federal common law, not state law, to such arbitrability questions under the Convention. *See, e.g.*, *Prcic v. Carnival Corp.*, 2022 WL 16949605, at *3 (S.D. Fla. Nov. 15, 2022). The result is the same here because these doctrines are "traditional principles" of contract law. *Arthur Andersen LLP*, 556 U.S. at 631.

More broadly, the Contracts are clearly intended to include CCI. The Contracts govern "the au pair's participation in the . . . Au Pair program," which CCI oversees. Dkt. 310-1, at 1. The Contracts also cover disputes over the au pairs' stipends, which could only implicate CCI (not ICL). *Id.* ¶ 7. Thus the Contracts were "intended" to provide CCI with the "benefit from the [au pairs'] promised performance" of the duties and undertakings they set out. *Cumis*, 455 Mass. at 466; *see also Commonwealth Equity Servs., LLC v. Ohio Nat'l Life Ins. Co.*, 2019 WL 1470131, at *5 n.3 (D. Mass. Apr. 3, 2019) (agents were third-party beneficiaries of arbitration clause where contract "refer[red] to the representatives and their role throughout").

### 2.     Equitable Estoppel Permits CCI to Invoke Arbitration

The equitable estoppel doctrine allows a non-signatory to an arbitration agreement to compel arbitration when a signatory's claims "refer to or presume the existence of the written agreement that compels arbitration" or "arise out of" or are "directly intertwined with that agreement." *Machado*, 471 Mass. at 211. In any of those instances, the signatory is estopped from avoiding arbitration  *Id.*

*Machado* is instructive. There, the Supreme Judicial Court compelled signatory plaintiffs to arbitrate their Massachusetts Wage Act claims against a non-signatory defendant. *Id.* at 205. The plaintiffs were franchisee workers who had agreements containing arbitration clauses with a regional sub-franchisor, and sued the sub-franchisor and a master franchisor, who was not a signatory to the agreements, for misclassifying them as independent contractors. *Id.* at 204-07. The SJC held that the claims against the master franchisor were intertwined with the agreements because the agreements were "replete with references to the plaintiffs' duties and responsibilities," and a finder of fact could not determine the plaintiffs' status and decide their claims without reference to the agreements. *Id.* at 214. Because "an important element of a working relationship is the contract responsible for creating it," it would be unfair to allow the plaintiffs to benefit from

12

the agreements bringing their Wage Act claims, but at the same time avoid the arbitration clauses contained in the same agreements. *Id.* at 212, 215; *see also Flaherty v. Park Plus, Inc.,* 2023 WL 4995337 (D. Mass. June 22, 2023), at *9-10 (applying *Machado* and holding that plaintiff's Wage Act claims were intertwined with his Employment Agreement which included arbitration clause).

The crux of Plaintiffs' claims is that they are allegedly employees of CCI. As in *Machado*, a finder of fact cannot determine Plaintiffs' status without referring to the contracts setting forth Plaintiffs' relationship with CCI and the terms and conditions of their participation in the Program. *See* 471 Mass. at 214 ("[C]ourts commonly look to contractual language as a starting point for assessing how a worker ought to be classified."). Just like the agreements in *Machado* which were "replete with references to the plaintiffs' duties and responsibilities," the Contracts set out Plaintiffs' duties and responsibilities in the Program and provide that disputes about the weekly stipend are exclusively between au pairs and host families.

Accordingly, the Court should compel all Plaintiffs who signed the Contracts, including the four named Plaintiffs here, to arbitrate their claims against CCI.

