# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KAREN MORALES POSADA, AMANDA SARMENTO FERREIRA GUIMARAES, and WILLIANA ROCHA, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Action No. 1:20-cv-11862 |
| v. | |
| CULTURAL CARE, INC., a Massachusetts Corporation, | |
| Defendant. | |

# <u>OPPOSITION TO MOTION TO COMPEL ARBITRATION</u>

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................3

    **A.**    THE NEW YORK ARBITRATION CONVENTION DOES NOT ALTER THIS COURT'S ANALYSIS...................................................3

    **B.**    THE ARBITRATION REQUIREMENT DOES NOT INCLUDE ANY "CLEAR AND UNMISTAKABLE" DELEGATION OF QUESTIONS OF ARBITRABILITY...............................................................................4

    **C.**    CULTURAL CARE HAS WAIVED THE RIGHT TO COMPEL ARBITRATION. ...................................................................................5

    **D.**    EVEN IF CULTURAL CARE HAS NOT WAIVED THE RIGHT TO COMPEL ARBITRATION, IT IS NOT PARTY TO THE ARBITRATION PROVISION AND CANNOT ENFORCE IT..........................10

        1.    Questions of Non-Signatory Enforcement Cannot be Delegated. .............10

        2.    Under United States Law, Cultural Care May Not Compel Arbitration as a Non-Signatory.................................................................10

    **E.**    CULTURAL CARE'S SWISS VENUE PROVISION IS UNENFORCEABLE AND CANNOT BE SEVERED.......................................16

    **F.**    CULTURAL CARE HAS NOT MET ITS BURDEN OF ESTABLISHING THE EXISTENCE OF THE ARBITRATION AGREEMENT. ..............................................................................17

        1.    It is Cultural Care's Burden to Establish the Existence of the Arbitration Requirement. .....................................................................17

        2.    Cultural Care Fails to Meet it Burden with Respect to the Named Plaintiffs................................................................................18

        3.    Cultural Care Fails to Meet it Burden with Respect to the Opt-Ins...........19

CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

Page

## Cases

*Air-Con, Inc. v. Daikin Applied Latin Am.*, LLC, 21 F.4th 168 (1st Cir. 2021) .............. 17, 18, 19

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ........................................... 9

*Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7 (1st Cir. 2009) ...................................... 4

*Barrett v. United States*, 965 F.2d 1184 (1st Cir. 1992) ......................................... 20

*Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051 (10th Cir. 2018) ........................... 12

*Crean v. Morgan Stanley Smith Barney, LLC*, 2023 WL 363589 (D. Mass. Jan. 23, 2023)... 6, 18, 19, 20

*Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc*., 918 N.E.2d 36 (Mass. 2009)............... 11, 12

*Degidio v. Crazy Horse Saloon & Rest. Inc*, 880 F.3d 135 (4th Cir. 2018) .................................. 7

*Forby v. One Technologies, L.P.*, 909 F.3d 780 (5th Cir. 2018) ................................... 6

*FPE Foundation v. Cohen*, 801 F.3d 25 (1st Cir. 2015)............................................. 6

*Galen v. Redfin Corp.,* No. 14-CV-05229-TEH, 2015 WL 7734137 (N.D. Cal. Dec. 1, 2015) .... 4

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020)............................................................................................. 3

*Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286 (4th Cir. 2020) ..................................... 10

*Giron v. Subaru of Am., Inc.*, 2022 WL 17130869 (N.D. Ill. Nov. 21, 2022) ............................. 10

*Green Enterprises, LLC v. Hiscox Syndicates Ltd. at Lloyd's of London*, 68 F.4th 662 (1st Cir. 2023)............................................................................................... 3, 16

*Haasbroek v. Princess Cruise Lines, Ltd*., 286 F. Supp. 3d 1352 (S.D. Fla. 2017) .................... 15

*Harris v. Bakery, Confectionery & Tobacco Workers Int'l Union*, 861 F.2d 268 (9th Cir. 1988)15

*Harris v. McIntyre*, 2000 WL 942559 (Mass. Super. June 27, 2000) ......................... 15

*Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S. Ct. 524 (2019) ...................... 5

*Hogan v. SPAR Grp., Inc*., 914 F.3d 34 (1st Cir. 2019) ........................................ 12

*Hooper v. Advance America, Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917 (8th Cir.2009)....................................................................................................... 7

*Howard v. LVNV Funding, LLC*, 2020 WL 7130562 (W.D. Pa. Dec. 4, 2020) ........................... 7

*In re Checking Account Overdraft Litig*., 754 F.3d 1290 (11th Cir. 2014) ..................... 9

*In re Citigroup, Inc.*, 376 F.3d 23 (1st Cir. 2004)........................................................... 9

*In re Henson*, 869 F.3d 1052 (9th Cir. 2017)................................................................. 10

*Intl Paper Co. v. Schwabedissen Maschinen Anlagen GMBH*, 206 F.3d 411 (4th Cir. 2000) ..... 14

*Jones Motor Co. v. Chauffeurs, Teamsters & Helpers Loc. Union No. 633 of New Hampshire*,
     671 F.2d 38 (1st Cir. 1982)....................................................................................... 9

*Kudlacz v. Cultural Care, Inc.*, Slip. Op. (Super. Ct. Cal. Oct. 23, 2023).................................. 16

*Ledee v. Ceramiche Ragno*, 684 F.2d 184 (1st Cir. 1982)................................................. 3

*Machado v. System4 LLC*, 28 N.E.3d 401 (Mass. 2015)............................................. 13, 14

*Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1 (1st Cir. 2005)...................................... 5

*Medina Rodriguez v. Canovanas Plaza Rial Econo Rial, LLC*, 2019 WL 5448538 (D.P.R. Oct.
     23, 2019) ............................................................................................................. 20

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ...................... 3

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) .................................................. 6, 9, 14

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004).................................... 15, 16

*Ngo v. BMW of N. Am., LLC*, 23 F.4th 942 (9th Cir. 2022)........................................... 12

*Nino v. Jewelry Exch., Inc.*, 609 F.3d 191 (3d Cir. 2010) .......................................... 6

