# Exhibit B

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 613

| | |
|---|---|
| KATARZYNA KUDLACZ and NATALIA BIEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CULTURAL CARE, INC., a Massachusetts Corporation; INTERNATIONAL CARE LIMITED, a Swiss Corporation; and DOES 1 through 25 inclusive,<br><br>Defendants. | Case No. CGC-20-584567<br><br>ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION |

## **INTRODUCTION**

This matter came on regularly for hearing on October 18, 2023, in Department 613, the Honorable Andrew Y.S. Cheng, presiding. Peter Rukin (Rukin Hyland & Riggin LLP) and Matthew C. Helland (Nichols Kaster, LLP) appeared in person for Plaintiffs Katarzyna Kudlacz and Natalia Bien. Alex Del Nido (Quinn Emanuel Urquhart & Sullivan, LLP) appeared via CourtCall for Defendants Cultural Care Inc. Caroline McIntyre (Bergeson LLP) appeared via CourtCall for Defendant International Care Limited.

Having reviewed and considered the arguments, pleadings, and written submissions of all parties, the Court **GRANTS** Defendants' motion to compel arbitration.

## BACKGROUND

The parties have engaged in litigation including a motion to quash, demurrers, case management conferences, and informal discovery conferences before the Court. In February 2022, the Court granted Defendants' motion for stay pending rulings in *Viking River Cruises, Inc. v. Moriana* by the United States Supreme Court and *Morales Posada v. Cultural Care, Inc.* by the United States Court of Appeals for the First Circuit.

After the decisions were issued, Defendant moved to compel arbitration.

The Arbitration Agreements at issue are as follows:

> This Agreement shall take effect as a sealed instrument under and shall be governed by the laws of Switzerland. In the event of any claim, dispute, or proceeding arising out of the relationship of me and CC, or any claim which in contract, tort, or otherwise at law or in equity arises between the parties, whether or not related to this Agreement, the parties submit and consent to the exclusive jurisdiction and venue of the arbitrational tribunals of Switzerland.

(Mazzota Decl., Exs. A, ¶ 15 [Kudlacz Agreement]; B, ¶ 15 [Bien Agreement].)

## LEGAL STANDARD

Under Code of Civil Procedure section 1281.2, a party may seek to compel arbitration of a dispute upon alleging that there is a written agreement to arbitrate and that the other party refuses to arbitrate the controversy. In ruling on such a petition or motion, a court principally determines whether a valid and enforceable agreement to arbitrate exists that requires arbitration of the controversy at issue. (See generally *M & M Foods, Inc. v. Pac. Am. Fish Co., Inc.* (2011) 196 Cal.App.4th 554, 559.) When evaluating and interpreting arbitration agreements, courts primarily apply ordinary rules of contract interpretation. (*Maggio v. Windward Cap. Mgmt. Co.* (2000) 80 Cal.App.4th 1210, 1214.) A court seeks to give effect to the mutual intent of the parties starting, principally, from the language of the contract. (*Ibid.*, citing Civ. Code, §§ 1636, 1638.)

When an arbitration agreement is governed by the Federal Arbitration Act ("FAA"), a California court's analysis of the existence and enforceability of an arbitration agreement may also be dictated by federal jurisprudence—notwithstanding ordinary principles of California law—based on the doctrine of

1  preemption. (See, e.g., *Viking River Cruises, Inc. v. Moriana* (2022) 142 S.Ct. 1906, 1917–18.) "Section 2 of the [FAA] makes arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2." (*Id.* at p. 1917.) The Supreme Court has historically interpreted Section 2 of the FAA as containing an enforcement clause and a savings clause that "jointly establish 'an equal-treatment principle: A court may invalidate an arbitration agreement based on "generally applicable contract defenses" like fraud or unconscionability, but not on legal rules that "apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."' [Citations.]" (*Ibid.*) "Under that principle, the FAA 'preempts any state rule discriminating on its face against arbitration—for example, a law "prohibit[ing] outright the arbitration of a particular type of claim."' [Citations.]" (*Ibid.*) This principle has, in turn, been interpreted expansively by the Supreme Court as precluding even facially neutral state laws and legal principles that have the effect, in practice, of impinging on the right to arbitrate. (*Id.* at p. 1918.) To illustrate, although most California principles of contract interpretation apply, the principle of *contra proferentem* does not apply when the FAA governs; instead, doubts regarding arbitrability arising from ambiguities in an arbitration agreement are resolved in favor of arbitration. (*Lamps Plus, Inc. v. Varela* (2019) 139 S.Ct. 1407, 1417–1418.)