## III.   THE COURT MUST ALSO COMPEL PLAINTIFFS WHO SIGNED THE 2023 CONTRACTS TO ARBITRATION AND STRIKE ANY OPT-IN CONSENTS

This Court should also compel opt-in Plaintiffs who signed the 2023 Contracts to arbitrate. There can be no dispute that these agreements were validly made, cover the claims at issue, and can be invoked by CCI. Pursuant to ¶ 28 of the 2023 Contracts, any arbitrations must be individual. Dkt. 310-5, ¶ 28. Such collective and class action waivers are enforceable under the FAA and are not displaced by the FLSA. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622-23 (2018); *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 297 (6th Cir. 2018) (rejecting argument that FLSA's collective action provision invalidates collective action waiver in arbitration agreement); *Perez-Tejada*, 2019 WL 830450, at *8 (holding collective action waiver in arbitration agreement was enforceable in

putative FLSA collective action). The Court should also strike any opt-in consents from putative plaintiffs who signed 2023 Contracts (including any filed after this Motion), because those plaintiffs expressly agreed that they would "opt-out" of any "class, collective, representative, consolidated, or joint lawsuit brought against CCI . . . by a third party." Dkt. 310-5, ¶ 28.

## IV.    CCI HAS NOT WAIVED ITS RIGHT TO COMPEL ARBITRATION

CCI has not waived its right to arbitrate this dispute. A litigant waives its contractual right to arbitrate only by "intentional[y] relinquish[ing] or abandon[ing] a known right." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713-14 (2022). The First Circuit assesses waiver of arbitral rights using the following factors: "(1) whether the parties participated in a lawsuit or took other action inconsistent with arbitration; (2) whether the litigation machinery has been substantially invoked and the parties are well into preparation of a lawsuit by the time an intention to arbitrate is communicated; (3) whether there has been a long delay and trial is near at hand; (4) whether the party seeking to compel arbitration has invoked the jurisdiction of the court by filing a counterclaim; [and] (5) whether discovery not available in arbitration has occurred . . . ." *FPE Found. v. Cohen*, 801 F.3d 25, 29 (1st Cir. 2015) (cleaned up); *see also In re Intuniv Antitrust Litig.*, 2023 WL 2662173, at *10 (D. Mass. 2023) (same).[11] "[N]o one factor dominates the analytical framework." *Id.* at *11 (quotation marks omitted). The First Circuit takes a "holistic approach to evaluating whether a right to arbitrate has been implicitly waived," *Herrera Gollo v. Seaborne P.R., LLC*, 2017 WL 657430, at *5 (D.P.R. Feb. 17, 2017), and the factors are case

---

[11]   Prior to the Supreme Court's decision in *Morgan*, the First Circuit also looked to whether the non-moving party suffered "prejudice" resulting from delay in the moving party's compelling arbitration. *FPE Found.*, 801 F.3d at 29. That factor has been eliminated following *Morgan*. 142 S. Ct. at 1714; *Intuniv*, 2023 WL 2662173, at *10. Thus, although Plaintiffs may claim to have suffered prejudice from CCI's not pursuing arbitration earlier, that is irrelevant. And, after *Morgan*, courts assessing waiver still apply "the FAA's policy favoring arbitration." *Id.* at *9.

specific. *See Hayes v. Conduent Commercial Sols.,* LLC, 2022 WL 1104622, at *6 (D. Mass. Apr. 13, 2022) ("There is no bright-line rule for a waiver of arbitral rights, and each case is to be judged on its particular facts." (cleaned up)).

Here, the *FPE* factors weigh against a conclusion of waiver. This action is still in its early stages and the parties are not "well into preparation" of the suit. *FPE Found.*, 801 F.3d at 29; *Creative Sols. Grp., Inc. v. Pentzer Corp.,* 252 F.3d 28, 33 (1st Cir. 2001) (finding no waiver because parties were not well into preparation of a lawsuit even though a motion to dismiss was filed and initial discovery had occurred); *Odunukwe v. Trans Union, LLC,* 2021 WL 4554089, at *4 (D. Mass. Oct. 5, 2021) (holding no waiver, in part, because the litigation was still "in its infancy"). CCI only recently filed its Answer, in which it expressly stated its intent to compel arbitration and asserted a defense of arbitration (Dkt. 274, at 1, 32)—a factor widely considered to be *consistent* with an intent to assert arbitration rights. *See, e.g.*, *Crean v. Morgan Stanley Smith Barney, LLC*, 2023 WL 363589, at *9 (D. Mass. Jan. 23, 2023); *Alonso*, 2023 WL 196619, at *8; *Odunukwe*, 2021 WL 4554089, at *4 ("A litigant intending to assert a right to arbitrate need not shut itself off from the litigation entirely."). CCI has not asserted any counterclaims, *no* discovery has been conducted, and trial in this action is nowhere "near at hand." No trial date has been set; indeed no schedule has been set at all except for the deadline for this Motion. *FPE Found.*, 801 F.3d at 29; *see Crean*, 2023 WL 363589, at *9; *Alonso*, 2023 WL 196619, at *8 (no waiver where motion to compel arbitration was filed three months after defense asserted in answer and four months prior to scheduled trial); *United States v. Williams Building Co., Inc.*, 137 F. Supp. 3d 6, 11-12 (D. Mass. 2015) (no waiver where party asserted arbitration in answer and no discovery had taken place, even though party filed third-party complaints in court). In short, this action is in its initial stages and the "machinery of litigation" has not been "substantially invoked."