*Nitsch v. DreamWorks Animation SKG Inc.*, 100 F. Supp. 3d 851 (N.D. Cal. 2015) ................ 14

*Ouadani v. TF Final Mile LLC*, 876 F.3d 31 (1st Cir. 2017) ...................................... 11

*Pacelli v. Augustus Intel., Inc.*, 459 F. Supp. 597 (S.D.N.Y. 2020) ............................. 5

*Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1 (1st Cir. 2001) ....................... 20

*Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476 (5th Cir. 2009) ................. 7

*Photographic Illustrators Corp. v. Orgill, Inc.*, 953 F.3d 56 (1st Cir. 2020)........................ 18

*Posada v. Cultural Care, Inc.*, 66 F.4th 348 (1st Cir. 2023) ....................................... 8, 9

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010)..................................................... 4

*Restoration Pres. Masonry v. Grove Eur., Ltd.*, 325 F.3d 54 (1st Cir. 2003)...................... 6

*Santich v. VCG Holding Corp.*, 443 P.3d 62 (Colo. 2019)........................................... 15

*Shalaby v. Arctic Sand Techs., Inc.*, 2014 WL 7235830 (Mass. Super. Dec. 15, 2014)............... 6

*Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949 (N.D. Cal. 2012) ........................ 10

## Statutes

28 U.S.C. § 201, *et seq.*...............................................................................................1, 7

## Other Authorities

Fed. R. Evid. 1004 advisory committee's note to 1972 proposed rules.......................20

## Rules

Fed. R. Evid. 1004 ......................................................................................................19

Fed. R. Evid. 602 ........................................................................................................20

Fed. R. Evid. 901 ........................................................................................................18

## Treatises

Fed. Prac. & Proc. Civ. § 2727.1 (4th ed)....................................................................18

# INTRODUCTION

This case is about tens of thousands of foreign childcare workers who were brought into the United States by Defendant Cultural Care to perform sub-minimum wage childcare work across the country on J-1 *au pair* visas. *See generally* Second Am. Compl., ECF Doc. 43 ("Compl."). Plaintiffs allege, among other things, that Defendant Cultural Care, Inc., a Massachusetts-based *au pair* sponsor agency, profits off the exploitation of these workers: the company tells American families desperate for affordable childcare that in exchange for Cultural Care's high sponsor fees, those families can pay Cultural Care au pairs less than $200 per week, notwithstanding state and federal law to the contrary. *See* Compl. ¶¶ 16-83. Plaintiffs allege claims under state wage-and-hour and consumer protection laws and under the federal Fair Labor Standards Act ("FLSA"), 28 U.S.C. § 201, *et seq.* Indeed, 7,809 current and former Cultural Care childcare workers have already opted into the case to assert their FLSA claims. *See* Docket.

Now, more than three years after this case was filed; after remand from the First Circuit in which that Court rejected Cultural Care's efforts to fight off these claims on the merits; after notice has gone out to over 40,000 au pairs of their right to join this case to assert their FLSA claims; and after thousands of opt-in class members have joined the litigation, Cultural Care engages in another litigation tactic designed to prolong this case so it can continue to exploit workers and lie to the American families who pay the company's fees. Cultural Care asserts that purported arbitration requirements that Plaintiffs and some of the opt-in Plaintiffs may have signed in contracts with a *different* corporate entity, International Care, Ltd. ("ICL"), require Plaintiffs to pursue this case in arbitration in Switzerland under Swiss law. *See* ECF Doc. 309 ("Mot.").[1]

---

[1] This Opposition focuses on the arbitration requirement in the contracts between ICL and Named Plaintiffs. *See* ECF Docs. 310-1, 310-2, 310-3, 310-4 ("Arbitration Provision"). Cultural Care suggests that this is the contract and arbitration provision that all Cultural Care *au pairs* entered

The Court should reject Cultural Care's gamesmanship. **First**, Cultural Care has waived the right to compel arbitration in this case. It has sought, in this Court and in the First Circuit, a broad legal holding on the merits that would give judicial imprimatur to Cultural Care's business model. At every step along the way of this three-year plus litigation, even as thousands of opt-in Plaintiffs have joined this case, Cultural Care has exploited its legal arguments to delay this litigation, including by seeking a specious interlocutory review after this Court denied Cultural Care's motion to dismiss. Only after all these efforts failed, did Cultural Care attempt to use the purported arbitration provision in the ICL contracts to make this case go away. Having already invoked the judicial forum to seek victory in court and to delay justice, Cultural Care cannot now seek a second bite at the apple through a motion to compel arbitration.

**Second**, even if Cultural Care has not waived the right to compel arbitration, Cultural Care is not party to the arbitration requirement and cannot enforce it. The contract is between ICL and Plaintiffs. The language of the contract expressly forecloses the argument that Cultural Care is a third-party beneficiary, and under general principles of contract law, Plaintiffs are not equitably estopped from pursuing their claims in court. Even if Cultural Care could in theory invoke the contract between Plaintiffs and ICL as a matter of U.S. law, the contract would require Swiss law to apply, and Swiss law does not permit enforcement of contracts by nonsignatories, except in exceptionally narrow circumstances that do not apply here.

**Third**, even if Cultural Care could enforce the contract, it is unenforceable as a matter of

---

into through 2022. *See* ECF Doc. 310 at ¶ 6. Cultural Care also says that beginning in 2023, it began requiring Cultural Care *au pairs* to sign arbitration provisions with Cultural Care directly. *See* ECF Doc. 310 at ¶ 12. This new arbitration agreement does not apply to Plaintiffs' claims, and Cultural Care has not submitted 2023 agreements for specific opt-in class members. *See infra* at 19-20.

public policy because it prevents Plaintiffs from enforcing their rights in any forum.

 **Fourth,** even if Cultural Care could in theory enforce the arbitration provision, Cultural Care has not met its evidentiary burden of establishing its existence. Even if it has met its burden with respect to Named Plaintiffs, it has failed to produce sufficient evidence in support of its motion to compel opt-in Plaintiffs into arbitration.