## DISCUSSION AND ANALYSIS

**I.  Defendants Did Not Waive Their Right to Compel Arbitration.**

   **a. Background Law**

   The right to arbitrate may be waived either expressly or by implication. (*Saint Agnes Med. Ctr. v. PacifiCare of Cal.* (2003) 31 Cal.4th 1187, 1195.) "[A] party who resists arbitration on the ground of waiver bears a heavy burden, and any doubts regarding a waiver allegation should be resolved in favor of arbitration." (*Id.* at p. 1195 [citations omitted].) Generally, the determination of waiver is a question of fact. (*Id.* at p. 1196.)

   "In determining waiver, a court can consider (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for

a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps[,] e.g., taking advantage of judicial discovery procedures not available in arbitration had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party." (*Id.* at p. 1196 [citations and quotations omitted].)

Participating in litigation of an arbitrable claim does not by itself waive the right to later seek arbitration, but at some point, continued litigation may be deemed a waiver. (*Id.* at p. 1201.)

**b. Application**

Plaintiffs argue that Defendants waived their right to compel arbitration both expressly and impliedly. The Court disagrees.

First, as to express waiver, Plaintiffs argue that Defendant Cultural Care expressly waived arbitration by filing an answer where Cultural Care demanded a jury trial. (Opp. at p. 4.) The Court finds Plaintiffs' reliance on *Garcia v. Wachovia Corporation* (2012) 699 F.3d 1273 misplaced. In *Garcia*, the district court invited defendant twice to file its motion to compel arbitration, defendant did not do so, the parties engaged in extensive discovery, litigated several motions, and then a year later defendant reversed course and moved to compel arbitration after the Supreme Court decision in *AT&T Mobility LLC v. Concepcion*. (*Id.* at pp. 1275-1276.) Here, the facts are distinguishable. Plaintiffs do not cite any case law or statute stating that there is express waiver when a party files an answer demanding a jury trial.

As to implied waiver, although Defendants could have raised their motion to compel arbitration earlier, the Court determines that Defendants did not implicitly waive their right to compel arbitration.

"[W]hile waiver does not occur by mere participating in litigation if there has been no judicial litigation of the merits of arbitrable issues, waiver could occur prior to a judgment on the merits if prejudice could be demonstrated." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1203 [citation and quotations omitted].) "[C]ourts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses. [Citations.] Rather, courts assess prejudice with the recognition that California's arbitration statutes reflect a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution and are intended to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their

- 4 -

*Kudlacz v. Cultural Care, Inc. et al.* CGC-20-584567  Order Granting MTC Arbitration

own choosing. [Citation.] Prejudice typically is found only where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration. For example, courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration [Citations]; where a party unduly delayed and waited until the eve of trial to seek arbitration [Citation]; or where the lengthy nature of the delays associated with the petitioning party's attempts to litigate resulted in lost evidence." (*Id.* at pp. 1203-1204 [internal quotations omitted]; Compare *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 419 ["the usual federal rule of waiver does not include a prejudice requirement. So…prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA"].)

      The Court recognizes that there has been some litigation in the case. However, the case is in the same place it was before the Court granted Defendants' motion to stay in February 2022. It is in its early phase with no critical deadlines or trial dates. Plaintiffs do not assert that Defendants used the judicial process to gain information that could not have been gained in arbitration or that there has been lost evidence. Although Defendants did not file their motion to compel right away, Defendants argue that "Defendants promptly moved to stay this case when the Supreme Court took up the *Viking River* decision, and promptly moved to compel arbitration immediately after the Supreme Court's decision in *Viking River,* before that, any motion to compel arbitration likely would have been futile, as before *Viking River* PAGA claims were thought to be non-arbitrable. There was no waiver implicit in the timing of the motion." (Reply at p. 9.)