That CCI moved to dismiss Plaintiffs' complaint and litigated the legal issues raised in that motion in an interlocutory appeal does not change the result.[12] *First*, "it is well-established that a party does not waive its right to arbitrate merely by filing a motion to dismiss." *Herrera Gollo*, 2017 WL 657430, at *4 (quoting *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726-27 (7th Cir. 2004)); *see also Lobster 207, LLC v. Pettegrow*, 2020 WL 2839287, at *9-10 (D. Me. June 1, 2020) (granting motion to compel and finding no waiver where defendant moved after first "challeng[ing] the merits of the pleadings" in a motion to dismiss). In *Creative Solutions Group v. Pentzer Corp.*, the First Circuit held that a defendant did not waive arbitration rights where it moved to compel only *after* moving to dismiss and requesting supplemental initial disclosures, because the defendant asserted a right to arbitrate in its answer and then promptly moved to compel. 252 F.3d at 33-34. The defendant's actions taken together neither "substantially invoked" the "litigation machinery" nor were "inconsistent with [a] right to arbitration," and the parties were not "well into preparation of a lawsuit." *Id.* at 33. The same is true here.[13]

*Second*, although CCI's motion and appeal resulted in time passing since the initial complaint was filed, the amount of time before arbitration is invoked is not dispositive, and courts have not found waiver even where an earlier motion results in "years-long delays" while it is litigated. *Boustead Sec., LLC v. Leaping Grp. Co., Ltd.*, 2023 WL 2481109, at * 4 (S.D.N.Y. Feb. 14, 2023) (no waiver where a party made three motions to dismiss, resulting in a delay of over two years before arbitration was demanded); *see also Haarslev, Inc. v. Nissen*, 2023 WL 2782313, at

---

[12]   CCI also opposed as premature and unsupported Plaintiffs' motion to certify a collective action under FLSA while the motion to dismiss was pending. Def.'s Mem. in Opp. to Pls.' Mot. to Certify a Collective Action, Dkt. 112 at 1-3.

[13]   The First Circuit cited *Williams v. Cigna Financial Advisors*, 56 F.3d 656, 661-62 (5th Cir. 1995), in which the defendant's "removal to federal court, filing motion to dismiss and to stay discovery and answer to complaint including compulsory counterclaims, and exchang[e] [of] Rule 26 discovery did not substantially invoke [the] judicial process." *Pentzer*, 252 F.3d at 33.

*6 (W.D. Mo. Jan. 30, 2023) (2.5-year delay was not waiver because case was stayed pending determination of personal jurisdiction motion). Under the First Circuit's "holistic" approach, there is no bright-line when "delay" becomes too long,[14] and no requirement that a party who moves to dismiss also must simultaneously move or mention the prospect of arbitration to avoid a waiver. In *Herrera Gollo*, for example, the District of Puerto Rico found no waiver even though the defendant litigated a 12(b)(6) motion on the merits of plaintiffs' claims all the way to a decision, and moved to compel arbitration only after losing the motion to dismiss, long after the complaint was filed. 2017 WL 657430, at *4. Like here, all of the remaining factors the First Circuit considers weighed against waiver. *See id.* at *1, *4 ("[D]espite the time that has passed, this case is still in the very early stages, and thus this weighs heavily against a finding of waiver.").