## ARGUMENT

### A. The New York Arbitration Convention Does Not Alter This Court's Analysis.

 Cultural Care suggests that because Plaintiffs are foreign workers and the contracts at issue may be covered by the New York Arbitration Convention (the "Convention"), the Court has limited authority to review the arbitration requirement. *See* Mot. at 5 (citing *Ledee v. Ceramiche Ragno*, 684 F.2d 184 (1st Cir. 1982)).[2] Cultural Care ignores the Supreme Court's recent admonition in *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC* that the Convention does not displace background principles of contract law: "Article II(3) [of the Convention] states that it does not apply to agreements that are 'null and void, inoperative or incapable of being performed,' *but it fails to define those terms*." 140 S. Ct. 1637, 1645 (2020) (emphasis added). Courts must "rely on domestic law to fill the gaps; [the Convention] does not set out a comprehensive regime that displaces domestic law." *Id.*

 Therefore, after *GE Energy,* nothing about the Convention changes this Court's domestic law analysis of (1) whether Cultural Care has waived the right to compel arbitration, *infra* at 5-10,

---

[2] *Ledee's* suggesting that Article II(3) of the Convention requires enforcement of arbitration requirements covered by the Convention except in cases of "fraud, mistake, duress, and waiver," *id.* at 187, does not survive *GE Energy.* But *Ledee* had already been called into question by *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 105 (1985), where "the Supreme Court noted that 'public policy' could serve as the basis for 'condemning' an arbitration agreement covered by the Convention." *Green Enterprises, LLC v. Hiscox Syndicates Ltd. at Lloyd's of London*, 68 F.4th 662, 676 (1st Cir. 2023).

(2) whether Cultural Care may enforce the arbitration provision as a nonsignatory, *infra* at 10-16, (3) whether the arbitration provision is unenforceable, *infra* at 16-17, or (4) whether Cultural Care has met its evidentiary burden on this motion*, infra* at 17-20.

**B.     The Arbitration Requirement Does Not Include any "Clear and Unmistakable" Delegation of Questions of Arbitrability.**

Questions regarding Cultural Care's ability to enforce the arbitration provision and the enforceability of the provision are questions for the Court to decide. Even if those questions could be delegated to an arbitrator—and questions of waiver and nonsignatory enforcement cannot be, *see infra* at 5-16—Cultural Care points to no "clear and unmistakable" delegation provision here.

As the Supreme Court has made clear, "ordinarily" questions about whether an arbitration requirement is enforceable are for the court and not the arbitrator to decide. This rule is "based on an assumption about the parties' expectations"—the fact that most individuals would assume a court would be the one to decide if an arbitration clause was enforceable. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 n.1 (2010) (internal quotation marks omitted). The Court recognized one narrow exception to this principle: if an arbitration clause "clearly and unmistakably delegates" to the arbitrator the issue of whether the arbitration clause is valid, and the delegation clause is itself enforceable, then questions of arbitrability are for the arbitrator. *Id.* at 69-70 (clear and unmistakable standard is "a type of 'revers[e] presumption'—one in favor of a judicial, rather than an arbitral, forum.").

Merely providing that the "arbitrational tribunals of Switzerland" will resolve a dispute is not nearly enough to "clearly and unmistakably" delegate questions of arbitrability to the arbitrator. This is not a case where the signatories to an arbitration requirement are sophisticated commercial parties and where the arbitration requirement expressly identifies an arbitral forum and references a clear set of arbitral rules. *See, e.g.*, *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7,

11 (1st Cir. 2009); *Galen v. Redfin Corp.,* No. 14-CV-05229-TEH, 2015 WL 7734137, at *7 (N.D. Cal. Dec. 1, 2015). Here, the workers being asked to sign the arbitration requirements are necessarily foreign workers, and the arbitration requirement itself does not expressly incorporate *any* arbitral rules or even any specific arbitration provider. Rather, Cultural Care suggests that foreign workers entering into these contracts can be expected to read an arbitration requirement purporting to require arbitration in Switzerland, pull open Westlaw to ascertain which arbitration providers operate in Switzerland, *see* ECF Doc. 311-1 (Westlaw article submitted by Cultural Care), guess that one of the "main arbitration institutions" used in Switzerland would be used in their case, *id.* at 4, and then separately research those institutions' rules, ECF Docs. 311-2, 311-3. Questions of arbitrability are for the Court unless there is "clear and unmistakable" evidence to the contrary. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). No such delegation exists here.

## C.    Cultural Care Has Waived the Right to Compel Arbitration.

Whether a party has waived its right to compel arbitration based on litigation conduct is a question for the Court to decide. *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 12 (1st Cir. 2005). Furthermore, Cultural Care has pointed to nothing suggesting that even if there is a valid delegation provision, that provision delegates questions of litigation-conduct waiver to the arbitrator. *Pacelli v. Augustus Intel., Inc.*, 459 F. Supp. 3d 597, 615 (S.D.N.Y. 2020). Finally, even if the arbitration provision does include a delegation provision that covers questions of litigation-conduct waiver, for the same reasons that Cultural Care has waived its right to enforce the arbitration requirement, it has waived its right to enforce the purported delegation provision.

Courts in this Circuit examine a list of non-exclusive factors in determining whether a party has waived its right to arbitrate through litigation conduct. Those factors include:

(1) whether the parties participated in a lawsuit or took other action inconsistent with

arbitration; (2) whether the "litigation machinery has been substantially invoked and the parties [are] well into preparation of a lawsuit by the time an intention to arbitrate [is] communicated"; (3) "whether there has been a long delay" and trial is near at hand; (4) whether the party seeking to compel arbitration has "invoked the jurisdiction of the court by filing a counterclaim"; and (5) whether discovery not available in arbitration has occurred….

*FPE Foundation v. Cohen*, 801 F.3d 25, 29 (1st Cir. 2015) (quoting *Restoration Pres. Masonry v. Grove Eur., Ltd.*, 325 F.3d 54, 60-61 (1st Cir. 2003)). After the Supreme Court's decision in *Morgan v. Sundance, Inc.*, courts consider these five factors "without considering the FAA's policy favoring arbitration." *Crean v. Morgan Stanley Smith Barney, LLC*, 2023 WL 363589, at *8 (D. Mass. Jan. 23, 2023) (citing 596 U.S. 411, 418 (2022)).