      The Court agrees that there was no waiver. (*Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63, 313 Cal. Rptr. 3d 176, 189 ["Defendants moved to compel arbitration soon after it learned the United States Supreme Court granted certiorari in *Viking River* with respect to the *Iskanian* rule—which they explained in their motion was 'the only obstacle to arbitration of the claim here' and likely to be overturned in *Viking River*. Thus, as in *Piplack*, defendants 'raised their right to arbitrate as soon as they had any chance of success.' [Citation] Given these circumstances, any delay in bringing their motion was not unreasonable. Defendants therefore did not waive their right to arbitrate as

a matter of law"]; *Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281, 1289-1290 ["defendant raised its right to arbitrate as soon as it had any chance of success. The fact that defendant vigorously defended itself in the trial court makes no difference because the relevant question is whether there was any *unreasonable* delay. The omission of arbitration as an affirmative defense to plaintiffs' first amended complaint is also not a waiver of arbitration for precisely the same reason, and in any event, defendant raised arbitration as an affirmative defense to plaintiffs' second amended complaint. Nor does plaintiffs' invocation of *Morgan v. Sundance, Inc.* (2022) —— U.S. ——, [142 S.Ct. 1708], 212 L.Ed.2d 753 alter the 'futility' rule from *Iskanian*. In *Morgan*, the United States Supreme Court held waiver of a right to arbitrate under the FAA did not depend on a showing of prejudice, but rather arose from any " 'intentional relinquishment or abandonment' " of the right to arbitrate. [Citation] This rule tracks closely with the reasoning of *Iskanian*. Failing to make a futile motion to compel arbitration surely does not constitute an intentional relinquishment of the right to compel arbitration should the law change"].)

## II.     The Federal Arbitration Act Applies.

"Under section 2 of the Federal Arbitration Act (FAA) (9 U.S.C. § 2), a 'written provision' in any 'contract' 'involving commerce' 'to settle by arbitration a controversy thereafter arising out of such contract' 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' " (*Pinela v. Neiman Marcus Grp., Inc.* (2015) 238 Cal.App.4th 227, 239, citing *Armendariz v. Found. Health Psychcare Servs., Inc.* (2000) 24 Cal.4th 83, 97–98; Code Civ. Proc., § 1281.) "Section 2, as all other substantive provisions of the FAA, applies when a contract involves interstate commerce." (*Nixon v. AmeriHome Mortg. Co., LLC* (2021) 67 Cal.App.5th 934, 945.) The phrase "involving commerce" is "the functional equivalent of 'affecting'" commerce. (*Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 274–274.) "The party seeking to enforce the arbitration agreement also bears the burden of establishing the FAA applies and preempts otherwise governing provisions of state law or the parties' agreement." (*Nixon, supra*, 67 Cal.App.5th at p. 946.)

The Agreements do not state that the FAA shall apply when interpreting the Agreement. (Mazzota Decl., Exs. A-B.) However, Defendants' business affects interstate and international commerce as there are ongoing contractual relationships between the au pair who are foreign nationals and performed their work in California and ICL who is incorporated in and has its principal place of business in Switzerland.