*Third*, while CCI's motion briefly raised the issue on the merits of whether the Complaint plausibly alleged that CCI is the au pairs' employer, *see* Def.'s Mem. of L., Dkt. 67, at 28-30, it predominantly was based on derivative sovereign immunity and preemption, *id.* at 18-28. These U.S. law issues are not within the scope of the arbitration clause in the Contract, which requires a Swiss arbitral forum to apply Swiss law. A Swiss arbitrator applying Swiss law could not have decided these arguments, which are uniquely issues of U.S. law. Because these legal arguments were not subject to arbitration, CCI did not waive by first pursuing them in U.S. courts. *See United States ex rel. Hagerty v. Cyberonics, Inc.*, 146 F. Supp. 3d 337, 350 (D. Mass. 2015), *aff'd*, 844 F.3d 26 (1st Cir. 2016) (motion to dismiss all claims did not constitute waiver where most of claims "were not subject to arbitration"); *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 463 (2d Cir. 1985) (no waiver from motion to dismiss complaint containing mostly non-

---

[14]   In any event, nearly twenty months of the "delay" here resulted from the stay which was in place during the pendency of Defendant's appeal in the First Circuit.

arbitrable claims). Moreover, as noted above, filing a motion to dismiss is not by itself sufficient to support a waiver of the right to arbitrate.

Nor is there a waiver because CCI pursued an appeal. Again, CCI principally raised the same uniquely U.S. legal issues of derivative sovereign immunity and preemption on appeal. *Posada v. Cultural Care, Inc.*, 66 F.4th 348, 350 (1st Cir. 2023). Asserting these issues in U.S. courts for decision, and appealing adverse rulings on them, is not a waiver of arbitration on the merits of issues arising from the Contracts, which are what the merits of Plaintiffs' claims will turn on. As it argued to the First Circuit, CCI had a good faith basis to believe that the issues relating to CCI's role with respect to the au pairs were inextricably intertwined with its sovereign immunity and preemption arguments. *See id.* at 363-64. The First Circuit ultimately disagreed, but that does not mean CCI's actions (which is what the waiver analysis focuses on) were inconsistent with an intent to arbitrate the merits of the claims. *See Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*, 2020 WL 620294, at *2, *8-9 (C.D. Cal. Jan. 9, 2020) (no waiver where defendant moved to dismiss, moved to disqualify counsel, opposed preliminary injunction, and pursued appeal of preliminary injunction, and thereafter asserted arbitral rights).[15]

There is also no basis for concluding that CCI's motion to compel arbitration is motivated by an improper purpose of delay following the Supreme Court's decision in *Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915 (2023). *Coinbase* held that a stay is mandatory in the event of an appeal under 9 U.S.C. § 16. *Id.* at 1919. This was *already* the majority rule in the Circuits and the prevailing view in this District, *before Coinbase. See Optum, Inc. v. Smith*, 353 F. Supp. 3d 127,

---

[15]    CCI's appeal was substantial. The First Circuit denied Plaintiffs' motion for summary disposition, requested amicus briefing from DOS and supplemental briefing from the parties, *see* 66 F.4th at 353, considered the appeal for over 12 months after oral argument, and affirmed the denial of derivative sovereign immunity on different grounds from this Court's ruling on the motion to dismiss. *See id.* at 363.

130-31 (D. Mass. 2019) (reviewing cases). Thus there is no basis to speculate that Defendant did not move earlier because it only decided to use this Motion to seek delay in light of *Coinbase*. In any event, Defendant's counsel held a meet-and-confer with Plaintiffs' counsel on June 22, 2023, *before* the Supreme Court's decision, concerning the same case as concerns au pairs in California, filed in California state court by the same counsel against CCI and another defendant. *See infra* sec. V. During the June 22, 2023 conferral, CCI's counsel informed Plaintiffs that CCI would be moving to compel arbitration in the California case, relying on the same arbitration agreement as is at issue here. *See* Wolkoff Decl., Dkt. 311, at ¶ 3. CCI is here invoking the same rights under the same arbitration agreements, which it is entitled to do.