The Court need not pause long on the analysis. Cultural Care has participated in this litigation for three years and substantially invoked the machinery of litigation in doing so. It has sought from this Court and the First Circuit broad legal holdings on the *Yearsley* defense, preemption, and Cultural Care's employer status, among other things, that would have given a judicial imprimatur to Cultural Care's conduct. And, without ever raising arbitration, it opposed Plaintiffs' motion for conditional certification under the Fair Labor Standards Act. Having lost in these efforts, and after thousands of au pairs have opted-in to this case, it cannot now use the purported ICL arbitration requirements as its insurance policy.

Courts across the country have repeatedly found waiver in contexts where the party seeking to compel arbitration has sought a total victory in court before turning to arbitration as its backup plan. *See, e.g.*, *Forby v. One Technologies, L.P.*, 909 F.3d 780, 784 (5th Cir. 2018) (waiver because of defendant's "full-throated attempt to win this case on the merits in federal court"). Such conduct is "inconsistent[] with the right to arbitrate." *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 209 (3d Cir. 2010) (internal quotation and citation omitted). Cultural Care "made a deliberate choice to seek 'an immediate and total victory in the parties' dispute" in [this] Court, and 'to see how the

case was going in. . . court before deciding whether it would be better off there or in arbitration.'"
*Shalaby v. Arctic Sand Techs., Inc.*, 2014 WL 7235830, at *5 (Mass. Super. Dec. 15, 2014)
(quoting *Hooper v. Advance America, Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917, 922
(8th Cir.2009)). Cultural Care engaged in "litigation activity aimed at obtaining a favorable ruling
on the merits of the case." *Degidio v. Crazy Horse Saloon & Rest. Inc*, 880 F.3d 135, 141 (4th Cir.
2018). Now that this Court, and the First Circuit, have proven "not receptive to its arguments,"
Cultural Care should not "be allowed a second bite at the apple through arbitration." *Petroleum
Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 482 (5th Cir. 2009); *see also Howard v.
LVNV Funding, LLC*, 2020 WL 7130562, at *9 (W.D. Pa. Dec. 4, 2020). To countenance this
conduct would enable Cultural Care to "use[] arbitration as an insurance policy in an attempt to
give itself a second opportunity to evade liability." *Degidio*, 880 F.3d at 141.

Moreover, this is not a case where the party seeking to compel arbitration has merely
moved to dismiss. Cultural Care has substantially invoked the machinery of litigation in the course
of seeking a complete victory on the merits. Plaintiffs filed this case more than three years ago.
ECF No. 1. Cultural Care filed its motion to dismiss Plaintiffs' second amended complaint on
December 24, 2020. In that motion, in addition to arguing that Plaintiffs had not alleged facts
sufficient to state a claim on various grounds, Cultural Care argued that "Plaintiffs' claims are *all
foreclosed* by the doctrine of derivative sovereign immunity." ECF No. 67 at 18 (emphasis added).
In addition, Cultural Care asserted that Plaintiffs' state law claims were preempted "under the
doctrines of field and conflict preemption." *Id.* at 22. Cultural Care also made merits arguments
for dismissal, including that the conduct alleged is not sufficient for it to be an "employer" under
state or federal law, *id.* at 28, and not sufficient to bring a deceptive trade practices claims, *id.* at
29.

Cultural Care also opposed Plaintiffs' motion to certify a collective action under 29 U.S.C. § 216(b). Not only did Cultural Care not mention arbitration in its opposition to that motion, *see* ECF Doc. 112, but it also moved to strike opt-ins filed before certification on various spurious grounds, none of which involved purported arbitration requirements, ECF Doc. 115. Meanwhile, while Cultural Care's meritless motion and subsequent appeal were pending, thousands of au pairs filed consents to join this case. At no point did Cultural Care identify for them that they were purportedly bound by arbitration requirements. And when this Court ordered notice to 42,299 absent class members, *see* Helland Decl. ¶ 3, Cultural Care also did not raise arbitration, instead allowing Plaintiffs to incur the expense of transmitting notice to tens of thousands of workers spread across the world. *See* ECF Doc. 263.

After this Court largely denied Cultural Care's motion to dismiss, Cultural Care sought interlocutory appeal on the shaky ground that the collateral order doctrine gave the First Circuit jurisdiction to hear its interlocutory appeal, not just regarding its *Yearsley* defense but also its preemption and joint employer arguments. *See Posada v. Cultural Care, Inc.*, 66 F.4th 348, 350 (1st Cir. 2023). That litigation tactic allowed Cultural Care to continue to seek the potential upside of a broad win in court, when it knew that at worst it had bought itself years of delay. Now, after all that, it seeks to invoke arbitration provisions it could have raised all along.

Cultural Care suggests it did not waive its right to move to compel arbitration because its motion to dismiss raised primarily *Yearsely* and preemption arguments, which are "uniquely U.S. law issues" that are "not within the scope of the arbitration clause." Mot. at 17. As an initial matter, it is not at all clear why Cultural Care believes it would have any less right to assert those arguments in arbitration than Plaintiffs will have a right to assert their federal and state wage-and-hour and fraud claims in arbitration, claims that Cultural Care reassures the Court can be fairly heard by a

Swiss arbitrator. *See* Mot. at 9. Furthermore, Cultural Care moved to dismiss on other grounds, including joint employer status and failure to state a deceptive trade practice claim, and sought to appeal this Court's denial of its motion to dismiss on those grounds as well. *See, e.g.*, *Posada*, 66 F.4th at 363.

In addition, although trial may not be "near at hand," Cultural Care's tactics have accomplished a three-year delay in these proceedings. This factor too weighs in favor of waiver. *See In re Citigroup, Inc.*, 376 F.3d 23, 27 (1st Cir. 2004) (delay of more than three years after filing of complaint supported finding of waiver); *Jones Motor Co. v. Chauffeurs, Teamsters & Helpers Loc. Union No. 633 of New Hampshire*, 671 F.2d 38, 43 (1st Cir. 1982) (finding waiver after eleven months of litigation).