1  (MPA at p. 5; June 4, 2021 Order at p. 2.) Accordingly, the FAA applies. Plaintiffs do not dispute that
2  the FAA applies in their briefing or at oral argument. (Opp. at pp. 1–15.)
3  **III.    There is an Arbitration Agreement.**
4      **a. Background Law**
5      Although public policy favors contractual arbitration, the policy does not extend to parties who
6  have not agreed to arbitration. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186
7  Cal.App.4th 696, 704.) "To establish a valid agreement to arbitrate disputes, 'the petitioner bears the
8  burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence, and a
9  party opposing the petition bears the burden of proving by a preponderance of the evidence any fact
10 necessary to its defense.' (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972, 64
11 Cal.Rptr.2d 843, 938 P.2d 903.) California law governs the determination as to whether an agreement
12 was reached. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 409–410, 58
13 Cal.Rptr.2d 875, 926 P.2d 1061 (*Rosenthal*).)" (*Esparza v. Sand & Sea, Inc.* (2016) 2 Cal.App.5th 781,
14 787.)
15     "General principles of contract law determine whether the parties have entered into a binding
16 agreement to arbitrate." (*Pinnacle v. Museum Tower Assn. v. Pinnacle Market Development* (US) (2012)
17 55 Cal.4th 223, 236.) " 'An essential element of any contract is the consent of the parties, or mutual
18 assent.' [Citation.] Further, the consent of the parties to a contract must be communicated by each party
19 to the other. [Citation.] 'Mutual assent is determined under an objective standard applied to the outward
20 manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not
21 their unexpressed intentions or understandings.' [Citation.]" (*Esparza, supra*, 2 Cal.App.5th at p. 788.)
22 Doubts are resolved in favor of arbitrability. (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233,
23 248.)
24     **b. Application**
25     Defendants met their initial burden as Defendants attached copies of the signed agreements which
26 include the arbitration provisions to a declaration filed in support of their motion. (*Espejo v. Southern*
27 *Cal. Permanente Med. Grp.* (2016) 246 Cal.App.4th 1047, 1058–1059.) By attaching a copy of a signed
28

arbitration agreement to its petition to compel arbitration, a defendant satisfies its initial burden of establishing the existence of an arbitration agreement. (*Ibid.*; Mazzotta Decl., Exs. A-B.)

Plaintiffs argue that there was no agreement to arbitrate because the language at issue is too indefinite to form an agreement to arbitrate. (Opp. at p. 3.) The only issue Plaintiffs take with the arbitration agreement is that "the contract does not use the word arbitration or purport to consent to the submission of disputes between the parties to arbitration." (*Ibid.*) Plaintiffs argue that there are no "arbitrational tribunals" in Switzerland. (*Ibid.*) The Court is unpersuaded. The term "arbitrational tribunals" demonstrates an intent to arbitrate in Switzerland. (*Esparza, supra*, 2 Cal.App.5th at p. 788.) Plaintiffs do not provide any argument on what else could be intended from this language.

### IV. Defendants Can Enforce the Arbitration Agreement.

"Under federal and state law, a strong public policy favors arbitration and seeks to ensure private agreements to arbitrate are enforced according to their terms. [Citations.]" (*Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539, 548 (internal quotations omitted).) "[H]owever, the general rule is 'one must be a party to an arbitration agreement to be bound by it or invoke it.'" (*Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782, 785, quoting *Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, 763.) Defendants who are not signatories may seek to enforce the arbitration agreement against a signatory under such theories as incorporation by reference, assumption, agency, veil-piercing or alter ego, and third-party beneficiary. (*Jenks v. DLA Piper Rudnick Gray Cary U.S. LLP* (2015) 243 Cal.App.4th 1, 9-10.) Another exception to the general rule is equitable estoppel, where "a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claim when the causes of action against the nonsignatory are 'intimately founded in and intertwined with' the underlying contract obligations." (*Garcia*, 11 Cal.App.5th at p. 786, quoting *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 1346, 1352 (internal quotations omitted).) The claims must be "'based on the same facts and [] inherently inseparable' from the arbitrable claims." (*Garcia*, 11 Cal.App.5th, at p. 786, quoting *Metalclad Corp. v. Ventana Env't Organizational P'ship* (2003) 109 Cal.App.4th 1705, 1713.)

Plaintiffs do not take issue with whether Cultural Care can compel arbitration even though ICL is the signatory defendant to the agreements. (Opp. at 1-15.) The Court determines that Cultural Care can

compel arbitration even though it is a nonsignatory defendant because Plaintiffs' claims encompass Plaintiffs' entire participation in the au pair program, including Cultural Care's administration of the program in the United States. (*Garcia, supra*, 11 Cal.App.5th at p. 786; see, e.g., Amended Compl. ¶¶ 15-16, 23, 33, 37.)