Finally, because the 2023 Contracts did not exist before 2023, CCI could not have invoked them until this case returned to this Court from the First Circuit and the stay was lifted. CCI promptly did so in asserting a defense of arbitration in its Answer on July 7, 2023, and filing this Motion soon after. Accordingly, there is no waiver as to the 2023 Contracts, either.

## V.   THE COURT SHOULD STAY THE CASE AS TO THE ALLEGED CALIFORNIA CLASS IN FAVOR OF THE FIRST-FILED *KUDLACZ* ACTION

The Court should compel arbitration as to all named and opt-in Plaintiffs on all claims, and as to the alleged putative classes, except the California class. Dkt. 43, ¶ 84. The Court should stay further proceedings on that class in favor of first-filed parallel litigation in California state court, *Kudlacz et al. v. Cultural Care, Inc.* That case, brought five months before this one, involves two former au pairs sponsored by CCI asserting claims under the California PAGA statute on behalf of all others similarly situated in California. Wolkoff Decl. Ex. F, *Kudlacz* Compl. (May 27, 2020), Dkt. 311-6. Plaintiffs' counsel here also represent the *Kudlacz* plaintiffs, who allege identical wage and hour violations under the California labor code and other state and local laws as the predicate for their PAGA claims. *Compare* Wolkoff Decl. Ex. G, *Kudlacz* First Am. Compl. (June 11, 2021),

Dkt. 311-7, ¶¶ 29, 35, 36, 59, 60, 62, 63, 64, 67, *with* Dkt. 43 ¶¶ 87, 123, 131, 135, 148. CCI has moved to compel arbitration based on the same agreements at issue here, and a motion hearing is scheduled for October 18, 2023. Wolkoff Decl. Ex. H, *Kudlacz* Order (Aug. 2, 2023), Dkt. 311-8.

This Court has the "inherent" power to stay proceedings "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "A properly granted stay operates as an invaluable tool to conserve party and judicial resources, and to avoid inconsistent procedural and legal rulings." *Walsh Construction Co. P.R. v. United Surety & Indem. Co.*, 2015 WL 13548470, at *3 (D.P.R. 2015) (quotation marks omitted).

If this Court proceeds to decide any issue with respect to the alleged California class, there is a real prospect of inconsistent rulings on the same substantive wage claims that the class asserts in this case and in *Kudlacz*. There is also the prospect of inconsistent rulings on CCI's ability to compel arbitration under the Contracts at issue. Accordingly, this Court should stay any consideration of the claims of the alleged California class in favor of the litigation in *Kudlacz*.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant CCI respectfully requests that the Court (1) order all named and opt-in Plaintiffs to arbitrate their claims and dismiss this case as to them. *See* 9 U.S.C. § 206; *Next Step Med. Co.*, 619 F.3d at 71. Alternatively, this Court should (2) grant this Motion as to the named Plaintiffs, stay the case as to them (*see* 9 U.S.C. § 3), and dismiss the claims of the opt-in Plaintiffs without prejudice. *See Joseph*, 244 F. Supp. 3d at 475. (3) Next, this Court should compel arbitration as to the alleged sub-classes except the California class, as to which it should stay any proceedings until a final resolution of the *Kudlacz* litigation. (4) Finally, if not sent to arbitration, this Court should order that any consents by opt-in Plaintiffs who signed a 2023 Contract be stricken.

Dated:  August 18, 2023
Boston, Massachusetts

Respectfully submitted,

/s/ *Harvey J. Wolkoff*
Harvey J. Wolkoff (BBO# 532880)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Tel: 617-712-7100
harveywolkoff@quinnemanuel.com

*Attorney for Defendant Cultural Care, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document will be filed through the ECF System and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:  August 18, 2023

/s/ *Harvey J. Wolkoff*
Harvey J. Wolkoff