Finally, although post-*Morgan*, 596 U.S. 411 (2022), Plaintiffs need not establish prejudice, the prejudice to Plaintiffs by Cultural Care's delay is relevant to the analysis because it highlights how Cultural Care's has exploited delay for its strategic advantage. Not only has Cultural Care caused Plaintiffs to expend substantial resources on this case while Cultural Care has sought a broad win in court, Cultural Care has also gained advantages as a consequence of the delay itself. First, it has used the time to revamp its contracts and enter into arbitration agreements directly with its au pairs. *See* ECF No. 312 at 3-4. Second, at this stage, years after the case was filed, members of the FLSA collective and putative state law classes have dispersed around the world. With each month that passes due to Cultural Care's tactical delays, these workers become harder to find and their memories fade. According to the United States Supreme Court, arbitration is supposed to be a speedy and efficient form of dispute resolution. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011). But here, Cultural Care seeks to use arbitration as a strategic ploy to further delay litigation on the merits. *In re Checking Account Overdraft Litig.*,

754 F.3d 1290, 1296 (11th Cir. 2014) ("By slowing the process and magnifying its costs, KeyBank's delay undermined the purpose of the Federal Arbitration Act's 'liberal policy favoring arbitration agreements.'" (internal citations omitted)). The Court should not permit these efforts.

**D.      Even if Cultural Care Has Not Waived the Right to Compel Arbitration, It is Not Party to the Arbitration Provision and Cannot Enforce It.**

      1.      <u>Questions of Non-Signatory Enforcement Cannot be Delegated.</u>

Whether a nonsignatory has a right to enforce an arbitration requirement that contains a purported delegation clause is analogous to the question of whether the parties have entered into an arbitration agreement. That question is always for the court. *Giron v. Subaru of Am., Inc.*, 2022 WL 17130869, at *4 (N.D. Ill. Nov. 21, 2022), Furthermore, even if nonsignatory enforcement questions could be delegated to the arbitrator, and even if there were a "clear and unmistakable" delegation provision here, which there is not, *see supra* at 4-5, Cultural Care would still need to establish its right to enforce the *delegation provision* as a nonsignatory. For the same reasons that Cultural Care cannot enforce the arbitration requirement as a nonsignatory, it cannot enforce any purported delegation provision contained within that arbitration requirement. *Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286, 291 (4th Cir. 2020) ("We note that in specifically challenging a delegation clause, a party may rely on the same arguments that it employs to contest the enforceability of other arbitration agreement provisions." (alterations omitted)); *Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949, 954 (N.D. Cal. 2012).

      2.      <u>Under United States Law, Cultural Care May Not Compel Arbitration as a Non-Signatory.</u>

Swiss law, designated in the arbitration clause's choice of law provision, on its own disposes of Cultural Care's nonsignatory arguments. *See infra* at 15-16. Cultural Care, however, cannot even trigger application of the agreement's choice of law provision without first establishing that "traditional principles" of common law, either embodied in Massachusetts law or

federal common law, allow it to invoke the contract that contains the arbitration provision *and* the choice of law provision. Mot. at 11 n.10; *In re Henson*, 869 F.3d 1052, 1059 (9th Cir. 2017) ("A choice-of-law clause, like an arbitration clause, is a contractual right and generally may not be invoked by one who is not a party to the contract in which it appears." (quotation and citation omitted)). Here, the Court need not even reach the question of whether Cultural Care has a right under Swiss law to enforce the arbitration clause because, as a threshold matter, Cultural Care cannot enforce, under U.S. law, the contract containing the arbitration and choice of law provisions.

(a)   *Cultural Care May Not Compel Arbitration as a Third-Party Beneficiary.*

The express language of the arbitration requirement and the contract including it forecloses Cultural Care's third-party beneficiary status. Moreover, the contract between ICL and Cultural Care is emphatic that "[e]ither party has no right or authority to incur, assume or create … any warranty, liability, or other obligation of any kind … in the name of or on behalf of the other party…."  Hood Decl., Ex. 2 to Ex. 1 at 7. The First Circuit has cautioned that "the third-party beneficiary theory should be approached with care because the law requires special clarity to support a finding that the contracting parties intended to confer a benefit on a third party." *Ouadani v. TF Final Mile LLC*, 876 F.3d 31, 39 (1st Cir. 2017) (internal quotation marks omitted). "[A] mere benefit to the nonsignatory resulting from a signatory's exercise of its contractual rights is not enough." *Id.*  Under Massachusetts law, "a contract does not confer third-party beneficiary status unless the language and circumstances of the contract show that the parties to the contract clearly and definitely intended the beneficiary to benefit from the promised performance." *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 44 (Mass. 2009).

Cultural Care cannot point to anything in the contract that suggests the parties intended the

11

arbitration requirement to benefit Cultural Care as opposed to ICL. The contract provides that it is between ICL—even specifying ICL's corporate registration number within Switzerland—and "the undersigned au pair." The arbitration requirement expressly provides that it covers claims that "arise[] between the *parties*," and that the "*parties* submit to the exclusive jurisdiction and venue of the arbitrational tribunals of Switzerland." Arbitration Provision at ¶ 15 (emphasis added). This clear language limiting the scope of the arbitration to claims between the parties and suggesting that only the parties agree to be bound by arbitration should end the matter. *See, e.g., Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 947 (9th Cir. 2022) ("Language limiting the right to compel arbitration to a specific buyer and a specific dealership (and its assignees) means that extraneous third parties may not compel arbitration."); *Hogan v. SPAR Grp., Inc*., 914 F.3d 34, 40 (1st Cir. 2019) ("SBS could have easily modified the arbitration clause to make it applicable to '[a]ny dispute between the Parties [and/or any SBS customer] relating to this Master Agreement,' but it did not."); *Cavlovic v. J.C. Penney Corp., Inc*., 884 F.3d 1051, 1058 (10th Cir. 2018).