Plaintiffs also argue that the arbitration clause is broad and there is a blow-up provision that renders the entire arbitration paragraph null and void in the event any portion of it is deemed unenforceable. (Opp. at p. 10.) The Court disagrees.

Under *Viking River*, it is possible for arbitration agreements to split PAGA claims where individual PAGA claims are arbitrated and non-individual PAGA claims are not. (*Barrera, supra*, 95 Cal.App.5th at p. 193.) However, the agreements here do not distinguish between Plaintiffs' individual claims and representative claims. (Compare Mazzota Decl., Exs. A-B with *id.* at p. 196 [agreements contained language that restricts arbitration on an individual basis]; *Diaz v. Macy's West Stores, Inc.* (C.D. Cal. Nov. 23, 2023) CV 19-00303 PSG (MAAx), 2022 WL 18107103 at *9-11 [arbitration agreement did not exclude PAGA representative claims and agreement mandated arbitration for all employment-related disputes thus representative PAGA claims were sent to arbitration].) The Court, however, will not send the non-individual PAGA claims to arbitration as *Viking River* did not say that representative claims must be sent to arbitration.

Regarding whether paragraph 16 nullifies paragraph 15, the Court finds the cases cited by Plaintiffs to be distinguishable because the agreements in those cases expressly waived PAGA and/or representative claims and contained poison pill provisions if the waiver was unenforceable. (*Westmoreland v. Kindercare Education LLC* (2023) 90 Cal.App.5th 967, 981 ["The poison pill provision in the "Savings Clause & Conformity Clause" of Kindercare's arbitration agreement was therefore unambiguous. So long as the waiver of PAGA claims is unenforceable, then the agreement 'is invalid and any claim brought on a class, collective, or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims'"]; *Securitas Security Services, USA, Inc. v. Super. Ct.* (2015) 234 Cal.App.4th 1109, 1113-1114, 1126-1127; *Fleming v. Matco Tools Corporation* (N.D. Cal. May 3, 2019) 384 F.Supp.3d 1124, 1131-1133; *McArdle v. AT&T Mobility LLC* (N.D. Cal. Oct. 2, 2017) No. 09-cv-01117-CW, 2017 WL 4354998 at *1, 4-5.) Here, there is no

express waiver with a poison pill provision. (Mazzota Decl., Exs. A-B.) Paragraph 16 seeks to sever paragraphs from the agreement to avoid having the whole agreement be unenforceable if certain provisions are unenforceable. Paragraph 15 is not unenforceable; thus, there is no need to nullify it through Paragraph 16.

## V. The Arbitration Agreement is Unconscionable.

Plaintiffs argue that the arbitration agreement is both procedurally and substantively unconscionable.

### a. Background Law

The FAA's savings clause permits arbitration agreements to be invalidated by generally applicable contract defenses such as unconscionability. (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339.) Unconscionability may be raised as a general contractual defense to an agreement to arbitrate. (*Fisher v. MoneyGram Int'l, Inc.* (2021) 66 Cal.App.5th 1084, 1093; see also, e.g., *Ali v. Daylight Transport, LLC* (2020) 59 Cal.App.5th 462, 471–472.) Unconscionability consists of both procedural and substantive elements, both of which must be shown, but need not be present in the same degree and are evaluated on a sliding scale. (*Pinnacle, supra,* 55 Cal.4th at pp. 246–247; *Fisher, supra,* 66 Cal.App.5th at p. 1097.) The party opposing arbitration has the burden of proving that the arbitration provision is unconscionable. (*Pinnacle, supra,* 55 Cal.4th at p. 247; *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1124; *Fisher,* 66 Cal.App.5th at p. 1094.)