In case there is any doubt, additional language in the agreement expressly denies third parties any role in dispute resolution. Paragraph 13 provides that "[t]his agreement is made between me and CC," which the agreement uses to refer to ICL, and specifies that "[a]ny disputes will be settled between me and CC or any legal entity bound to represent us and *no other third party*." *Id.* (emphasis added); *see also Cumis Ins. Soc., Inc*., 918 N.E.2d at 42.

Finally, Cultural Care cannot avoid this conclusion by conflating the distinction between it and ICL. Those two entities have gone out of their way to distinguish themselves. In fact, a Manager for ICL submitted a declaration in California State Court stating emphasizing the separateness of the two companies. Hood Decl., Ex. 1 ¶¶ 23-27. And the contract between ICL and Cultural Care, attached to that declaration, emphasized that "[n]othing contained in this Agreement

12

shall be construed to constitute ICL or [Cultural Care] as a partner or agent of the other." *Id.*, Ex. 2 to Ex. 1 at 7. Cultural Care cannot now benefit from the arbitration provisions under the third-party beneficiary theory by suggesting that it is in fact the same as ICL.

     (b)    *Plaintiffs Are Not Equitably Estopped from Pursuing Their Claims in Court.*

The doctrine of equitable estoppel also does not permit Cultural Care to enforce the arbitration requirement. In *Machado v. System4 LLC*, 28 N.E.3d 401 (Mass. 2015), the Massachusetts Supreme Judicial Court addressed the scope of equitable estoppel doctrine in the specific context of agreements to arbitrate. *Machado* rooted its analysis in federal appellate court decisions addressing the issue. *Id.* at 409. Under *Machado*, a non-signatory may compel arbitration under the equitable estoppel doctrine only when the signatory (1) "must rely on the terms of the written agreement in asserting its claims against the nonsignatory" or (2) when a signatory "raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* (internal quotation marks omitted).

Cultural Care argues that the first element of the equitable estoppel test is satisfied here. Mot. at 12-13. But in *Machado*, the plaintiffs asserted "multiple claims that ar[ose] out of and relate[d] directly to terms within the franchise agreements containing the arbitration clause" and challenged the terms of those franchise agreements as unconscionable. *Machado*, 28 N.E.3d at 410. None of Plaintiffs' claims here relate to the contract between ICL and Plaintiffs that Cultural Care has produced in support of the motion to compel arbitration. Plaintiffs' claims do not challenge the terms of the contract, and to the extent that Plaintiffs' claims call upon a fact-finder to "compare the rights and responsibilities assigned to the plaintiffs in the franchise agreements to the elements of employee status," *id.*, those rights and responsibilities should be ascertained based on documents maintained by Cultural Care (not ICL) and communications between Cultural Care

(not ICL) and Plaintiffs and Cultural Care (not ICL) and host families. *See* Compl. ¶¶ 19-25. The contract between ICL and Plaintiffs is irrelevant to the analysis. The purpose of this prong of the equitable estoppel doctrine in the arbitration context is to avoid the inequity that would follow from allowing plaintiffs on the one hand to *rely* on a contract containing an arbitration requirement to assert their claims in court and on the other hand sidestepping their obligations under the arbitration requirement in that same contract. *See, e.g.*, *Nitsch v. DreamWorks Animation SKG Inc.*, 100 F. Supp. 3d 851, 868 (N.D. Cal. 2015). But Plaintiffs' claims do not rely in any way on the terms of their purported contract with ICL.

Even if the Court concludes, under the *Machado* standard, that Plaintiffs are equitably estopped from asserting their claims against Cultural Care in court, the Court should still reject Cultural Care's equitable estoppel arguments because neither *Machado* nor any of the federal law upon which it is based survives the United States Supreme Court's analysis in *Morgan*, 596 U.S. 411. *Morgan* reinforces that, under the Federal Arbitration Act, "a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation." *Id.* at 418.

*Machado* does precisely this. It adopts an arbitration-specific equitable estoppel standard rooted in federal appellate court decisions that had done the same. *Id.* at 408-09. It also explains that in the course of conducting its equitable estoppel analysis courts must give "due regard" for the purported "liberal federal policy in favor of arbitration." *Machado*, 28 N.E.3d at 416 (internal quotation marks omitted); *see also, e.g.*, *Intl Paper Co. v. Schwabedissen Maschinen Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000). But this consideration does not come into play when applying traditional principles of contract law. The "federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan*, 596 U.S. at 417.

14

Instead of relying on an arbitration-specific equitable estoppel doctrine rooted in improper arbitration-specific considerations, the Court must, consistent with *Morgan*, apply traditional and generally applicable equitable estoppel doctrine. Courts revisiting arbitration-specific equitable estoppel doctrine in light of the mandate that arbitration contracts be treated the same as other contracts have reminded that equitable estoppel has always been narrow and always required "detrimental reliance on the words or actions of the party against whom estoppel is sought." *Santich v. VCG Holding Corp.*, 443 P.3d 62, 63-64 (Colo. 2019). Detrimental reliance is a blackletter element of the federal common law of equitable estoppel, *see, e.g.*, *Harris v. Bakery, Confectionery & Tobacco Workers Int'l Union*, 861 F.2d 268 (9th Cir. 1988), and Massachusetts law, *see, e.g.*, *Harris v. McIntyre*, 2000 WL 942559, at *12 (Mass. Super. June 27, 2000). It is a necessary part of the analysis here too. Because Cultural Care has not and cannot suggest that it has detrimentally relied on Plaintiffs' purported agreement to arbitrate disputes with ICL, it cannot establish that Plaintiffs are equitably estopped from asserting their claims here.

(c)     *In the Alternative, Swiss Law Expressly Forecloses Cultural Care's Arguments.*

Even if Cultural Care could in theory enforce the arbitration requirement under U.S. law, its arguments should ultimately be rejected under Swiss law. If Cultural Care can bring the contract here into play based on U.S. nonsignatory enforcement doctrine, then the contract's choice of law provision swings into play too. *See, e.g.*, *Haasbroek v. Princess Cruise Lines, Ltd.*, 286 F. Supp. 3d 1352, 1361 (S.D. Fla. 2017). If Cultural Care "wish[es] to invoke the arbitration clauses in the agreements at issue, [it] must also accept the Swiss choice-of-law clauses that govern those agreements." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 51 (2d Cir. 2004).