### b. Procedural Unconscionability

#### i. Background Law

The procedural element of unconscionability focuses on oppression and surprise. (*Fisher, supra,* 66 Cal.App.5th at p. 1094.) "A showing of either oppression or surprise may render a contract procedurally unconscionable." (*Id.* at p. 1095.) Oppression derives from unequal "bargaining power which results in no real negotiations and an absence of meaningful choice." (*Ibid.,* quoting *Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 631 [internal quotations omitted].) "Surprise occurs when the allegedly unconscionable provision is hidden." (*Carmona v. Lincoln Millennium Car Washing., Inc.* (2014) 226 Cal.App.4th 74, 84.)

"There are degrees of procedural unconscionability." (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244.) "At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability...Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum." (*Ibid.*) "The term contract of adhesion signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." (*Armendariz, supra,* 24 Cal.4th at p. 113.)

"Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced, contain a degree of procedural unconscionability even without any notable surprises." (*Baltazar, supra,* 62 Cal.4th at p. 1244.) Moreover, "a finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided." (*Ibid.*)

### ii. Application

Plaintiffs assert that the Arbitration Agreement is procedurally unconscionable because the arbitration agreement is a contract of adhesion. (Opp. at p. 12.) The fact that the contract is a contract of adhesion does not by itself render it unenforceable as unconscionable. (*Fisher v. MoneyGram Int'l, Inc.* (2021) 66 Cal.App.5th 1084, 1095.) Even though the contract is a contract of adhesion, the Court does not find that there was significant oppression or surprise. The arbitration agreement terms were not hidden within the agreement as the agreement is two pages and paragraph 15 which contains the arbitration agreement is the same regular sized font as the rest of the agreement. (Mazzota Decl., Exs. A-B; *Oto, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 127-128 [significant oppression shown where agreement was not explained, employee had time docked for the time spent reviewing the agreement, and employee was under impression that immediate signature was required. Surprise was demonstrated where agreement was "a paragon of prolixity, only slightly more than a page long but written in an extremely small font. The single dense paragraph covering arbitration requires 51 lines...the text [was] 'visually impenetrable' and 'challenge[d] the limits of legibility.' The substance of the agreement [was] similarly opaque. The sentences are complex, filled with statutory references and legal jargon"]; *Fisher, supra,* 66 Cal.App.5th at pp. 1095-1097 [procedural unconscionability may be shown where the contract terms were hidden and

were a surprise; it does not require proof that a party lacked a meaningful choice or market alternatives].) Plaintiffs do not provide any evidence that the arbitration agreement included within the larger agreement was something other than an arbitration agreement. (*Nunez v. Cycad Management LLC* (2022) 77 Cal.App.5th 276, 284 [plaintiff was instructed that the agreement involved a change of company, not that it waived his right to a jury trial, and was instructed to sign it or be fired]; Mazzotta Decl., Exs. A-B.)

    **c. Substantive Unconscionability**

        **i. Background Law**

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." (*Pinnacle, supra,* 55 Cal.4th at p. 246.) To determine whether a contract is substantively unconscionable, courts focus "on the actual terms of the agreement and evaluate[s] whether they create overly harsh or one-sided results." (*Fisher,* 66 Cal.App.5th at p. 1104.) A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be "so one-sided as to 'shock the conscience.'" (*Pinnacle, supra,* 55 Cal.4th at p. 246 [citation omitted].) The paramount concern is mutuality. (*Davis,* 53 Cal.App.5th at p. 910.) "Courts have found a lack of sufficient mutuality where the agreement exempts from arbitration the types of claims an employer is likely to bring against an employee." (*Id.* at p. 914.)

Additionally, "[t]o be valid, at minimum the arbitration agreement must require a neutral arbitrator, sufficient discovery, and a written decision adequate enough to allow judicial review. Further, it must include all remedies available in a judicial action and the employee may not be required to pay unreasonable costs or fees. [Citation.] Elimination of or interference with any of these…provisions makes an arbitration agreement substantively unconscionable." (*Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1248, citing *Armendariz, supra,* 24 Cal.4th at p. 102.)