It is enough to deny Cultural Care's motion that it has not identified why Swiss law would allow it to compel arbitration as a nonsignatory. *See Haasbroek*, 286 F. Supp. 3d at 1361. But even

if the Court considers Swiss law, it should deny the motion. *Motorola*, 388 F.3d at 51. ("[U]nder Swiss law, which governs the agreements at issue, defendants, as nonsignatories, have no right to invoke those agreements."). Swiss law is abundantly clear that a nonsignatory may only enforce a contract as a third-party beneficiary if the contract, among other things, specifically identifies the third party and spells out its "independent right to claim performance under the contract." *See* Baier Decl. ¶¶ 9-15. Additionally, Swiss law does not recognize the doctrine of equitable estoppel as a basis for nonsignatory enforcement. *Id.* ¶ 16; *see Motorola*, 388 F.3d at 51.

**E.    Cultural Care's Swiss Venue Provision is Unenforceable and Cannot be Severed.**

Even if Cultural Care had not waived the right to compel arbitration and could enforce the arbitration requirement as a nonsignatory, the arbitration requirement is unenforceable. Courts may deny enforcement of arbitration agreements, even those covered by the Convention, if the party whose claims are sought to be compelled into arbitration cannot effectively enforce their rights in the arbitral forum. *See Green Enterprises*, 68 F.4th at 676 (describing case law supporting conclusion that even under the Convention, agreements may be unenforceable if they are "incapable of being performed on policy grounds" (internal quotation marks omitted)). This makes sense. The Convention does not allow employers of migrant workers to insulate themselves from liability by subjecting those workers to arbitration provisions requiring arbitration halfway around the globe in fora that those workers could never meaningfully access.

Together with the cost-splitting requirements of Swiss arbitration, *see* Baier Decl. ¶ 23, the requirement that Plaintiffs arbitrate in Switzerland makes it impossible for Plaintiffs to assert their claims, including their federal FLSA claims. As a California court recently explained in deeming the Swiss forum in this same arbitration requirement unenforceable, under the arbitration provision "Plaintiffs must choose to incur significant expenses to pursue their claims in an unreasonable forum or forgo bringing their claims while Defendants—who have more resources—will be at an

16

advantage." *See Kudlacz v. Cultural Care, Inc.*, Slip. Op. at 15 (Super. Ct. Cal. Oct. 23, 2023), (attached to Hood Decl. as Ex. 2). Because Plaintiffs would have to go to Switzerland and expend significant resources even to participate in an initial arbitration regarding arbitrability, any purported delegation provision applicable to the arbitration requirement is also unenforceable.

The *Kudlacz* court[3] was correct in arriving at this conclusion, but it erred in deciding to rewrite the arbitration requirement to make it enforceable. *Id.* That is because the arbitration provision specifically states that "no alterations to the terms of this agreement will be valid unless approved" by ICL and instructs that "[i]f any provision of this agreement shall be deemed unenforceable, such paragraph shall be omitted and the remained of the agreement shall be valid and enforceable…." Arbitration Provision at ¶ 16. Because provisions of the arbitration requirement are unenforceable, the entire paragraph 15 should be stricken and Cultural Care's motion denied.

**F.    Cultural Care Has Not Met Its Burden of Establishing the Existence of the Arbitration Agreement.**

Even if Cultural Care could in theory enforce the arbitration provision, there is also a preliminary question of whether Cultural Care has met its burden to demonstrate the existence of arbitration agreements in the first instance. It has not.

1.   It is Cultural Care's Burden to Establish the Existence of the Arbitration Requirement.

The burden of proving the existence of a valid arbitration agreement is on Cultural Care, the party seeking to enforce the agreement. *Air-Con, Inc. v. Daikin Applied Latin Am.*, LLC, 21

---

[3] Cultural Care also argues that there is overlap between the claims in *Kudlacz* and the claims here, and that therefore, at a minimum, the California claims here should be stayed pending the *Kudlacz* arbitration because *Kudlacz* was first filed. That is not true. *Kudlacz **only*** includes representative California Private Attorneys General Act claims. There are no class action claims in *Kudlacz* and the substantive California wage and hour claims implicated here are not implicated in *Kudlacz*.

F.4th 168, 176 (1st Cir. 2021). It is not Plaintiffs' obligation to prove the absence of an arbitration agreement. *See id.* ("Thus, the relevant issue *was not* whether [the non-moving party] 'failed to show' the absence of an agreement." (emphasis added)). Whether an arbitration agreement exists is assessed on a summary judgment standard, and the question is always one for the Court. *Id.* at 174; *see Crean*, 2023 WL 363589, at *1 (describing application of the summary judgment standard to a motion to compel arbitration). "Pursuant to the summary judgment standard, the court must construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Air-Con*, 21 F.4th at 175.

Cultural Care's entire evidentiary showing is composed of (1) a declaration of a Cultural Care employee with no personal knowledge of ICL's business practices, *see* ECF Doc. 310, and (2) purported agreements signed by the named Plaintiffs, *see* ECF Docs. 310-1 to 310-4. This evidence is insufficient for Cultural Care to meet its initial burden of production on a summary judgment standard as the moving party with respect to the named Plaintiffs and the thousands of FLSA opt-ins in this case. Fed. Prac. & Proc. Civ. § 2727.1 (4th ed) (requiring evidence supporting each element); *Photographic Illustrators Corp. v. Orgill, Inc.*, 953 F.3d 56, 65 (1st Cir. 2020) (same).