        **ii. Application**

The Court examines the arbitration provision to see if it is substantively unconscious. The agreement is a barebones agreement: "This Agreement shall take effect as a sealed instrument under and shall be governed by the laws of Switzerland. In the event of any claim, dispute, or proceeding arising out of the relationship of me and CC, or any claim which in contract, tort, or otherwise at law or in equity arises between the parties, whether or not related to this Agreement,

- 12 -
*Kudlacz v. Cultural Care, Inc. et al.* CGC-20-584567 Order Granting MTC Arbitration

the parties submit and consent to the exclusive jurisdiction and venue of the arbitrational tribunals of Switzerland." (Mazzotta Decl., Exs. A-B.) The agreement applies equally to Plaintiffs and Defendants as there is no language carving out distinctions between the parties. (*Ibid.*)

The Court determines that the agreement is substantively unconscionable.

First, as to the neutral arbitrator, the parties do not dispute whether the "arbitrational tribunals of Switzerland" is a neutral arbitrator.

Second, the agreement is silent on whether there will be discovery, let alone sufficient discovery. However, a lack of discovery is not grounds for holding this claim inarbitrable. (*Armendariz, supra*, 24 Cal.4th at p. 106 [court held that employer by agreeing to arbitrate claim impliedly consented to discovery].)

Third, the parties do not take issue with a written arbitration award and judicial review. The agreements do not preclude written findings.

Fourth, the Court examines whether all remedies are available as would be in a judicial action. The agreements do not limit the remedies available as they include law and equity claims. (Mazzotta Decl., Exs. A, ¶ 15; B, ¶ 15.) However, Plaintiffs argue that bringing the PAGA claims before the Swiss arbitration tribunals will affect a waiver of statutory rights. (Opp. at p. 13.) Plaintiffs argue that Swiss arbitration tribunals have no procedure for handling representative claims and representative actions are not recognized under Swiss law. (*Ibid.*; Baier Decl. ¶ 14.) Although Plaintiffs argue this, they provide no argument as to why the Swiss arbitration tribunals would be unable to apply California law.

Finally, as to costs and fees, the agreement is silent on who shall bear the costs. Plaintiffs assert that cost-sharing rules in Switzerland could run into hundreds of thousands of dollars and Plaintiff would be required to pay Defendants' share or face dismissal if Defendants fail or decline to pay. (Opp. at p. 14; Baier Decl. ¶¶ 15, 17, Exs. C-D.) Defendants argue that the cost-sharing rules are not unconscionable without any supporting case law or evidence and in the alternative, argue that the Court can reform the contract to remove any unconscionability and enforce the arbitration provisions. (Reply at pp. 7-8.) "[W]here employment is conditioned on mandatory arbitration, the employer cannot impose on the employee costs he or she would not normally have

to pay if the case were litigated in a court." (*Wherry, supra*, 192 Cal.App.4th at p. 1248; *Armendariz, supra*, 24 Cal.4th at pp. 110-111.) The absence of specific provisions on arbitration costs, however, are not grounds for denying the enforcement of an arbitration agreement as "a mandatory employment arbitration agreement that contains within its scope the arbitration of…claims impliedly obliges the employer to pay all types of costs that are unique to arbitration." (*Armendariz, supra*, 24 Cal.4th at p. 113.) At hearing, Defendants stated on the record and in their proposed order that the Court could order Defendants to cover all arbitration costs and Defendants would pay the costs. (Defs.' Proposed Order at p. 14.) As Defendants stated that they are willing to cover all arbitration costs, Defendants shall cover all arbitration costs.