### 2.   Cultural Care Fails to Meet it Burden with Respect to the Named Plaintiffs

As an initial matter, Cultural Care has failed to meet its evidentiary burden even with respect to the Named Plaintiffs. While Cultural Care purports to produce signed agreements for each Named Plaintiff, *see* Docs. 310-1 to 310-4, Cultural Care fails to meet its initial burden of authenticating these documents or the signatures of the named Plaintiffs. *See Air-Con,* 21 F.4th at 176l; Fed. R. Evid. 901. There is no evidence that Cultural Care stored these documents, no explanation for how Cultural Care came in possession of these documents, and no explanation for how Cultural Care knows these documents are what Cultural Care asserts they are. When Cultural

18

Care's declarant was pressed on how she knew the named Plaintiffs signed these documents, she

simply stated she had no reason not to believe it:

> Q. How do you know Ms. Morales Posada signed this agreement?
> MS. SOFIS:  Objection; asked and answered.
> A.   So we talked about that earlier today.  And what I can see here is that there's a -- what appears to me to be a handwritten execution of this agreement where in the same writing we see one, two, three, four times that her name is written. *I was not witness to her live signature of this, but I have no reason to believe this is not hers, and at no time have I received any word or concern from Ms. Morales Posada that this was not her actual signature and that she did not execute this agreement.*
> Q.   And you cannot describe the process by which Ms. Morales Posada would have signed this agreement?
> MS. SOFIS:  Objection.
> A. I cannot speak to the exact mechanics of that process, no.

Hood Decl., Ex. 3, Jordan Dep. at 106:4 to 106:22 (emphasis added). This is plainly not enough.

### 3.   Cultural Care Fails to Meet it Burden with Respect to the Opt-Ins

But even if Cultural Care had established sufficient evidence of the arbitration

requirements to compel arbitration of Named Plaintiffs' claims, it has failed to meet its burden

with respect to FLSA opt-ins. There are currently 7,809 FLSA opt-ins in this matter. *See* Docket.

Cultural Care fails to provide the Court with arbitration agreements for any of these opt-ins.[4] That

alone is sufficient to deny the motion with respect to the opt-ins. While it is true that secondary

evidence of purported agreements for opt-ins could be permitted, *see* Fed. R. Evid. 1004, that is

---

[4] After filing its Motion, Cultural Care produced a litany of purported agreements for other au pairs to Plaintiffs. The production was a disorganized mishmash of seemingly random file names and file types. It is unclear to Plaintiffs if Cultural Care is asserting that the opt-ins are included in this production. Moreover, Cultural Care produced fewer contracts than there were potential opt-in class members, meaning that even if the agreements are authentic, Cultural Care has likely not produced arbitration agreements for at least some opt-in Plaintiffs. *See* Helland Decl. ¶¶ 2-10. Again, it is not Plaintiffs' burden to prove the negative; to weed through this production to determine if purported arbitration agreements are missing. *Air-Con,* 21 F.4th at 176. Similarly, this disorganized production to Plaintiffs is not the same as producing agreements for opt-ins to the Court and cannot meet Cultural Care's burden to establish valid and enforceable arbitration agreements to the Court. *See id.*

only allowed "if [the] failure to produce the original is satisfactorily explained," *Crean*, 2023 WL 363589, at *6 (quoting *Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 9 (1st Cir. 2001)); *see* Fed. R. Evid. 1004 advisory committee's note to 1972 proposed rules ("[I]f failure to produce the original is satisfactorily explained, secondary evidence is admissible."). Nowhere does Cultural Care explain its failure to provide the opt-in agreements to the Court.

And even if Cultural Care had explained the missing opt-in agreements to the Court, it still cannot meet its burden because it has not produced sufficient secondary evidence to establish that the opt-in class members have entered into agreements to arbitrate. Fed. R. Evid. 602 (witness needs "personal knowledge of the matter"); *Barrett v. United States*, 965 F.2d 1184, 1195 (1st Cir. 1992) ("These affidavits present no foundational facts as to the affiants' personal knowledge."). Cultural Care's declarant is a Cultural Care employee. Doc. 310 ¶ 1. But Cultural Care is not a party to the agreements, and the declarant provides no basis for knowing if and how ICL entered into these agreements. *Crean*, 2023 WL 363589, at *6. In a deposition, the declarant was pressed on the process for signing the purported agreements and she repeatedly stated that she did not know. Hood Decl., Ex. 3, Jordan Dep. at 51:18 to 51:25 ("I don't know that process."). *Id.* at 100:2 to 100:8 ("I can't tell you the mechanics of that process"); *see also id.* at 101:19 to 102:13 (witness unaware of the process for signing post-2023 agreements), 110:2 to 110:6 (same). Because the declaration is not supported by personal knowledge it should be disregarded. *Medina Rodriguez v. Canovanas Plaza Rial Econo Rial, LLC*, 2019 WL 5448538, at *3 (D.P.R. Oct. 23, 2019). Without the declaration, Cultural Care is left with no evidence to meet its burden with respect to opt-in Plaintiffs. Even if the Court compels Named Plaintiffs into arbitration, it should allow this case to proceed with opt-in Plaintiffs substituted as class representatives.

## CONCLUSION

For the forgoing reasons, the Motion should be denied.

Respectfully submitted,

*/s/Matthew C. Helland*
MATTHEW C. HELLAND
NICHOLS KASTER, LLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104

H. CLARA COLEMAN
NICHOLS KASTER, PLLP
4700 IDS Center, 80 S. 8th St.
Minneapolis, MN 55402

DAVID H. SELIGMAN
ALEXANDER N. Ex
TOWARDS JUSTICE
PO Box 371680
PMB 44465
Denver, Colorado 80237-5680
Ph: (720) 441-2236
David@TowardsJustice.org
Alex@TowardsJustice.org

PETER RUKIN
RUKIN HYLAND & RIGGIN LLP
1939 Harrison Street, Suite 290
Oakland, CA 94612

Counsel for Plaintiffs and Opt-in Plaintiffs

**CERTIFICATE OF SERVICE**

I certify that on this date, a copy of the foregoing document was served on all counsel of record through the Court's CM/ECF notification system.

Dated: November 7, 2023                                   /s/*Matthew C. Helland*
                                                          Matthew C. Helland
                                                          Counsel for Plaintiffs and Opt-in Plaintiffs