Plaintiffs additionally argue that the agreement is substantively unconscionable because it requires Plaintiffs who currently live in the United States to arbitrate in Switzerland. (Opp. at p. 13.) "A forum selection clause within an adhesion contract will be enforced as long as the clause provided adequate notice to the party that he was agreeing to the jurisdiction cited in the contract…[C]ontractual forum selections are valid and should be given effect *unless enforcement of the clause would be unreasonable*." (*Gostev v. Skill Platform, Inc.* (2023) 88 Cal.App.5th 1035, 1061 [emphasis supplied].) "[F]orum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness." (*Magno v. The College Network, Inc.* (2016) 1 Cal.App.5th 277, 290.) Although Plaintiffs agreed to arbitrate in Switzerland, it is not reasonable to arbitrate in Switzerland. (*Gostev, supra*, 88 Cal.App.5th at p. 1061 [court held "requiring all users of a mobile app to arbitrate their claims in San Francisco regardless of where the users are located strikes us as unreasonable"]; *Magno, supra,* 1 Cal.App.5th at p. 288 [requiring college-aged students to travel from San Diego to Indiana to arbitrate claims against a company that solicited their business in California was substantively unconscionable]; *Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 825 [requiring Colorado residents to mediate and arbitrate in San Francisco contributed to the substantive unconscionability of the arbitration clause].)

The Court determines that the forum selection clause—which would require Plaintiffs who are young people of modest means who live in the United States to travel to Switzerland to

arbitrate their claims which originated in California—is substantially unconscionable. (See *ibid*.) Plaintiffs must choose to incur significant expenses to pursue their claims in an unreasonable forum or forgo bringing their claims while Defendants—who have more resources—will be at an advantage. (*Magno, supra*, 1 Cal.App.5th at p. 289.) "Absent reasonable justification for this arrangement, 'arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing the stronger party's] advantage.' [Citation.] 'Arbitration was not intended for this purpose.' [Citation.]" (*Ibid*.)

## VI. Severability

If an agreement to arbitrate is unconscionable, "the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a).) "In deciding whether to sever terms rather than to preclude enforcement of the provision altogether, the overarching inquiry is whether the interests of justice would be furthered by severance; the strong preference is to sever *unless* the agreement is 'permeated' by unconscionability." (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 802 [emphasis supplied].) An arbitration agreement is permeated by unconscionability where it contains more than one unconscionable provision. (*Armendariz, supra*, 24 Cal.4th at p. 124.) As the forum selection clause is unconscionable, the Court severs the forum selection clause. (*Magno, supra*, 1 Cal.App.5th at p. 292; *Bolter v. Super. Ct.* (2001) 87 Cal.App.4th 900, 911-912 [court severed place and manner in which arbitration was to occur and the remainder of the agreement remained enforceable].) The parties shall arbitrate Plaintiffs' claims in California under California law.

## VII. Labor Code § 925

Plaintiffs seek to void the provision requiring arbitration in Switzerland under Labor Code section 925 as Plaintiffs pled that they are Defendants' employees who lived and worked in California after Defendants recruited them to work in California.

Labor Code section 925 states:

(a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:

- 15 -

*Kudlacz v. Cultural Care, Inc. et al.* CGC-20-584567  Order Granting MTC Arbitration

(1) Require the employee to adjudicate outside of California a claim arising in California.

(2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.

(b) Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute.

Defendants argue that Plaintiffs do not provide evidence that Plaintiffs live and reside in California and whether Plaintiffs were Defendants' employees is at issue. The Court need not decide this issue as it has severed the Switzerland provision.

### CONCLUSION

The Court **GRANTS** Defendants' motion to compel arbitration as to Plaintiffs' individual claims. The Court severs the forum selection clause. The Court stays Plaintiffs' representative PAGA claims for the pendency of the arbitration. (Code Civ. Proc., § 1281.4.)

IT IS SO ORDERED.

Dated: October 27, 2023

ANDREW Y.S. CHENG
Judge of the Superior Court

## CERTIFICATE OF ELECTRONIC SERVICE
(CCP 1010.6(6) & CRC 2.251)

I, CLARK BANAYAD, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On October 27, 2023, I electronically served the ATTACHED DOCUMENT(S) via File&ServeXpress on the recipients designated on the Transaction Receipt located on the File&ServeXpress website.

I also served via email transmission the attached document(s) on the following party/parties as shown below.

Dated: October 27, 2023

Brandon E. Riley, Clerk

By: _____
CLARK BANAYAD, Deputy Clerk